## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CARINA HAMILTON f/k/a LISA MONTI,                    **CLASS ACTION**
on behalf of herself and all others similarly       **JURY DEMAND**
situated,

            Plaintiff,

                 v.

SUNTRUST MORTGAGE INC. QBE SPECIALITY INSURANCE COMPANY and
STERLING NATIONAL INSURANCE AGENCY

            Defendants.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Carina Hamilton f/k/a Lisa Monti ("Plaintiff"), on behalf of herself and a class of similarly situated persons who were charged for forced placed insurance by Defendants in connection with their home mortgages, brings this action against Defendant SunTrust Mortgage Inc. ("SunTrust Mortgage"), QBE Specialty Insurance Company ("QBE"), and Sterling National Insurance Agency ("Sterling National") and alleges as follows:

### I.  INTRODUCTION

1.     This is a class action lawsuit filed to redress injuries that Plaintiff and a nationwide class of consumers have suffered and will continue to suffer as a result of Defendants' practices relating to force-placed insurance policies.

2.     Defendants have engaged in a pattern of unlawful, deceptive, unfair, and unconscionable profiteering and self-dealing with respect to force-placed insurance policies procured in connection with Plaintiff's and the proposed Class's residential mortgage loans.

3.      Defendants' unlawful actions include, *inter alia*, purchasing unconscionably high-priced insurance policies, having pre-arranged agreements to purchase force-placed insurance from a single company without seeking competitive bids on the open market to maximize their own profits, backdating the force-placed policies to charge for retroactive coverage, and giving and receiving "commissions" or "kickbacks" for the procurement of the force-placed policies. These actions constitute a pattern of exploitative profiteering and self-dealing against the interest of the named Plaintiff and the Class members.

4.      As detailed more fully below, the unlawful scheme usually begins when a homeowner's insurance policy has lapsed, often because the homeowner is already struggling to pay on a costly mortgage (often substantially greater than the value of the home), or sometimes due to no fault of the homeowner, for example, when an insurance company declines to continue insuring homes on the Florida coastline and the homeowner does not receive notice of the cancellation or a clerical error at the insurance company mistakenly shows that a policy has expired.

5.      Once an insurance policy has lapsed, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium.

6.      Instead of seeking to maintain the borrower's delinquent existing policy or seeking bids for the force-placed insurance on the open market, the mortgage servicers have entered into exclusive relationships with certain force-placed insurance providers and continually purchase the force-placed insurance policies from these same providers.

7.      Accordingly, no arms-length transactions are taking place. Indeed, the mortgage

servicers and the force-placed insurance providers can often be found working out of the same offices.

8.    Moreover, when borrowers have had just temporary lapses in their policy, the mortgage servicers have retroactively "placed" the force-placed insurance policy on the property for that period of time. In these situations, the borrowers are charged an unreasonable premium for the retroactive force-placed insurance despite the fact that the time has lapsed, the homeowner often has since secured his or her own standard insurance, and no claims were made during the lapsed period.

9.    This retroactive force-placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has stated that insurance is "prospective in nature" and that policies should not be backdated.

10.    Homeowners' mortgage payments often include an amount to be placed in escrow so that the mortgage servicers can pay the insurance when it is due.  However, mortgage servicers, in instances where a homeowner has missed mortgage payments, have often stopped forwarding the homeowner's insurance payments to the insurance company and then purchased force-placed insurance for the lapsed policy. This occurs even when the borrower has paid enough into escrow to cover the insurance payments.

11.    Furthermore, these fraudulent practices have recently come under fire by all fifty State Attorneys General. Pursuant to their nation-wide investigation into lenders and mortgage servicers related to the housing and foreclosure crisis, they have recently proposed Settlement Terms several of which involve force-placed insurance.

12.    The proposed settlement terms include, among other things, the following proposed restrictions: (1) mortgage servicers are prohibited from force-placing insurance when

the servicer knows or has reason to know that the borrower has a policy in effect that meets the minimum requirement of the loan documents; (2) mortgage servicers cannot force-place insurance that is in excess of the replacement cost of the improvements on the mortgaged property; (3) mortgage servicers are prohibited from purchasing the force-placed insurance from a subsidiary, affiliate, or any entity in which they have an ownership interest; (4) mortgage servicers are prohibited from splitting fees, giving or accepting kickbacks or referral fees, or accepting anything of value in relation to the purchase or placement of the force-placed insurance; (5) mortgage servicers have to make reasonable efforts to continue or reestablish the borrower's existing insurance policy if there is a lapse in payment; and (6) the mortgage servicer is required to purchase the force-placed insurance for a commercially reasonable price.

13.     As the State Attorney Generals have recognized, this practice has greatly contributed to the foreclosure crisis. When the excessively priced insurance is force-placed on homeowners, already struggling to keep up with their mortgage payments, it often pushes those homeowners into foreclosure. The force-placed insurance premium is placed right into the borrower's mortgage payment, raising the amount of that payment to far more than what the borrower is able to pay.

14.     Force-placed insurance policies are generally meant to protect a mortgagee's interest in the borrower's property when the borrower's insurance policy has lapsed. Defendants, however, have turned them into a severely inflated profit-making machine.

15.     Mortgage Servicers – like SunTrust here – are companies that contract with the owners/investors of residential mortgage loans to administer those loans on behalf of the owners/investors. They are responsible for the day-to-day management of the mortgage loan account, including collecting and crediting the monthly loan payments, handling the escrow

4

account, and otherwise handling customer service and management of the mortgage loans within their servicing portfolio.

16.     Mortgage servicers do not actually own the mortgages that they service, instead they simply contract with the owners/investors of the mortgage loans to manage the loans in their portfolio on the owners/investors behalf and receive various fees in return. These fees are paid by the owners/investors who do in fact own the beneficial interest in those loans.

17.     Because they do not own the loans that they service, mortgage servicers do not incur a financial loss if a borrower fails to pay the mortgage, or if the loan goes into foreclosure.

18.     Surplus-line insurance brokers – Sterling National here – have the ability to procure insurance policies from carriers that are not licensed by the respective states when state-licensed insurers will not accept the risk on a certain policy.

19.     Surplus-line insurance providers – like QBE here – are not subject to the regulations of the states they provide the surplus line insurance to, often in the form of force-placed insurance, as is the case here.

20.     The premiums on force-placed insurance policies generally cost at least five to six times and often up to ten times more than what the borrower was either originally paying or what the borrower could obtain on the open market.

21.     The force-placed insurance policies are extremely lucrative for the insurance providers and generate profit margins unheard of elsewhere in the insurance industry. Indeed, one leading insurance provider – Assurant Inc. – collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone.

22.     The force-placed insurance policies are not just lucrative for the insurance providers. The mortgage servicers also reap significant profits when a struggling homeowner's insurance policy lapses.

23.     The mortgage servicers are paid commissions or kickbacks from the force-placed insurance companies once one of the high-priced, force-placed, insurance policies is purchased. These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy.

24.     This arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy that it can – the higher the cost of the insurance policy, the higher their commission or kickback.

25.     The full price of the force-placed insurance policy (without accounting for the kickback that is paid back to the servicer) is placed upon the borrower by the mortgage servicer and can often force an already struggling homeowner into foreclosure.

26.     In some instances, premiums for force-placed insurance have been placed on borrowers that are in excess of their mortgage's face value and the property's overall worth.

27.     Mortgage servicers consistently choose force-placed insurance arrangements that reward themselves at the expense of the borrowers. The National Association of Insurance Commissioners stated that mortgage servicers "have no incentive to select a competitively priced product" but instead would select one "where they are provided with an incentive or inducement to enter into the transaction."

28.     Borrowers are at the complete mercy of the mortgage servicers and their arrangements with the insurance providers. Borrowers can select a lender or mortgage broker for

their loan but cannot select what company services that loan. Indeed, mortgage loans are often sold shortly after origination and change hands many times as they are sold in the market.

29.     Moreover, this scheme does not injure the borrower alone. As explained above, the unreasonable cost of the force-placed insurance can often push a homeowner into foreclosure. This proves to be extremely lucrative for the mortgage servicer and usually a considerable loss for the ultimate owner of the mortgage – investors in mortgage-backed securities.

30.     The proceeds of a house sold at a foreclosure auction will go to the mortgage holder – the investors – however they only receive whatever money is left after expenses, which includes the cost of force-placed insurance. Therefore, it is in the interest of a mortgage servicer to place a high-cost policy on a struggling borrower and this interest is directly aligned against the interest of not only the borrower but the investors. The mortgage servicer will collect a huge profit (much more than the $50 it was making in servicing the loan) and the borrowers and investors are the ultimate losers.

31.     This scheme of exclusive relationships, back-room deals, and kickbacks appears to be wide-spread in the industry. *See Abels v. JPMorgan Chase*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) (denying motion to dismiss class action complaint against mortgage service provider JP Morgan Chase for kickbacks received and the excessive cost of force-placed insurance); *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636 (5th Cir. 2000) (upholding class certification where plaintiffs alleged excessive insurance coverage and unlawful kickbacks related to force-placed insurance); *Hall v. Midland Group*, No. CIV.A 99-3108, 2000 WL 1725238 (E.D. Pa., November 20, 2000) (certifying a settlement class of plaintiffs who alleged that the force-placed insurance was excessive and unauthorized and that the mortgage servicer was receiving improper

commissions.)

## II.  PARTIES

32.     Plaintiff Carina Hamilton f/k/a Lisa Monti is a citizen of the State of Florida and a resident of Broward County.  She is a natural person over 21 and otherwise *sui juris.*

33.     Defendant SunTrust Mortgage Inc., a Virginia corporation, is a wholly-owned subsidiary of SunTrust Bank.  SunTrust Bank is the nation's eleventh-largest commercial bank, and it is a wholly-owned subsidiary of SunTrust Bank, Inc.  SunTrust Mortgage's principle place of business is 901 Semmes Avenue, Richmond, Virginia.

## III.  JURISDICTION AND VENUE

34.     The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), requires that this action be brought before this Court.

35.     This Court has jurisdiction over Defendants because they are either foreign  corporations authorized to conduct business, are doing business in Florida and have registered with the Florida Secretary of State, or they do sufficient business, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion,  marketing, sale, and service of mortgage or other lending services and insurance policies in Florida.

36.     This Court has subject matter jurisdiction because the amount in controversy exceeds $5 million and diversity exists between the Plaintiff and the Defendants. 28  U.S.C.A.  § 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

37.     Venue is proper in this forum because at all times relevant hereto, Plaintiff resides in the Southern District of Florida, and a substantial portion of the practices complained of herein occurred in the Southern District of Florida, and/or because Defendants have received substantial compensation as a result of doing business in the Southern District of Florida.   Moreover, at all times material to the allegations contained herein, Defendants personally and/or through an agent:

(a) operated, conducted, engaged in, and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or

(b) engaged in substantial activity within this state and district.

38.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of Florida and, as set forth above, Defendants are subject to personal jurisdiction in this district.

39.     All conditions precedent to this action have occurred, been performed, or have been waived.

## IV. FACTUAL ALLEGATIONS

40.     Pursuant to the mortgage loan documents, borrowers, including Plaintiff, are required to maintain insurance on their real property. If the borrower fails to maintain insurance, the mortgage servicer may forcibly place insurance on the property.

41.     Plaintiff, Carina Hamilton f/k/a Lisa Monti, obtained a mortgage from SunTrust Mortgage, a mortgage servicer, secured by parcel of real property in Broward County, Florida on September 17, 2007.   Upon information and belief, SunTrust Mortgage sold the loan to FannieMae and the service of the mortgage transferred to Litton Loan Servicing ("LLS").   In

2009, SunTrust Mortgage once again became the servicer of Plaintiff's loan.  Plaintiff ultimately defaulted on her mortgage in 2009 and her insurance policy lapsed.

42.      From July 21, 2007 through July 21, 2008, Plaintiff's insurance policy premium that she purchased on the market was approximately $2,400.00.

43.      After Plaintiff defaulted on her loan, SunTrust Mortgage, without seeking competitive bids on the open market or attempting to re-establish Plaintiff's prior insurance, capriciously exercised its discretion in choosing an insurance policy and contracted with Sterling National to obtain surplus-line, force-placed, insurance through its preferred provider, QBE, for Plaintiff's property.

44.      In September 2010, SunTrust Mortgage notified Plaintiff that it had force-placed insurance on her property with QBE, backdating her policy to April 22, 2010.  For a policy covering the time period April 22, 2010 through April 22, 2011, Plaintiff's premium with QBE was $10,181.32, even while the property value of Plaintiff's home, according to data compiled by Broward County, is assessed at only $84,000.

45.      By selecting QBE, Sterling National never even attempted to comply with the express requirements set forth in sections 626.915 and 626.916(1)(a), Florida Statutes that obligate it to  make reasonable efforts to obtain insurance from a Florida admitted carrier and to document those efforts.

46.      SunTrust Mortgage notified Plaintiff that the force-placed insurance policy had been secured and retroactively placed.  The notification, however, did not disclose that SunTrust Mortgage or an affiliate, subsidiary, or related company would derive a profit or financial windfall because a percentage of the premium of the force-placed insurance policy –

the entirety of which was charged to Plaintiff's account – would be paid back to SunTrust Mortgage or a related entity in the form of "kickbacks" and/or "commissions."

47.     Defendants improperly engaged in self-dealing at the expense of Plaintiff and the Class,   in a manner not disclosed by the mortgage nor within the reasonable contemplation of the parties by charging Plaintiff and the Class the full amount of the exorbitantly-priced, force-placed insurance policies and paying and receiving a percentage of the premium to each other, thereby enabling Defendants to earn a hidden profit and financial windfall.

48.     Defendants' excessively priced insurance premiums violate the mortgage contract because they exceed the cost of the services and are not reasonable or appropriate to protect the  note holder's interest in the property and rights under the security instrument.

49.     Borrowers, like Plaintiff and the Class Members, are notified in their mortgage contracts that the cost of the insurance may be higher than the amount they would typically pay for insurance obtained on the open market.

50.      These standard mortgage contracts state that the insurance will cover the lender but may or may not protect the borrower or the contents of the property, and further state that the lender is under no obligation to purchase any particular type or amount of coverage.  There are no insurance rates or premiums set forth in the mortgage contract for the cost of force-placed insurance policies.

51.     The mortgage contract does not disclose, however, that SunTrust will receive a commission or kickback from QBE or Sterling National for purchasing the insurance from them.  The mortgage contract also does not disclose that this commission will be based upon a

percentage of the cost of the premium of the force-placed insurance.  Instead, the contract misrepresents to borrowers that the cost of the force-placed insurance may be higher due to the "risk" the borrower poses or the costs incurred in securing the policies.

52.    SunTrust Mortgage disingenuously claims that it incurs expenses in locating the force-placed insurance.

53.    In fact, the "expenses" SunTrust Mortgage incurs are next to nothing. SunTrust has a pre-existing relationships with the Sterling National and QBE and incurs almost no costs (in time or money) in securing a force-placed insurance policy.  SunTrust contracts almost exclusively with Sterling National and QBE when seeking force- placed insurance.

54.    Plaintiff and the class members do not have any choice or input into what company is used to force-place the insurance policy, what expenses are incurred in "finding" an insurance company, and further they do not have the option to shop for the insurance service themselves.

55.    The force-placed insurance policies are not the same type of policy that is authorized or required by the mortgage contract and is not one that a borrower could find on the open market.

56.    Upon information and belief, SunTrust Mortgage has negotiated deals with QBE and Sterling National whereby it receives a percentage of the cost of the premiums of the force-placed insurance policy purchased for the borrower.  This commission or kickback encourages the Defendants to select the most expensive insurance policy despite not having an interest in the insured collateral.

57.     The commission or kickback is paid by QBE or Sterling National to SunTrust Mortgage or its affiliate in order to induce them to purchase excessively-priced, force-placed insurance policies.

58.     SunTrust Mortgage charges Plaintiff and the class the full amount of the over-priced premium for the insurance policy despite being paid the kickback percentage of the policy.  The insurance policies also often charge borrowers for unnecessary insurance items.

59.     This scheme allows SunTrust Mortgage – through kickbacks – and QBE or Sterling National – through excessively-priced premiums – to reap huge profits at the cost of the Plaintiff, the Class Members, or ultimately the investors.

60.     By securing these force-placed insurance policies through these exclusive relationships  and not seeking competitive bids on the open market or attempting to continue or reestablish the prior insurance policy, SunTrust is not only obtaining the highest non-competitive premium rate, but it is also engaging in self-dealing and profiteering.

61.     The kickbacks and commissions that SunTrust Mortgage can earn on the force-placed insurance policies are far greater than what it can earn on servicing a loan (approximately $50 per loan) which provides increased incentive for it to continue with this deceptive and unsavory practice.

62.     Upon information and belief, QBE and/or Sterling National have entered into agreements with SunTrust Mortgage whereby they will search its servicing portfolios to detect uninsured properties and will even perform other back-office administrative functions.

63.     The actions and practices described above represent unfair, deceptive, and fraudulent practices that, even if the terms of the mortgage could be construed to allow, would still be an abusive and unlawful use of its contract powers.  Placing  these unreasonably

priced insurance policies on Plaintiff and the similarly situated Class Members without

regard for competition on the open market or a commercially reasonable price solely to

maximize their own profits through the exorbitant cost of and by collecting kickbacks on those

policies is inherently unfair and deceptive and prohibited by state and Federal law.

## CLASS ACTION ALLEGATIONS

### A.    Class Definition

64.    Plaintiff brings this action against Defendants pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly

situated.  Plaintiff seeks to represent the following two classes:

> **Nationwide Class:** All individuals who were charged for a force-placed insurance policy placed on their property through Defendants – SunTrust Mortgage, QBE, and Sterling National and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

> **Subclass ("Florida Subclass"):** All individuals with mortgages on property located in Florida who, within the applicable statute of limitations preceding the filing of this action, were charged for a force- placed insurance policy placed on their property through Defendants – SunTrust, QBE, and Sterling National and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

65.    Plaintiff reserves the right to modify or amend the definitions of the

proposed classes before the Court determines whether certification is appropriate.

66.    Defendants subjected Plaintiff and the respective Class members to the same

unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct

described above is the Defendants' standard and undisputed business practices.

### B.    Numerosity

67.    The individual class members are so numerous that joinder of all members is

impracticable.  The Defendants sell and service a large amount of mortgage loans and

insurance policies in the state of Florida and nation-wide and have, as a general business

practice, failed to comply with Federal and Florida state law.  Moreover, the individual class

members are ascertainable as the names and addresses of all class members can be identified in

the business records maintained by the Defendants.  The precise number of class members is

certainly more than a thousand but can only be obtained through discovery, but the

numbers are clearly more than can be consolidated in one complaint and impractical for each

to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of

the action as a class action.

### C.    Commonality

68.    There are questions of law and fact that are common to the Plaintiff's and Class

Members' claims.  These common questions predominate over any questions that go

particularly to any individual member of the Class.  Among such common questions of

law and fact are the following:

> (a) Whether the premiums charged to Plaintiff and the Class were
> *bona fide* and reasonable under Federal law;
>
> (b) Whether the kickbacks and commissions received by and paid by
> the Defendant companies constituted unfair and deceptive business
> practices and violated state consumer protection laws;
>
> (c) Whether Defendants purposely placed higher-priced insurance
> premiums on Plaintiff and the Class in order to maximize their own
> profits;
>
> (d) Whether SunTrust Mortgage breached the mortgage contract with
> Plaintiff and the Class by failing to seek competitive bids on the open
> market or attempting to continue or reestablish the prior existing
> policies;
>
> (e)    Whether Defendants have unlawfully unjustly enriched
> themselves at the expense of the Plaintiff and the Class;
>
> (f)    Whether Defendants breached the implied covenant of good faith

and fair dealing by charging their residential borrowers excessive amounts for force-placed insurance, a portion of which was paid back to the mortgage servicer in the form of commissions or kickbacks, and misrepresenting why the cost of force-placed insurance was excessive;

(g) Whether the provision in the mortgage instrument relating to force-placed insurance is procedurally and substantively unconscionable because it does not contemplate or authorize Defendants to derive hidden financial benefits by force-placing the high cost insurance premiums; and

(h) Whether an objective consumer would be deceived by Defendants' arrangement and scheme, which incentivizes all the Defendants to charge excessive fees for force-placed insurance and therefore constitutes a violation of deceptive and unfair trade practices under Florida law.

### D.      Typicality

69.      Plaintiff is a member of the Class as Defendants' own records plainly reveal. Plaintiff's claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

### E.      Adequacy of Representation

70.      Plaintiff is an adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

71.      To prosecute this case, Plaintiff has chosen the law firms of The Law Offices of Jeffrey N. Golant, P.A., Golant & Golant P.A., and Giskan Solotaroff Anderson & Stewart,

16

LLP.  These firms are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.      Requirements of Fed. R. Civ. P. 23(b)(3)**

72.      The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class.  All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured.

73.      Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

74.      As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.      Superiority**

75.      A class action is superior to individual actions in part because of the non- exhaustive factors listed below:

> (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;
>
> (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.  As a result, individual class members have no interest in prosecuting and controlling separate actions;
>
> (c) There are no known individual class members who are interested in individually controlling the prosecution of separate

actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

**H.    Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

76.    Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

77.    Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

78.    Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ALL CLASS MEMBERS

79.    Plaintiff re-alleges and incorporate Paragraphs 1 – 79 above as if fully set forth herein and further allege as follows.

80.     Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

81.     Where an agreement permits one party to unilaterally determine the extent of  the other's required performance, an obligation of good faith in making such determination is implied.    Mortgage servicers, like SuntrustMortgage, are permitted to choose unilaterally the company to purchase force-placed insurance from and have an obligation not to exercise their discretion to choose the company capriciously and in bad faith (for their own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

82.     The mortgage contracts and insurance policies of Plaintiff and the Class contained an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiff and the Class, and not to charge excessive or unreasonable fees for the force-placed insurance for the purposes of maximizing profits at the Class's expense.

83.     Defendants breached their duty of good faith and fair dealing in at least the following respects:

> (a) Using their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting exorbitantly-priced force-placed insurance policies to maximize their own profits;
>
> (b) Failing to seek competitive bids on the open market and instead creating "back room" deals whereby the insurance policies are continually purchased through the same companies;
>
> (c) Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and Class and misrepresenting the reason for the cost of the policies;

(d) Collecting a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible; and,

(e) In relation to some members of the Class, including the Class Representative, retroactively placing the exorbitantly-priced policies for time periods that have already passed.

84.     As direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages.

**WHEREFORE,** Plaintiff on behalf of herself and similarly situated Class members, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing.  Plaintiff also seeks compensatory damages resulting from Defendants' breach of their duties.  Plaintiff further seeks all relief deemed appropriate by this Court, including attorney fees and costs.

## COUNT II

## VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURE ACT ("RESPA") 12 U.S.C. § 2601 *et seq*. (against Defendant SunTrust Mortgage)

85.     Plaintiff re-alleges and incorporates Paragraphs 1 – 79 above as if fully set forth herein and further allege as follows.

86.     Plaintiff's and the Class's mortgage loans qualify as "federally related mortgage loans" under § 2602(1)(B)(i) because the mortgage loans were made in whole or in part by a lender, the deposits or accounts of which are insured by any agency of the Federal

Government, or were made in whole or in part by a lender which is regulated by any agency of the Federal Government.

87.     This claim for relief arises under 12 U.S.C. § 2605 which authorizes damages in a class action for:

(a) any actual damages to each of the borrowers in the class as a result of the failure of Defendant's to comply with any provision of the section; and

(b) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class. Section 2605 states that the total amount of damages under this subparagraph in any class action may not exceed the lesser of (i) $500,000 or (ii) 1 % of the net worth of servicer.

88.     This section requires that all charges related to force-placed insurance, apart from charges subject to state regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be ***bona fide and reasonable***.

89.     SunTrust is a mortgage servicer or lender to whom the requirements of section 2605 of RESPA apply.

90.     Sterling National and QBE are surplus-line insurance providers and not subject to state regulation.

91.     SunTrust Mortgage has violated § 2605 of RESPA by charging premiums that are unfairly and egregiously costly.   This excessively-priced, force-placed insurance cannot be considered *bona fide* and reasonable because SunTrust Mortgage exercised its discretion in choosing an insurance policy capriciously, in bad faith, and in contravention of the parties' reasonable expectations by purposefully selecting an exorbitantly-priced policy and by giving and receiving kickbacks for the procurement of these exorbitantly-priced, force-placed

insurance policies.  It has negotiated exclusive terms with National Sterling and QBE whereby it receives kickbacks tied to the cost of the insurance premiums.  This incentive drives SunTrust to purchase the highest priced insurance that it can, and to often include coverage that is unnecessary.

92.    The force-placed insurance purchased by SunTrust and passed on to Plaintiff and the Class can cost up to ten times the amount of standard insurance that a borrower was previously paying or could obtain on the open market.

93.    Furthermore, the high-priced premiums charged to Plaintiff and the Class cannot be considered reasonable because, despite SunTrust Mortgage's receiving a kickback or commission on each policy it purchases, it does not pass that savings amount on to Plaintiff or the Class. Instead, it still  charges them the full  unwarranted  and unreasonable amount for the exorbitantly-priced, force-placed insurance.

94.    The foregoing actions constitute a general business practice and pattern of SunTrust Mortgage.

**WHEREFORE**, Plaintiff and the Class members seek a judgment in their favor against SunTrust Mortgage for the actual damages suffered by them in the form of unreasonable force-placed insurance premiums in violation of Section 2605 of RESPA, together with additional damages the court may allow as a result of the pattern of purchasing high-priced and unnecessary force-placed insurance in order to collect a large kickback or commission.  Plaintiff also seeks all costs of litigating this action including attorney fees.

## COUNT III

## UNCONSCIONABILITY

22

95.    Plaintiff re-alleges and incorporates Paragraphs 1 – 79 above as if fully set forth herein and further allege as follows.

96.    The provision in the standard mortgage instrument that allows SunTrust to  force-place high-cost insurance and charge borrowers the "cost" of obtaining that insurance and/or misrepresents why the cost of force-placed insurance is excessive is procedurally and substantively unconscionable.

97.    While this standardized provision states that the cost of the force-placed insurance might exceed the cost of insurance that a borrower could obtain, it does not authorize or contemplate that SunTrust Mortgage or Defendants will derive hidden profits and a financial windfall by charging the borrower for the full price of the premium although a percentage of that premium is paid back to SunTrust or a related entity in the form of commissions and kickbacks.  No  reasonable  person would  agree  to  the  foregoing provision if they were aware that a portion, based upon a percentage of the cost, was being paid back to the mortgage servicer or if they were aware that the Defendants would have an incentive to choose an exorbitantly-priced policy in order to reap huge profits off of the borrowers.

98.    Plaintiff and the Class are borrowers and were not in a position to negotiate the  terms of the mortgage and were also not in a position to know of or experience the results of Defendants' practices before obtaining their mortgages.

99.    Considering the business acumen and experience of Defendants in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the purpose and effect of the applicable terms, the allocation of the risks between the

parties, and other public policy considerations, the provision in the mortgage instrument relating force-placed insurance is procedurally unconscionable.

100.   The same provision is substantively unconscionable because it does not disclose nor contemplate that Defendants will derive hidden profits and a financial windfall from force-placed insurance through exclusive relationships and kickbacks. No reasonable person would have contemplated or agreed to the foregoing provision if they were aware that a percentage of the cost of the force-placed insurance would be paid to the mortgage servicer and would provide Defendants the incentive to place excessively priced insurance on the mortgage loan.

**WHEREFORE**, based on the procedural and substantive unconscionability of the contract provision at issue, Defendants should be required to refund an amount equal to all hidden profits or other financial benefits previously collected from Plaintiff and members of the Class, and to rescind all such amounts charged but not yet collected from Plaintiff and the Class.

## <u>COUNT IV</u>

## <u>UNJUST ENRICHMENT</u>

101.   Plaintiff re-alleges and incorporate Paragraphs 1 – 79 above as if full set forth herein and further allege as follows.

102.   The Defendants have received, and continue to receive, a benefit at the expense of the Plaintiff and the Class, and have knowledge thereof.

103.   The Defendants have unlawfully and unfairly charged, attempted to collect, and collected, excessive amounts for force-placed insurance policies when reasonably priced insurance could have been obtained on the open market or

maintained through Plaintiff's and the Class's prior insurance company. Moreover, Defendant, SunTrust Mortgage or its related entities, have received and retained kickbacks based on a percentage of the cost of the insurance premiums. Defendants choose excessively-priced insurance policies for the motive of maximizing their own profits and unjustly enriching themselves. Accordingly, Defendants have received benefits that they have unjustly retained at the expense of the members of the Class.

104.   The circumstances are such that it would be inequitable for the Defendants to retain the benefit without paying the value thereof to the members of the Class.

**WHEREFORE**, Plaintiff, on behalf of herself and all similarly situated individuals, demands judgment against the Defendants for compensatory damages, pre and post judgment interest, attorney's fees, declaratory and injunctive relief, costs incurred in bringing this action, and any other relief the Court deem just and proper.

## <u>COUNT V</u>

## <u>VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURE ACT ("RESPA") 12 U.S.C. § 2607</u>

110.   Plaintiff re-alleges and incorporates Paragraphs 1 – 79 above as if fully set forth herein and further allege as follows.

111.   Plaintiff's loans, as well as the loans of the class members, are federally related mortgage loans within the meaning of RESPA.

112.   SunTrust Mortgage is a mortgage servicer or lender to whom the requirements of section of RESPA apply and is considered a "person" under section 2607.  *See* 12 U.S.C. § 2602.

113.     Pursuant to 12 U.S.C. § 2607, Defendant SunTrust Mortgage is prohibited from accepting any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, for the referral of any business "incident to or a part of a real estate settlement service involving a federally related mortgage loan."

114.     The Department of Housing and Urban Development ("HUD"), in regulations relating to RESPA, has defined the term "settlement" as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan." *See* 24 C.F.R. § 3500.2(b).

115.     HUD has defined a "settlement service" as "any service provided in connection with a prospective or actual settlement" and in this definition, HUD states that settlement services include "provision of services involving hazard, flood, or other casualty insurance." *See* 24 C.F.R. § 3500.2(b).

116.     Plaintiff's and the Class Members' mortgage documents contain the provision that gives the Defendants the discretion to choose force-placed hazard insurance to add to the borrower's mortgage payments.

117.     Plaintiff and the Class Members are required to agree to this provision before signing the mortgage documents.

118.     Upon information and belief, SunTrust Mortgage, pursuant to this provision, has a pre-arranged agreement or understanding with Sterling National and QBE to be the provider of this force-placed hazard insurance.

119.     This agreement or understanding has been specifically arranged to allow SunTrust to collect kickbacks and commissions for referring the force-placed insurance policies, called for by the mortgage documents, to Sterling National and QBE.

120.    As it is provided for in the mortgage documents and specifically mentioned in the regulations, the provision that allows SunTrust to choose this force- placed insurance policy meets the definition of a settlement service.  *See* 24 C.F.R. § 3500.2(b).

121.    The referrals and placement of force-placed insurance through Sterling National and QBE constitutes, at a minimum, business "incident to" if not "a part of" the real estate settlement services under 12 U.S.C. § 2607.

122.    SunTrust Mortgage, by accepting kickbacks and commissions specifically tied to the price of force-placed insurance through an agreement or understanding with Sterling National and QBE, have failed to comply and otherwise violated section 2607 of RESPA.

123.    As a result of violating section 2607 of RESPA, SunTrust Mortgage is jointly and severally liable to the Class in an amount equal to three times the amount the Class Members were charged for the force-placed insurance policies.

**WHEREFORE**, Plaintiff and the Class members seek a judgment in their favor against SunTrust Mortgage for treble damages related to the cost of the exorbitantly- priced force-placed insurance premiums arranged in violation of Section 2607 of RESPA, together with the costs of litigating this action including attorney fees.

## COUNT VI

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
**(against QBE)**

124.    Plaintiff re-alleges and incorporate Paragraphs 1 – 79 above as if fully set forth herein and further allege as follows.

125.    Plaintiff and the Class members have a business relationship with SunTrust Mortgage pursuant to the mortgage contracts. Plaintiff and the Class have legal rights under these mortgage contracts.  For example, the Plaintiff and the Class have a right not to be charged

exorbitant charges in bad faith for forced-place insurance.  QBE has knowledge of Plaintiff and the class's business relationship with SunTrust Mortgage pursuant to the mortgage contracts. QBE is not a party to the mortgage contracts, nor is it a third-party beneficiary. Further, QBE does not have any beneficial, economic or supervisory interest in the mortgage contracts.

126.    QBE intentionally and unjustifiably interfered with the Plaintiff's and the Class's rights under the mortgage contracts, as described above by, inter alia, paying kickbacks to SunTrust Mortgage and by undertaking various mortgage servicing functions on SunTrust's behalf concerning the SunTrust loan portfolio  either without cost, or at a lower cost than is commercially reasonable.   The cost of these kickbacks and in kind services are purposefully and knowingly passed on to Plaintiff and the Class.

127.    Plaintiff and the Class have been damaged as a result of QBE's interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the mortgages.

**WHEREFORE** Plaintiff and the Class members seek a judgment in their favor against QBE for the actual damages suffered by them as a result of QBE's tortious interference.  Plaintiff also seeks all costs of litigating this action including attorney's fees.

## PRAYER FOR RELIEF

128.    **WHEREFORE**, Plaintiff, on behalf of herself and all similarly situated individuals demand judgment against Defendants as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the class;

28

(2)     Awarding damages sustained by Plaintiff and the Class as a result of Defendants' breach of the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(3)     Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Class, together with pre- judgment interest;

(4)     Awarding damages – actual and additional as the court may allow  – sustained by Plaintiff and the Class as a result of Defendants violation of section 2605 of the Real Estate Settlement and Procedure Act together with attorney's fees and costs;

(5)     Declaring the provision in the mortgage instrument relating to force- placed insurance to be procedurally and substantively unconscionable and requiring Defendants to refund an amount equal to all hidden profits or other financial benefits collected from Plaintiff and the Class, and to rescind all such amounts charged but not yet collected from Plaintiff and the Class by virtue of the provision;

(7)     Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses;

(8)     Awarding treble damages as a result of Defendants violation of section 2607 of the Real Estate Settlement and Procedure Act together with attorney's fees and costs; and

(9)     Such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class request a jury trial for any and all Counts for

which a trial by jury is permitted by law.

Respectfully submitted on April 1, 2013.


Oren Giskan
Catherine Anderson
Giskan Solotaroff Anderson & Stewart
LLP
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315


Margery E. Golant, Esq.
GOLANT & GOLANT, P.A.
2385 NW Executive Center Drive
Suite 100
Boca Raton, FL  33431
Phone: (561) 206-6171
Fax: (561) 206-6172

**/S/ JEFFREY N. GOLANT ESQ.**
The Law Offices of Jeffrey N. Golant, P.A.
1000 W. McNab Rd. Ste. 150
Pompano Beach, FL 33069
Phone:    (954) 942-5270
Fax:    (954)942-5272
jgolant@jeffreygolantlaw.com