**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-60749-CIV-ROSENBAUM**

| | |
|---|---|
| **CARINA HAMILTON f/k/a LISA MONTI,** | **CLASS ACTION** |
| **on behalf of herself and all others similarly** | **JURY DEMAND** |
| **situated,** | |

       **Plaintiff,**

           **v.**

**SUNTRUST MORTGAGE INC., QBE SPECIALTY INSURANCE**
**COMPANY, and STERLING NATIONAL**
**INSURANCE AGENCY n/k/a QBE FIRST INSURANCE**
**AGENCY**

       **Defendants.**
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Carina Hamilton f/k/a Lisa Monti ("Plaintiff"), on behalf of herself and a class of similarly situated persons who were charged for forced placed insurance by Defendants in connection with their home mortgages, brings this action against Defendant SunTrust Mortgage Inc. ("SunTrust" or "SunTrust Mortgage"), QBE Specialty Insurance Company ("QBE Specialty"), and Sterling National Insurance Agency, now known as QBE FIRST Insurance Agency ("QBE FIRST") and alleges as follows:

## I.  INTRODUCTION

1.      This is a class action lawsuit filed to redress injuries that Plaintiff and a nationwide and statewide class of consumers have suffered and will continue to suffer as a result of Defendants' practices relating to force-placed insurance policies.

1

2.     Defendants have engaged in a pattern of unlawful, deceptive, unfair, and unconscionable profiteering and self-dealing with respect to force-placed insurance policies procured in connection with Plaintiff's and the proposed Class's residential mortgage loans.

3.     Defendants' unlawful actions include, *inter alia*, purchasing unconscionably high-priced insurance policies, having pre-arranged agreements to purchase force-placed insurance from a single company without seeking competitive bids on the open market to maximize their own profits, backdating the force-placed policies to charge for retroactive coverage, and giving and receiving "commissions" or "kickbacks" and other consideration in exchange for the procurement of the force-placed policies. These actions constitute a pattern of exploitative profiteering and self-dealing against the interest of the named Plaintiff and the Class members.

4.     As detailed more fully below, the unlawful scheme usually begins when a homeowner's insurance policy has lapsed, frequently because the homeowner is already struggling to pay on a costly mortgage (often substantially greater than the value of the home), or sometimes due to no fault of the homeowner, for example, when an insurance company declines to continue insuring homes on the Florida coastline and the homeowner does not receive notice of the cancellation or a clerical error at the insurance company mistakenly shows that a policy has expired.

5.     Once an insurance policy has lapsed, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the insurance product the mortgage servicer selects.  In the case of Plaintiff and the Class, those costs include direct and indirect payments to the mortgage servicer.

6.     Instead of seeking to maintain the borrower's  existing policy or

seeking bids for the force-placed insurance on the open market, the mortgage servicers have entered into exclusive relationships with certain force-placed insurance providers and continually purchase the force-placed insurance policies from these same providers.

7.     Accordingly, no arms-length transactions are taking place. Indeed, the mortgage servicers and the force-placed insurance providers can often be found working out of the same offices.

8.     Moreover, when borrowers have had just temporary lapses in their policy, the mortgage service providers have retroactively "placed" the force-placed insurance policy on the property for that period of time. In these situations, the borrowers are charged an unreasonable premium for the retroactive force-placed insurance despite the fact that the time has lapsed, the homeowner often has since secured his or her own standard insurance, and no claims were made during the lapsed period.

9.     This retroactive force-placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has already stated that insurance is "prospective in nature" and that policies should not be backdated.

10.    Homeowners' mortgage payments often include an amount to be placed in escrow so that the mortgage servicers can pay the insurance when it is due.  However, mortgage servicers, in instances where a homeowner has missed mortgage payments, have often stopped forwarding the homeowner's insurance payments to the insurance company and then purchased force-placed insurance for the lapsed policy. This occurs even when the borrower has paid enough into escrow to cover the insurance payments.

11.    Furthermore, these fraudulent practices have recently come under fire by all fifty

State Attorneys General, whose nationwide investigation resulted in a settlement requiring reforms to the force-placed insurance market.

12.     As the State Attorney Generals have recognized, this practice has greatly contributed to the foreclosure crisis. When the excessively priced insurance is force-placed on homeowners, already struggling to keep up with their mortgage payments, it often pushes those homeowners into foreclosure. The force-placed insurance premium is placed right into the borrower's mortgage payment, raising the amount of that payment to far more than what the borrower is able to pay.

13.     Force-placed insurance policies are generally meant to protect a mortgagee's interest in the borrower's property when the borrower's insurance policy has lapsed. Defendants, however, have turned them into a severely inflated profit-making machine.

14.     Mortgage Servicers – like SunTrust here – are companies that contract with the owners/investors of residential mortgage loans to administer those loans on behalf of the owners/investors. They are responsible for the day-to-day management of the mortgage loan account, including collecting and crediting the monthly loan payments, handling the escrow account, and otherwise handling customer service and management of the mortgage loans within their servicing portfolio.

15.     Mortgage servicers usually do not actually own the mortgages that they service, instead they simply contract with the owners/investors of the mortgage loans to manage the loans in their portfolio on the owners/investors behalf and receive various fees in return. These fees are paid by the owners/investors who do in fact own the beneficial interest in those loans.

16.     Because they do not own the loans that they service, mortgage servicers do not incur a financial loss if a borrower fails to pay the mortgage, or if the loan goes into foreclosure.

17.     Surplus-line insurance brokers – QBE FIRST here – have the ability to procure insurance policies from carriers that are not licensed by the respective states. However, these policies may only be placed when state-licensed insurers will not accept the risk to be insured.

18.     Surplus-line insurance providers – like QBE Specialty here – are not subject to the many of the insurance regulations applicable to state licensed insurers.  The QBE Specialty insurance policies at issue in this lawsuit were surplus lines insurance policies.

19.     The premiums on force-placed insurance policies generally cost at least five to six times and often up to ten times more than what the borrower was either originally paying or what the borrower could obtain on the open market.

20.     The force-placed insurance policies are extremely lucrative for the insurance providers and generate profit margins unheard of elsewhere in the insurance industry. Indeed, one leading insurance provider – Assurant Inc. – collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone.

21.     The force-placed insurance policies are not just lucrative for the insurance providers. The mortgage servicers also reap significant profits when a struggling homeowner's insurance policy lapses.

22.     The mortgage servicers are paid commissions or kickbacks from the force-placed insurance companies once one of the high-priced, force-placed, insurance policies is purchased. These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy.

23.     This arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy that it can – the higher the cost of the insurance policy, the higher their commission or kickback.

24.     The full price of the force-placed insurance policy (without accounting for the kickback that is paid back to the servicer) is placed upon the borrower by the mortgage servicer and can often force an already struggling homeowner into foreclosure.

25.     In some instances, premiums for force-placed insurance have been placed on borrowers that are in excess of their mortgage's face value and the property's overall worth.

26.     Mortgage servicers consistently choose force-placed insurance arrangements that reward themselves at the expense of the borrowers. The National Association of Insurance Commissioners stated that mortgage servicers "have no incentive to select a competitively priced product" but instead would select one "where they are provided with an incentive or inducement to enter into the transaction."

27.     Borrowers are at the complete mercy of the mortgage servicers and their arrangements with the insurance providers. Borrowers can select a lender or mortgage broker for their loan but cannot select what company services that loan. Indeed, mortgage loans are often sold shortly after origination and change hands many times as they are sold in the market.

28.     Moreover, this scheme does not injure the borrower alone. As explained above, the unreasonable cost of the force-placed insurance can often push a homeowner into foreclosure. This proves to be extremely lucrative for the mortgage servicer and usually a considerable loss for the ultimate owner of the mortgage – investors in mortgage-backed securities.

29.     The proceeds of a house sold at a foreclosure auction will go to the mortgage holder – the investors – however they only receive whatever money is left after expenses, which includes the cost of force-placed insurance. Therefore, it is in the interest of a mortgage servicer to place a high-cost policy on a struggling borrower and this interest is directly aligned against

the interest of not only the borrower but the investors that actually own the mortgage loan. The mortgage servicer will collect a huge profit (much more than the comparatively small fees it receives for servicing the loan) and the borrowers and investors are the ultimate losers.

30.     This scheme of exclusive relationships, back-room deals, and kickbacks appears to be wide-spread in the industry. *See Abels v. JPMorgan Chase*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) (denying motion to dismiss class action complaint against mortgage service provider JP Morgan Chase for kickbacks received and the excessive cost of force-placed insurance); *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636 (5th Cir. 2000) (upholding class certification where plaintiffs alleged excessive insurance coverage and unlawful kickbacks related to force-placed insurance); *Hall v. Midland Group*, No. CIV.A 99-3108, 2000 WL 1725238 (E.D. Pa., November 20, 2000) (certifying a settlement class of plaintiffs who alleged that the force-placed insurance was excessive and unauthorized and that the mortgage servicer was receiving improper commissions.)

## II. PARTIES

31.     Plaintiff Carina Hamilton f/k/a Lisa Monti is a citizen of the State of Florida and a resident of Broward County.  She is a natural person over 21 and otherwise *sui juris*.

32.     Defendant SunTrust Mortgage Inc., ("SunTrust" or "SunTrust Mortgage") a Virginia corporation, is a wholly-owned subsidiary of SunTrust Bank.  SunTrust Bank is the nation's eleventh-largest commercial bank, and it is a wholly-owned subsidiary of SunTrust Bank, Inc.  SunTrust Mortgage's principle place of business is 901 Semmes Avenue, Richmond, Virginia.

33.     Defendant QBE Specialty Insurance Company ("QBE Specialty") is part of QBE North America (which in turn is part of QBE Insurance Group Limited, an Australian company).

7

QBE Specialty provides insurance products and services, including force-placed insurance products and related services.  QBE Specialty is domiciled in North Dakota and maintains its headquarters in New York, New York.

34.     Defendant Sterling National Insurance Agency n/k/a QBE First Insurance Agency ("QBE First") is part of QBE North America (which in turn is part of QBE Insurance Group Limited, an Australian company).  QBE First provides insurance products and services, including force-placed insurance products and services.  QBE First is incorporated in Delaware and maintains its headquarters in Atlanta, Georgia.

### III.  JURISDICTION AND VENUE

35.     The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), requires that this action be brought before this Court.

36.     This Court has jurisdiction over Defendants because they are either foreign  corporations authorized to conduct business, are doing business in Florida and have registered with the Florida Secretary of State, or they do sufficient business, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion,  marketing, sale, and service of mortgage or other lending services and insurance policies in Florida.

37.     This Court has subject matter jurisdiction because the amount in controversy exceeds $5 million. In determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).  In addition, there are more than 100 members of the Class.  Defendant SunTrust's servicing portfolio contains more than

8

one million loans nationwide.   Experts in the force placed insurance industry have estimated that between 1 -2% of mortgage borrowers have force placed insurance on their homes.   Although the actual charges for each force-placed insurance policy are not in Plaintiff's possession at this time, but are in the possession of Defendants, Plaintiff estimates that based on her own force placed insurance related costs, that just one year of damages may exceed $155 million Class-wide ($10,181 for Plaintiff's annual force placed insurance premium less $2,400 for Plaintiff's open market homeowner's insurance annual premium, multiplied by approximately 20,000 potential Class members yields $155,620,000).   Recent rate cut hearings involving Defendant QBE indicate that QBE's force placed insurance premiums are inflated by upwards of 44 percent due to hidden fees, kickbacks and other unnecessary and unlawful expenses at issue in this litigation. Using this 44 percent rate of inflation and Plaintiff's charges of $10,181 for her force-placed insurance annual premium, this would yield annual damages Class wide (per an estimated 20,000 Class members) of approximately $89 Million.

38.     The minimal diversity requirements of CAFA have been met.  Plaintiff is a citizen of Florida,  Defendant SunTrust is incorporated and maintains its headquarters in Virginia.   Defendant QBE Specialty is a North Dakota corporation with its headquarters in New York. Defendant QBE First is a Delaware Corporation with its headquarters in Georgia.

39.     Venue is proper in this forum because at all times relevant hereto, Plaintiff  resides in the Southern District of Florida, and a substantial portion of the practices complained of herein occurred in the Southern District of Florida, and/or because Defendants have received substantial compensation as a result of doing business

in the Southern District of Florida.   Moreover, at all times material to the allegations

contained herein, Defendants personally and/or through an agent:

(a)  operated, conducted, engaged in, and carried on a business
venture in the Southern District of Florida or had an office or
agency in the Southern District of Florida; and/or

(b)  engaged in substantial activity within this state and district.

40.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because a

substantial part of the events giving rise to Plaintiff's claims occurred in the Southern

District of Florida and, as set forth above, Defendants are subject to personal jurisdiction

in this district.

41.     All conditions precedent to this action have occurred, been performed, or

have been waived.

## IV.  FACTUAL ALLEGATIONS

42.     Pursuant to the mortgage loan documents, borrowers, including Plaintiff, are

required to maintain insurance on the real property that serves as collateral for the mortgage loan.

If the borrower fails to maintain insurance, the mortgage servicer may forcibly place insurance

on the property.

43.     Plaintiff, Carina Hamilton f/k/a Lisa Monti, obtained a mortgage from SunTrust

Mortgage, a mortgage servicer, secured by parcel of real property in Broward County, Florida on

September 17, 2007.   Upon information and belief, SunTrust Mortgage sold the loan to

FannieMae and the service of the mortgage transferred to Litton Loan Servicing ("LLS").   In

2009, SunTrust Mortgage once again became the servicer of Plaintiff's loan.  Plaintiff ultimately

defaulted on her mortgage in 2009 and her insurance policy lapsed.

44.     From July 21, 2007 through July 21, 2008, Plaintiff's annual insurance policy premium that she purchased on the market was approximately $2,400.00.

45.     After Plaintiff defaulted on her loan, SunTrust Mortgage, without seeking competitive bids on the open market or attempting to maintain Plaintiff's much less expensive voluntary insurance policy , capriciously allowed QBE FIRST to obtain surplus lines insurance coverage for Plaintiff's home. In fact, SunTrust Mortgage had delegated all of its servicing functions relating to insurance, including, but not limited to, the purchase of force-placed insurance, to QBE FIRST.  .

46.     In September 2010, QBE FIRST, using documents containing SunTrust Mortgage's name and logo notified Plaintiff that it had force-placed insurance on her property with QBE Specialty, backdating her policy to April 22, 2010.  For a policy covering the time period April 22, 2010 through April 22, 2011, Plaintiff's premium with QBE was $10,181.32, even while the property value of Plaintiff's home, according to data compiled by Broward County, is assessed at only $84,000.

47.     By selecting QBE Specialty, QBE FIRST never even attempted to comply with the express requirements set forth in sections 626.915 and 626.916(1)(a), Florida Statutes that obligate it to  make reasonable efforts to obtain insurance from a Florida admitted carrier and to document those efforts.

48.     QBE First, on behalf of SunTrust Mortgage and using SunTrust Mortgage's name and logo, notified Plaintiff that the force-placed insurance policy had been secured and retroactively placed.  The notification, however, did not disclose that SunTrust Mortgage or an affiliate, subsidiary, or related company would derive a profit or financial windfall because a percentage of the premium of the force-placed insurance policy – the entirety of which was

11

charged to Plaintiff's account – would be paid back to SunTrust Mortgage or a related entity in the form of "kickbacks" and/or "commissions."

49.     Defendants improperly engaged in self-dealing at the expense of Plaintiff and the Class, in a manner not disclosed by the mortgage nor within the reasonable contemplation of the parties by charging Plaintiff and the Class the full amount of the exorbitantly-priced, force-placed insurance policies and paying and receiving a percentage of the premium to each other, thereby enabling Defendants to earn a hidden profit and financial windfall.

50.     Defendants' excessively priced insurance premiums violate the mortgage contract because they exceed the cost of the services and are not reasonable or appropriate to protect the mortgagee's interest in the property and rights under the security instrument.

51.     Borrowers, like Plaintiff and the Class Members, are notified in their mortgage contracts that the cost of the insurance may be higher than the amount they would typically pay for insurance obtained on the open market.

52.      These standard mortgage contracts state that the insurance will cover the lender but may or may not protect the borrower or the contents of the property, and further state that the lender is under no obligation to purchase any particular type or amount of coverage.  There are no insurance rates or premiums set forth in the mortgage contract for the cost of force-placed insurance policies.

53.     The mortgage contract does not disclose, however, that SunTrust will receive a commission or kickback from QBE Specialty or QBE FIRST for purchasing the insurance from them.  The mortgage contract also does not disclose that this commission will

be based upon a percentage of the cost of the premium of the force-placed insurance.  Instead, the contract misrepresents to borrowers that the cost of the force-placed insurance may be higher due to the "risk" the borrower poses or the costs incurred in securing the policies.

54.     The mortgage contract also does not disclose that the cost of the force placed insurance is increased because SunTrust has outsourced many of its mortgage servicing obligations to QBE FIRST, and that QBE FIRST performs these functions at little or no costs as part of a *quid pro quo* whereby it is given the exclusive right to sell force placed insurance on the SunTrust Mortgage portfolio.

55.     SunTrust Mortgage disingenuously claims that it incurs expenses in locating the force-placed insurance.

56.     In fact, the "expenses" are borne by QBE First, not SunTurst and included in the premiums charged to the affected borrows. However, SunTrust's agreement with the owners of the mortgage loans requires SunTrust to perform these services as part of its obligations for the servicing fees it receives.

57.     Plaintiff and the Class members do not have any choice or input into what company is used to force-place the insurance policy, what expenses are incurred in "finding" an insurance company, and further they do not have the option to shop for the insurance service themselves.

58.     The force-placed insurance policies are not the same type of policy that is authorized or required by the mortgage contract and is not one that a borrower could find on the open market.

59.     Upon information and belief, SunTrust Mortgage has negotiated deals with QBE Specialty and QBE FIRST whereby it receives a percentage of the cost of the premiums of the

force-placed insurance policy purchased for the borrower.   This commission or kickback encourages the Defendants to select the most expensive insurance policy despite not having a beneficial interest in the insured collateral.

60.     The commission or kickback is paid by QBE Specialty or QBE FIRST to SunTrust Mortgage or its affiliate in order to induce them to purchase excessively-priced, force-placed insurance policies.

61.     SunTrust Mortgage charges Plaintiff and the Class the full amount of the over-priced premium for the insurance policy, despite being paid the kickback percentage of the policy.   The force placed insurance policies also often charge borrowers for unnecessary insurance items.

62.     This scheme allows SunTrust Mortgage – through kickbacks – and QBE Specialty and/or QBE FIRST  – through excessively-priced premiums – to reap huge profits at the cost of the Plaintiff, the Class Members, or ultimately the investors.

63.     By securing these force-placed insurance policies through these exclusive relationships and not seeking competitive bids on the open market or attempting to maintain the borrower's policy , SunTrust is not only obtaining the highest  non-competitive  premium rate,  but  it  is  also  engaging  in  self-dealing  and profiteering.

64.     The kickbacks and commissions that SunTrust Mortgage can earn on the force-placed insurance policies are far greater than what it can earn on servicing a loan (approximately $50 per loan) which provides increased incentive for it to continue with this deceptive and unsavory practice.

65.     Upon information and belief, QBE and/or QBE FIRST have entered into agreements with SunTrust Mortgage whereby they will search its servicing portfolios to detect uninsured properties and will even perform other back-office administrative functions.

66.     The actions and practices described above represent unfair, deceptive, and fraudulent practices that, even if the terms of the mortgage could be construed to allow, would still be an abusive and unlawful use of its contract powers. Placing  these unreasonably priced  insurance policies  on  Plaintiff and  the  similarly situated  Class Members without regard  for  competition  on  the  open  market  or  a commercially reasonable price solely to maximize their own profits through the exorbitant cost of and by collecting kickbacks on those policies is inherently unfair and deceptive and prohibited by state and Federal law.

## CLASS ACTION ALLEGATIONS

### A.     Class Definition

67.     Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.  Plaintiff seeks to represent the following two classes:

> **Nationwide Class:** All individuals who were charged for a force-placed insurance policy placed on their property through Defendants – SunTrust Mortgage, QBE, and Sterling National and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

> **Subclass ("Florida Subclass"):** All individuals with mortgages on property located in Florida  who, within the applicable  statute  of  limitations preceding the filing of this action, were charged for a force- placed  insurance  policy  placed on their  property through Defendants  –  SunTrust, QBE, and Sterling  National and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

68.     Plaintiff reserves the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

15

69.     Defendants subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendants' standard and undisputed business practices.

**B.     Numerosity**

70.     The individual class members are so numerous that joinder of all members is impracticable.  The Defendants sell and service a large amount of mortgage loans and insurance policies in the state of Florida and nation-wide and have, as a general business practice, failed to comply with Federal and Florida state law.  Moreover, the individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendants.  The precise number of class members is certainly more than a thousand but can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**C.     Commonality**

71.     There are questions of law and fact that are common to the Plaintiff's and Class Members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

> (a) Whether the premiums charged to Plaintiff and the Class were *bona fide* and reasonable under Federal law;
>
> (b) Whether the kickbacks and commissions received by and paid by the Defendant companies constituted unfair and deceptive business practices and violated state consumer protection laws;
>
> (c) Whether Defendants purposely placed higher-priced insurance

premiums on Plaintiff and the Class in order to maximize their own profits;

(d) Whether SunTrust Mortgage breached the mortgage contract with Plaintiff and the Class by failing to seek competitive bids on the open market or attempting to continue or reestablish the prior existing policies;

(e) Whether Defendants have unlawfully unjustly enriched themselves at the expense of the Plaintiff and the Class;

(f) Whether Defendants breached the implied covenant of good faith and fair dealing by charging their residential borrowers excessive amounts for force-placed insurance, a portion of which was paid back to the mortgage servicer in the form of commissions or kickbacks, and misrepresenting why the cost of force-placed insurance was excessive;

(g) Whether the provision in the mortgage instrument relating to force-placed insurance is procedurally and substantively unconscionable because it does not contemplate or authorize Defendants to derive hidden financial benefits by force-placing the high cost insurance premiums; and

(h) Whether an objective consumer would be deceived by Defendants' arrangement and scheme, which incentivizes all the Defendants to charge excessive fees for force-placed insurance and therefore constitutes a violation of deceptive and unfair trade practices under Florida law.

### D.     Typicality

72.     Plaintiff is a member of the Class as Defendants' own records plainly reveal. Plaintiff's claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

### E.     Adequacy of Representation

73.     Plaintiff is an adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous

17

prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

74.     To prosecute this case, Plaintiff has chosen the law firms of The Law Offices of Jeffrey N. Golant, P.A., Golant & Golant P.A., and Giskan Solotaroff Anderson & Stewart, LLP. These firms are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.      Requirements of Fed. R. Civ. P. 23(b)(3)**

75.     The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured.

76.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

77.     As a result, when determining whether common questions predominate, courts focus on the issue of liability. If the issue of Defendants' liability is common to the Class, as is the case at bar, then common questions will be held to predominate over individual questions.

**G.      Superiority**

78.     A class action is superior to individual actions in part because of the

non- exhaustive factors listed below:

      (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

      (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.  As a result, individual class members have no interest in prosecuting and controlling separate actions;

      (c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

      (d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

      (e) Individual suits would not be cost effective or economically maintainable as individual actions; and

      (f) The action is manageable as a class action.

## H.      Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

79.    Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Class.

80.    Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Class.

81.    Defendants have acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the Class as a whole.

<u>**COUNT I**</u>

<u>**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** **AS TO**</u>
<u>**ALL CLASS MEMBERS**</u>

82.     Plaintiff re-alleges and incorporates Paragraphs 1 – 81 above as if  ully set forth herein and further alleges as follows.

83.     Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

84.     Where an agreement permits one party to unilaterally determine the extent of  the other's required performance, an obligation of good faith in making such determination is implied.  Mortgage servicers, like SunTrust Mortgage, are permitted to choose unilaterally the company to purchase force-placed insurance from and have an obligation not to exercise their discretion to choose the company capriciously and in bad faith (for their own financial gain).

85.     The mortgage contracts and insurance policies of Plaintiff and the Class contained an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the obligations under the mortgage contracts in good faith, to deal fairly with Plaintiff and the Class, and not to charge excessive or unreasonable fees for the force-placed insurance for the purposes of maximizing profits at the expense of Plaintiff and the Class.

86.     Defendants breached their duty of good faith and fair dealing in at least the following respects:

> (a) Using their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting exorbitantly-priced force-placed insurance

policies to maximize their own profits;

(b) Failing to seek competitive bids on the open market and instead creating "back room" deals whereby the insurance policies are continually purchased through the same companies;

(c) Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and Class and misrepresenting the reason for the cost of the policies;

(d) Collecting a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible; and,

(e) In relation to some members of the Class, including the Class Representative, retroactively placing the exorbitantly-priced policies for time periods that have already passed.

(f) Arranging for QBE First to perform mortgage servicing functions in SunTrust's stead at little or no cost, and adding the cost of that outsourcing relationship to the force-placed insurance premium, effectively forcing borrowers whose loans are force-placed to bear a substantial share of the SunTrust Mortgage's costs of doing business.

87.    As direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages.

**WHEREFORE,** Plaintiff on behalf of herself and similarly situated Class members, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing.  Plaintiff also seeks compensatory damages resulting from Defendants' breach of their duties.  Plaintiff further seeks all relief deemed appropriate by this Court, including attorney fees and costs.

## COUNT II

## VIOLATION OF THE FLORIDA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT (AGAINST SUNTRUST)

88.     Plaintiff re-alleges and incorporates Paragraphs 1 – 81 above as if fully set forth herein and further alleges as follows.

89.     This is an action for damages, declaratory and injunctive relief pursuant to the Florida Unfair and Deceptive Trade Practices Act, Section 501.201, Florida Statutes (2012) *et. seq.*

90.      As discussed above, the arrangement between SunTrust and QBE First involves QBE First monitoring SunTrust's mortgage servicing portfolio, determining when a borrower's voluntary coverage has lapsed, and then obtaining force-placed insurance from QBE Specialty, if QBE First determines that force-placement is appropriate. In order to facilitate the arrangement whereby QBE First monitors SunTrust's mortgage servicing portfolio, SunTrust transfers extensive amounts of data concerning the borrowers whose mortgage loans SunTrust services, the homes that they own, and the borrowers'  insurance coverage. This information includes information that the borrowers provided to SunTrust concerning premiums, terms, and conditions of prior insurance coverage, insurance claims, and insurance history

91.     Section 626.9551(1)(d) forbids any person from:

> us[ing] or provid[ing] to others insurance information required to be disclosed by a customer to a financial institution, or a subsidiary or affiliate thereof, in connection with the extension of credit for the purpose of soliciting the sale of insurance, unless the customer has given express written consent or has been given the opportunity to object to such use of the information. Insurance information means information concerning premiums, terms, and conditions of insurance coverage, insurance claims, and insurance

history provided by the customer. The opportunity to object to the use of insurance information must be in writing and must be clearly and conspicuously made.

92.     SunTrust neither obtained any of the borrowers' whose loans it services consent, nor provided those with an opportunity to object meeting the requirements of section 626.9551(1)(d), prior to transferring their protected insurance information to QBE First to be used in soliciting the sale of force placed insurance.

93.     SunTrust provided the insurance information to QBE First in order to facilitate QBE First's efforts to solicit the sale of insurance, both to the borrowers whose loans SunTrust services and to SunTrust itself.

94.      Section 626.9551(1)(d) is a statute which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

95.     Section 501.203(c) incorporates all Florida statutes regulating unfair methods of competition, or unfair, deceptive, or unconscionable practices. SunTrust's violation of section 626.9551(1)(d) is therefore a per se violation of the Florida Unfair and Deceptive Trade Practices Act.

96.     QBE First's agreement to handle the insurance related mortgage servicing functions is one of the primary reasons why SunTrust selected QBE Specealty and QBE First to handle force-placed insurance on the mortgage loans within its servicing portfolio.  However, the transfer of SunTrust's servicing obligations to QBE First could not be accomplished with the prohibited transfer of borrower's insurance information protected by section 626.9551(1)(d).  As a result of this prohibited information, Plaintiff and all members of the Class have been damaged to the extent that they were charged unjustified and inflated premiums for force-placed insurance.  Similarly, even those Sun

Trust borrowers who were not charged for force-placed insurance have been damaged because their statutorily protected privacy rights are violated by the transfer to of their insurance information to QBE First.

**WHEREFORE**, Plaintiff and the Class members seek a judgment in their favor against SunTrust Mortgage for the actual damages suffered by them in the form of unreasonable force-placed insurance premiums, as well as a declaratory judgment pursuant to section 501.211(1) establishing that Sun Trust's outsourcing relationship with QBE First is an unlawful practice pursuant to Section 501.203(c), Florida Statutes and Section 626.9551(1)(d), Florida Statutes, and an injunction pursuant to 501.203(c), requiring SunTrust to immediately cease and desist from any further such violations and awarding Plaintiff and the Class attorney's fees and litigation costs pursuant to section 501.2105, Florida Statutes.

<u>**COUNT III**</u>

<u>**UNCONSCIONABILITY**</u>

97.    Plaintiff re-alleges and incorporates Paragraphs 1 – 81 above as if fully set forth herein and further alleges as follows.

98.    The provision in the standard mortgage instrument that allows SunTrust to force-place high-cost insurance and charge borrowers the "cost" of obtaining that insurance and/or misrepresents why the cost of force-placed insurance is excessive is procedurally and substantively unconscionable.

99.    While this standardized provision states that the cost of the force-placed insurance might exceed the cost of insurance that a borrower could obtain, it does not authorize or contemplate that SunTrust Mortgage or Defendants will derive hidden profits and a financial windfall by charging the borrower for the full price of

the premium although a percentage of that premium is paid back to SunTrust or a related entity in the form of commissions and kickbacks and subsidized outsourcing.

No reasonable person would agree to the foregoing provision if they were aware that a portion, based upon a percentage of the cost, was being paid back to the mortgage servicer or if they were aware that the Defendants would have an incentive to choose an exorbitantly-priced policy in order to reap huge profits off of the borrowers.

100.    Plaintiff and the Class are borrowers and were not in a position to negotiate the  terms of the mortgage and were also not in a position to know of or experience the results of Defendants' practices before obtaining their mortgages.

101.    Considering the business acumen and experience of Defendants in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the purpose and effect of the applicable terms, the allocation of the risks between the parties, and other public policy considerations, the provision in the mortgage instrument relating force-placed insurance is procedurally unconscionable.

102.     The same provision is substantively unconscionable because it does not disclose nor contemplate that Defendants will derive hidden profits and a financial windfall from force-placed insurance through exclusive relationships and kickbacks.  No reasonable person would have contemplated or agreed to the foregoing provision if they were aware that a percentage of the cost of the force-placed insurance would be paid to the mortgage servicer and would provide Defendants the incentive to place excessively priced insurance on the mortgage loan.

**WHEREFORE**,    based   on    the    procedural    and

substantive unconscionability of the contract provision at issue, Defendants should be required to refund an amount equal to all hidden profits or other financial benefits previously collected from Plaintiff and members of the Class, and to rescind all such amounts charged but not yet collected from Plaintiff and the Class.

## COUNT IV

## UNJUST ENRICHMENT

103.    Plaintiff re-alleges and incorporates Paragraphs 1 – 81 above as if fully set forth herein and further alleges as follows.

104.    The Defendants have received, and continue to receive, a benefit at the expense of the Plaintiff and the Class, and have knowledge thereof.

105.    The Defendants have unlawfully and unfairly charged, attempted to collect, and collected, excessive amounts for force-placed insurance policies when reasonably priced insurance could have been obtained on the open market or maintained through Plaintiff's and the Class's prior insurance company. Moreover, Defendant, SunTrust Mortgage or its related entities, have received and retained kickbacks based on a percentage of the cost of the insurance premiums. Defendants choose excessively-priced insurance policies for the motive of maximizing their own profits and unjustly enriching themselves. Accordingly, Defendants have received benefits that they have unjustly retained at the expense of the members of the Class.

106.    The circumstances are such that it would be inequitable for the Defendants to retain the benefit without paying the value thereof to the members of the Class.

**WHEREFORE**, Plaintiff, on behalf of herself and all similarly situated

individuals, demands judgment against the Defendants for compensatory damages, pre and post judgment interest, attorney's fees, declaratory and injunctive relief, costs incurred in bringing this action, and any other relief the Court deem just and proper.

## COUNT V

## NEGLIGENT HIRING AND RETENTION OF QBE FIRST BY SUNTRUST

102.    This Count is pled in the alternative.

103.    SunTrust contracted with QBE First to monitor its loan servicing portfolio, determine when it was appropriate to purchase force placed insurance, and to obtain appropriate force placed insurance coverage when the borrower failed to maintain adequate voluntary coverage.

104.    Because of its affiliation with QBE Specialty, a surplus lines insurance carrier, QBE First was unfit to provide the services that SunTrust delegated to it because it had a conflict of interest that would cause it to select surplus lines insurance through QBE Specialty whenever it determined that force placed insurance was appropriate for any properties within the State of Florida.

105.    Surplus lines insurance is inherently more expensive and less valuable then insurance coverage issued by an admitted insurer.  In fact, Section  626.916, Florida Statutes expressly prohibits a Florida licensed insurance agent from selling surplus lines coverage unless it is able to certify that it engaged in a diligent effort, but was unable to procure the required coverage from an admitted insurer.

106.    SunTrust knew, or should have known, that QBE First would place all force-placed insurance in the State of Florida with a surplus lines insurer, and that such coverage was more expensive and less valuable than coverage through an admitted carrier.

107.    SunTrust's decision to outsource its insurance monitoring and tracking obligations to a provider with a conflict of interest created a foreseeable zoon of risk subjecting borrowers with force-placed insurance to over-priced surplus lines coverage.

108.    SunTrust owed the borrowers whose mortgage loans it serviced a duty to protect them from foreseeable economic harm resulting from the purchase of over-priced force-placed insurance.

109.    By selecting QBE First to monitor its portfolio and allow it to decide when to purchase force placed insurance and to select the provider, SunTrust breached its duties to the borrowers whose mortgage loans it services them to protect them from the foreseeable economic harm caused by using an unfit force-placed insurance provider and the forced purchase of over-priced surplus lines insurance.

109.    SunTrust's selection of QBE First was willful, wanton, and or reckless, and an award of punitive damages is appropriate.

**WHEREFORE** Plaintiff and the Class members seek a judgment in their favor against QBE First for the actual and punitive damages suffered by them as a result of SunTrust's negligence.  Plaintiff also seeks all costs of litigating this action including attorney's fees.

## COUNT VI

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (against QBE SPECIALTY, QBE FIRST and SUNTRUST)

110.    Plaintiff re-alleges and incorporates Paragraphs 1 – 81 above as if fully set forth herein and further alleges as follows.

111.    Plaintiff and other members of the Class are borrowers who have a business relationship with the owners of their mortgage loans.  As borrowers, Plaintiff and the Class members have legal rights under these mortgage contracts.  For example, the borrowers have a

right to obtain financing for real property at an agreed upon interest rate, to be repaid at an agreed upon interval, subject to various other terms and conditions relating to the collateral property.

112.    QBE Specialty, QBE First and SunTrust intentionally and unjustifiably interfered with the Plaintiff's and the Class's rights under the mortgage contracts, as described above by, *inter alia*, paying and accepting kickbacks and other improper consideration and the disguising costs for the outsourced services provided by QBE First to SunTrust, and  purposefully and knowingly charging the costs of both the kickbacks and the out-sourced services to Plaintiff and the Class.

111.    Plaintiff and the Class have been damaged as a result of QBE FIRST interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the mortgages, and having their privacy rights protected by section 626.9551(1)(c) violated.

112.    While SunTrust is the mortgage owner's contractor and QBE First is a subcontractor, both SunTrust and QBE First were acting on their own behalf and against their principal's interests when they engaged in the conduct described herein.

112.    SunTrust and QBE First intentionally interfered with Plaintiff's and the Class members' business relationship in order to obtain unreasonable financial gain. Accordingly, an award of punitive damages is appropriate.

**WHEREFORE** Plaintiff and the Class members seek a judgment in their favor against SunTrust, QBE Specialty and/or QBE First for the actual and punitive damages suffered by them as a result of SunTrust, QBE Specialty and QBE FIRST's tortious interference.  Plaintiff also seeks all costs of litigating this action including attorney's fees.

## PRAYER FOR RELIEF

112.     **WHEREFORE**, Plaintiff, on behalf of herself and all similarly situated individuals demand judgment against Defendants as follows:

(1)     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the class;

(2)     Awarding damages sustained by Plaintiff and the Class as a result of Defendants' breach of the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(3)     Finding that Defendants have been unjustly enriched and requiring Defendants to  refund all unjust benefits to Plaintiff and the Class, together with pre- judgment interest;

(5)     Declaring the provision in the mortgage instrument relating to  force- placed  insurance  to  be  procedurally  and  substantively unconscionable  and  requiring Defendants to refund an  amount equal to all hidden  profits  or  other  financial  benefits  collected  from  Plaintiff  and  the Class,  and  to  rescind  all  such  amounts  charged  but  not  yet  collected  from Plaintiff and the Class by virtue of the provision;

(7)     Declaring  pursuant  to  Section  501.203(c),  and  section 626.9551(1)(d),  Florida  Statutes  that  the  transfer  of  protected  insurance information  provided  by  borrowers  whose  loans  SUN  TRUST  mortgage services to QBE FIRST is a violation of the Florida Unfair and Deceptive Trade

30

Practices Act and enjoining any further violations.

(8)    Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses;

(9)    Such other and further relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted on July 4th, 2013.


THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1000 W. McNab Rd. Ste. 150
Pompano Beach, FL 33069
Phone:    (954) 942-5270
Fax:       (954)942-5272
Email:  jgolant@jeffreygolantlaw.com
**/S/ JEFFREY N GOLANT ESQ.**
Fla. Bar. No. 0707732

GISKAN SOLTAROFF ANDERSON AND STEWARD LLP
Catherine Anderson ESQ.
Email: canderson@gslawny.com
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315
Admitted Pro Hac Vice

GOLANT & GOLANT, P.A.
Margery E. Golant, ESQ.
Email: mgolant@golantlaw.com
2385 NW Executive Center Drive
Suite 100
Boca Raton, FL  33431
Phone: (561) 206-6171
Fax: (561) 206-6172
Fla. Bar No. 44466

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 4st , 2013 I electronically filed the foregoing

document with the Clerk of Court using CM/ECF. I also certify that the foregoing

document is being served this day on all counsel of record identified below by

notice of electronic filing generated by the CM/ECF system:


Marc Jonathan Gottlieb ESQ.
Akerman Senterfitt & Eidson
Las Olas Centre
350 E Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-0006
954-468-2440
Fax: 463-2224
Email:
marc.gottlieb@akerman.com
Attorney for Defendant
Suntrust Mortgage Inc.


William Patrick Heller ESQ.
Akerman Senterfitt & Eidson
Las Olas Centre
350 E Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-0006
954-463-2700
Fax: 463-2224
Email:
william.heller@akerman.com
Attorney for Defendant
Suntrust Mortgage Inc.


Christopher Stephen Carver ESQ.
Akerman Senterfitt
Suntrust International Center

1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
305-982-5572
Fax: 305-374-5095
Email:christopher.carver@akerman.
Attorney for Defendant
Suntrust Mortgage Inc.

Ross E. Morrison
Email: rmorrison@buckleysandler.c
BuckleySandler, LLP
1133 Avenue of the Americas
Suite 3100
New York, NY
212-600-2315
Attorney for Defendants QBE First
Specialty Ins. Co.

Stephen M. LeBlanc
BuckleySandler, LLP
1250 24th Street, NW
Suite 700
Washington, DC 20037
202-349-8000
Email: sleblanc@buckleysandler.cor
Attorney for Defendants QBE First
Specialty Ins. Co.

Brian W. Toth
Holland & Knight
701 Brickell Avenue
Suite 3000
Miami, FL 33131
305-374-8500
Email: brian.toth@hklaw.com
Attorney for Defendants QBE First
Specialty Ins. Co.

**/S/ JEFFREY GOLANT**