## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-60749-CIV-ROSENBAUM

CARINA HAMILTON f/k/a LISA MONTI
and DAVID S. WIEDER on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

                                              **CLASS ACTION**

v.                                           **JURY DEMAND**

SUNTRUST MORTGAGE INC., QBE
SPECIALTY INSURANCE COMPANY; and
STERLING NATIONAL INSURANCE AGENCY n/k/a
QBE FIRST INSURANCE AGENCY;

        Defendants.
_____/

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Carina Hamilton f/k/a Lisa Monti and David S. Wieder ("Plaintiffs"), on behalf of themselves and a class of similarly situated persons who were charged for force-placed insurance by Defendants in connection with their home mortgages, bring this action against Defendant SunTrust Mortgage Inc. ("SunTrust" or "SunTrust Mortgage"), QBE Specialty Insurance Company ("QBE Specialty"), and Sterling National Insurance Agency, now known as QBE FIRST Insurance Agency ("QBE FIRST") (together the "QBE Defendants").

## INTRODUCTION

1.     On November 10, 2010, *American Banker* published an article describing major mortgage lenders' and servicers' questionable and often illegal practices related to force-placed insurance. The article revealed for the first time the exceptionally profitable exclusive relationships, collusive activities, and circular arrangements among the mortgage lenders and

1

servicers, their affiliates, and their cooperating insurers, many of which have since been sued in numerous cases proceeding across the country.

2.      Lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard or flood insurance coverage on property that secures a loan.  Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower.  The force-placed insurance only covers the property and does not provide the same coverage as a typical homeowners' policy (such as coverage for personal property or theft).

3.      The arrangements revealed by *American Banker* yield participants in these force-placed insurance schemes hundreds of millions of dollars annually. Just two insurance companies control the entire market for forced-placed policies in the country—Assurant and QBE.  These companies and their affiliates enter into exclusive relationships with the major mortgage lenders and servicers to provide the policies and to perform mortgage servicing responsibilities at a subsidized cost.  To maintain their exclusive relationships with these lenders, the insurers pay unearned "kickbacks" based upon a percentage of the force-placed premiums ultimately charged to the borrower, offer them subsidized administrative services with the expenses being passed to the borrower, and/or enter into lucrative captive reinsurance deals with them.

4.      In this action, Plaintiffs challenge SunTrust's practice of purchasing force-placed hazard insurance exclusively from the QBE Defendants pursuant to agreements that return an unwarranted financial benefit to SunTrust (and the QBE Defendants) or their affiliates and result in improper, unjustified, and inflated charges to the borrower for force-placed insurance in violation of the law.

5.     The money to finance the force-placed insurance schemes comes from unsuspecting borrowers, like Plaintiffs here, who are charged inflated force-placed insurance premiums by lenders.   In many instances, borrowers are required to retroactively pay for insurance coverage to cover periods during which no claims were made, or coverage that exceeds the legal requirements, and are charged additional improper fees.

6.     These schemes take advantage of the broad discretion afforded the lenders and/or servicers in standard form mortgage agreements.  The agreements typically require the borrower to carry hazard insurance sufficient to cover the lender's interest in the property against fire and other perils.   If a homeowner's hazard policy lapses, the mortgage agreement allows the lender to "force place" a new policy on the property at the borrower's expense.

7.     Although force-placed insurance is designed to protect the lender's interest in the property that secures the loan and thus should not exceed that interest, lenders, like SunTrust here, will often purchase coverage from their exclusive insurers, (the QBE Defendants here), in excess of that required to cover their own risk.  And, as a matter of practice, the major lenders and servicers collude with the force-placed insurers to manipulate the force-placed insurance market and artificially inflate the premiums charged to consumers, resulting in premiums generally five to six and sometimes up to ten times greater than those available to the consumer in the open market.  *American Banker* reported that "[t]hough part of the extra expense can be explained by the higher risks associated with insuring the homes of delinquent borrowers, force-placed policies generate profit margins unheard of elsewhere in the insurance industry—even after accounting for the generous commissions and other payments that servicers demand."  *See* J. Horowitz, *Ties to Insurers Could Land Mortgage Servicers in More Trouble*, AM. BANKER (Nov. 10, 2010), *available at* http://www.americanbanker.com/issues/175_216/ties-to-insurers-

servicers-in-trouble-1028474-1.html.   Lenders, servicers, and force-placed insurers reap these

unconscionable profits entirely at the expense of the unsuspecting borrower.

      8.     At a hearing on force-placed insurance held by the National Association of

Insurance Commissioners ("NAIC"), Birny Birnbaum, the foremost expert on the force-placed

insurance market, illustrated the staggering growth in profits that these schemes have reaped in

recent years:[1]

### LPI Premiums Have Quadrupled Since 2004

| Year | Gross Written Premium ($ Millions) | Net Written Premium ($ Millions) |
|------|------------------------------------|----------------------------------|
| 2004 | $1,485 | $796 |
| 2005 | $1,832 | $919 |
| 2006 | $2,163 | $1,074 |
| 2007 | $3,058 | $1,647 |
| 2008 | $4,000 | $2,209 |
| 2009 | $5,181 | $3,049 |
| 2010 | $5,915 | $3,223 |
| 2011 | $5,692 | $3,450 |
| 2004-2011 | $29,326 | $16,368 |

2009-2011 GWP Understated, Reporting Errors by QBE

CEJ LPI Presentation to NAIC      13      August 9, 2012

      9.     Florida has now become the epicenter for these force-placed insurance schemes.

In his presentation to the NAIC, Mr. Birnbaum illustrated the astounding rise in force-placed

insurance policies in Florida:[2]

---

[1] The following graph is taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at:
http://www.naic.org/documents/committees_c_120809_public_hearing_lender_placed_insurance_presentation_birnbaum.pdf

[2] This graph is taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The

**LPI Premium by State:  Florida Has Become Ground Zero**

|    | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|----|------|------|------|------|------|------|------|------|
| FL | 10.6% | 10.8% | 13.3% | 17.9% | 22.9% | 34.3% | 36.7% | 35.1% |
| CA | 20.8% | 19.3% | 21.2% | 23.5% | 24.3% | 14.0% | 11.1% | 10.2% |
| TX | 10.6% | 10.7% | 8.8% | 8.7% | 7.0% | 5.6% | 5.6% | 6.1% |
| NY | 3.6% | 3.6% | 4.5% | 4.4% | 4.3% | 4.7% | 5.4% | 5.6% |
| IL | 3.0% | 3.3% | 3.9% | 3.7% | 3.9% | 4.4% | 4.1% | 4.6% |
| NJ | 2.9% | 2.7% | 2.9% | 2.7% | 2.7% | 2.9% | 3.4% | 4.0% |
| MI | 4.2% | 4.4% | 4.4% | 5.8% | 3.6% | 2.7% | 2.2% | 2.0% |
| OH | 3.6% | 3.8% | 3.5% | 2.7% | 2.4% | 2.2% | 2.3% | 2.9% |
| GA | 3.4% | 3.2% | 3.2% | 2.4% | 2.3% | 2.3% | 2.3% | 2.3% |
| PA | 2.6% | 2.6% | 2.7% | 1.8% | 1.8% | 1.8% | 1.7% | 1.8% |

CEJ LPI Presentation to NAIC                                        15                                        August 9, 2012

10.     Mortgage servicers, like SunTrust, have no incentive to shop for the best rate. Instead, they are motivated to place the insurance with their exclusive insurer that offers them the best financial benefit in terms of kickbacks, reinsurance premiums, and/or subsidized administrative costs.  Borrowers are at the complete mercy of the mortgage servicers and their arrangements with the insurance providers. Borrowers can select a lender or mortgage broker for their loan but cannot select what company services that loan.

11.     These practices have drawn the scrutiny of state and federal authorities.  The New York Department of Financial Services ("NYDFS") conducted hearings in May 2012 during which force-placed insurance practices, including those of the QBE Defendants here, were addressed.   Superintendent Benjamin Lawsky noted in his opening statement that the Department's initial inquiry uncovered "serious concerns and red flags" which included: (1) exponentially higher premiums for force-placed insurance than voluntary homeowner's insurance; (2) extraordinarily low loss ratios; (3) harms to distressed borrowers; (4) lack of

---

presentation is available at:
http://www.naic.org/documents/committees_c_120809_public_hearing_lender_placed_insurance
_presentation_birnbaum.pdf

349558

competition in the market; (5) that force-placed insurance has become a major profit center for both banks and insurers; and (6) tight relationships between banks, their subsidiaries and insurer."[3]

12.     Upon information and belief, SunTrust has entered into exclusive agreements with the QBE Defendants pursuant to which the QBE Defendants and/or their subsidiaries/affiliates: (a) have the exclusive right to provide excessively priced force-placed insurance policies for the SunTrust mortgage portfolio; (b) perform mortgage servicing activities for SunTrust at subsidized costs; (c) kickback a portion of high-cost force-placed premiums for each force-placed insurance policy purchased for a borrower based upon a percentage of the cost; and/or (d) cede a portion of the force-placed insurance policies to SunTrust or an affiliate without any real or commensurate transfer of risk.

## PARTIES

13.     Plaintiffs CARINA HAMILTON f/k/a Lisa Monti is a citizen of the State of Florida and a resident of Broward County. She is a natural person over 21 and otherwise *sui juris*.

14.      Plaintiffs DAVID S. WIEDER is a citizen of the State of Florida and a resident of Miami-Dade County. He is a natural person over the age of twenty-one and otherwise *sui juris*.

15.     Defendant SUNTRUST MORTGAGE INC. operates as a mortgage servicer in the United States and the District of Columbia. SunTrust is a Virginia corporation and a wholly-owned subsidiary of SunTrust Bank. SunTrust Bank is the nation's eleventh-largest commercial bank, and it is a wholly-owned subsidiary of SunTrust Bank, Inc. SunTrust Mortgage's principle

---

3 A transcript of Superintendent Lawsky's statement can be found at:
http://www.dfs.ny.gov/insurance/hearing/fp_052012/fp_trans_20120517.pdf

349558

place of business is 901 Semmes Avenue, Richmond, Virginia.

16.     Defendant QBE SPECIALTY INSURANCE COMPANY is an excess and surplus line insurance provider writing force-placed insurance in the State of Florida.  It is part of QBE North America (which in turn is part of QBE Ins. Group Ltd. An Australian company). QBE Specialty is domiciled in North Dakota and maintains its headquarters in New York, New York.  As a surplus lines carrier, QBE Specialty does not file its insurance rates with the Florida Department of Insurance.  Accordingly, QBE Specialty's insurance rates are not approved rates.

17.     Defendant STERLING NATIONAL INSURANCE AGENCY n/k/a QBE FIRST INSURANCE AGENCY is part of QBE North America (which in turn is part of QBE Insurance Group Limited, an Australian company).  Upon information and belief QBE First performs mortgage servicing activities to SunTrust at a subsidized cost and in turn collects a percentage of the premium.  QBE First is incorporated in Delaware and maintains its headquarters in Atlanta, Georgia.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.).

19.     Plaintiffs are citizens of the state of Florida.  Defendants are citizens of various other states but are registered to do business in the aforementioned states.  The amount in controversy exceeds $5,000,000 and there are at least one hundred members of the putative class.

20.     This Court has jurisdiction over Defendants because they are foreign corporations authorized to conduct business in Florida, are doing business in Florida and have registered with the Florida Secretary of State, or do sufficient business in Florida, have sufficient minimum

contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and service of mortgages or other lending services and insurance policies in Florida.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

21.     In addition, this Court has subject-matter jurisdiction under CAFA because the amount in controversy exceeds $5 million and diversity exists between the Plaintiffs and the Defendants.  28 U.S.C. § 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

22.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants transact business and may be found in this District.  Venue is also proper here because at all times relevant hereto, Plaintiffs resided in the Southern District of Florida and a substantial portion of the practices complained of herein occurred in the Southern District of Florida.

23.     All conditions precedent to this action have occurred, been performed, or have been waived.

## **FACTUAL ALLEGATIONS**

24.     The standard form mortgage agreements used by most major lenders include a provision requiring the borrower to maintain hazard insurance coverage on the property securing the loan, and in the event the insurance lapses, permit the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare the borrow in default.

25.     What is unknown to borrowers and not disclosed in the mortgage agreements is that lenders and loan servicers have exclusive arrangements with certain insurers to manipulate

the force-placed insurance market and artificially inflate premiums.  The premiums are inflated to provide lenders and servicers with kickbacks (either disguised as "commissions" or through lucrative ceded reinsurance premiums), or to allow the insurer to provide the lender with below cost mortgage servicing responsibilities that are not properly chargeable to the homeowners. The borrower is then forced to pay the inflated premiums.

### The Force-Placed Insurance Scheme

26.     Upon information and belief, the scheme here works as follows.  SunTrust purchases master or "umbrella" insurance policies that cover their entire portfolio of mortgage loans.  In exchange, the QBE Defendants obtain the exclusive right to force place insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate.  QBE First monitors SunTrust's loan portfolio for lapses in borrowers' insurance coverage at cost below the actual cost of this service. Once a lapse is identified QBE First sends notice to the borrower – purporting to come from SunTrust -  that insurance will be "purchased" and force-placed if proof of voluntary coverage is not provided.  If a lapse continues, QBE First notifies the borrower (again with a notice that purportedly comes from SunTrust) that insurance is being force-placed at his or her expense.

27.     QBE First exclusively uses its affiliated insurer – QBE Specialty – to force-place an excessively-priced insurance policy that is ultimately charged to the borrower.   Upon information and belief, a portion of that charge is returned to SunTrust or an affiliate, in one or more of many ways including but not limited to as a "commission," through a reinsurance premium (the affiliate then shares a percentage of that payment with SunTrust, sometimes in the form of "soft dollar" credits), or through the charging of below cost or free services.  QBE First also retains a portion of the premium charge for allegedly acting as an insurance broker despite

the pre-existing exclusive arrangements with SunTrust and its affiliated insurer QBE Specialty.

28.     No individualized underwriting ever takes place for the force-placed coverage. Rather, SunTrust requires or at least permits the QBE Defendants to automatically issue these policies when a borrower's "voluntary" insurance coverage is not maintained.  In many instances, the insurance lapse is not discovered for months or even years after the fact.  Despite the absence of any claim or damage to the property during the period of lapse, borrowers are retroactively charged for the coverage.

29.     Once coverage is forced on the property, SunTrust charges the borrower for the insurance.  The amount is automatically deducted from the borrower's mortgage escrow account, or added to the balance of the borrower's loan.[4]

30.     The money paid back to SunTrust or its affiliate from the QBE Defendants is not given in exchange for any services provided; it is simply grease paid to keep the force-placed machine moving.  Often, in an attempt to mask the kickback as legitimate, the mortgage servicer discloses to the borrower that the affiliate may receive a "commission" or "compensation" for helping the lender to procure a force-placed policy.  In reality, however, no work is ever done by the affiliate to procure insurance for that particular borrower because the coverage comes through the master or umbrella policy already in place.

31.     Under this highly profitable force-placed insurance scheme, lenders and servicers, like SunTrust here, are incentivized to purchase and force-place a highly priced force-placed insurance policy on a borrower's property because the higher the cost of the insurance policy, the higher the kickback.

32.     The companies providing force-placed insurance to lenders and servicers also

---

[4] On some occasions when a borrower does not have an escrow account, a lender creates an escrow account with a negative balance and charges the borrower to bring the balance to zero.

enter into agreements for the insurer to provide servicing activities on the entire loan portfolio at below cost.  Here, QBE First performs servicing activities for SunTrust and uses its own affiliated insurer, QBE Specialty, to force-place the insurance.  The servicing costs are added into the force-placed premiums which are then passed on to the borrower.  The insurers are able to provide these services at below cost because of the enormous profits they make from the hyper-inflated premiums charged for force-placed insurance.  However, because insurance-lapsed mortgaged property comprises only 1-2% of the lenders' total mortgage portfolio, the borrowers who pay these force-placed insurance charges unfairly subsidized the rest by bearing the cost of servicing the lender's entire loan portfolio.

33.     In addition, force-placed insurance providers, like QBE Specialty here, may enter into essentially riskless "captive reinsurance arrangements" with lenders and their affiliates to "reinsure" the property insurance force-placed on borrower.

34.     The Defendants may also overcharge borrowers by disregarding the Standard Mortgage Clause or the Lender's Loss Payable Endorsement ("LLPE") in the standard form mortgage agreement.  Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy.  Force-placed policies, however, take effect on the date of termination, and "double-cover" the property unnecessarily during the period covered by the LLPE or Standard Mortgage Clause.  This means the borrower is charged for coverage for which the lender or servicer has no exposure.

35.     Ultimately it is the unsuspecting borrower who suffers the consequences of these unconscionable practices.[5]

---

[5] Furthermore, when the entire cost of the high-priced force-placed premium is added by SunTrust to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to the lender.

**Plaintiff Carina Hamilton**

36.     Plaintiff, Carina Hamilton f/k/a Lisa Monti, obtained a mortgage from SunTrust Mortgage, a mortgage servicer, secured by parcel of real property in Broward County, Florida on September 17, 2007.   Upon information and belief, SunTrust Mortgage sold the loan to Fannie Mae and the service of the mortgage transferred to Litton Loan Servicing ("LLS").

37.     From July 21, 2007 through July 21, 2008, Plaintiff Hamilton's annual insurance policy premium that she purchased on the market was approximately $2,400.00.

38.     After Plaintiff Hamilton defaulted on her loan, SunTrust Mortgage, without seeking competitive bids on the open market or attempting to maintain Hamilton's voluntary insurance policy, allowed QBE First to obtain surplus lines insurance coverage for her home.

39.     In September 2010, QBE First, using documents containing SunTrust Mortgage's name and logo notified Hamilton that it had force-placed insurance on her property with QBE Specialty, backdating her policy to April 22, 2010.  For a policy covering the time period April 22, 2010 through April 22, 2011, Plaintiff Hamilton was charged $10,181.32, even while the property value of her home, according to data compiled by Broward County, was assessed at only $84,000.

40.     By selecting QBE Specialty, QBE First never even attempted to comply with the express requirements set forth in sections 626.915 and 626.916(1)(a), Florida Statutes that obligate it to  make reasonable efforts to obtain insurance from a Florida admitted carrier and to document those efforts.

41.     QBE First, on behalf of SunTrust Mortgage and using SunTrust Mortgage's name and logo, notified Plaintiff Hamilton that the force-placed insurance policy had been secured and retroactively placed.  The notification, however, did not disclose that SunTrust

12

Mortgage or an affiliate, subsidiary, or related company would derive a financial benefit because a percentage of the premium of the force-placed insurance policy – the entirety of which was charged to Plaintiff's account – would be paid back to SunTrust Mortgage or a related entity in the form of "kickbacks" and/or "commissions."

### Plaintiff David S. Wieder

42.    Plaintiff David S. Wieder is a resident of Miami-Dade County residing at 1390 Bay Drive, Miami Beach, Florida 33141.  The mortgage on Mr. Wieder's property is serviced by SunTrust Mortgage, Inc.

43.    Mr. Wieder's mortgage agreement provides as follows:

5. **Hazard or Property Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, floods, or flooding, for which the Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires….If Borrower fails to maintain coverage described above, Lender may, at Lender's option obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

***

7. **Protection of Lender's Rights in the Property**.  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property….then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

44.    Mr. Wieder maintained homeowner's insurance on his property through until the policy lapsed in 2010.

45.    In October 2010, QBE First sent a letter to Mr. Wieder (purporting to be from SunTrust) informing Mr. Wieder that it did not have proof of his insurance and that it would be force-placing insurance on his property with an effective date of September 26, 2010.

46.    On December 2, 2010, QBE First sent a notice (again purporting to come from SunTrust) that it had purchased an insurance policy through QBE Specialty Insurance.  The annual premium for the insurance policy through QBE Specialty was $16, 610.04.  Upon

information and belief, SunTrust retroactively charged Mr. Wieder for the annual premium by debiting his escrow account.

47.     Mr. Wieder obtained a voluntary insurance policy through Lexington Insurance Co.  The current annual premium for that insurance policy is $1,076 – approximately 15 times less than the QBE Specialty insurance policy.

48.     SunTrust ultimately charged Mr. Wieder for the force-placed insurance for the lapsed period.  Mr. Wieder paid for this force-placed insurance policy through his escrow account.

49.     There is no material difference between these Defendants' actions and practices directed to Mr. Wieder and their actions and practices directed to the Class.

**CLASS ALLEGATIONS**

**A.     Class Definition**

50.     Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seeks to represent the following class:

Class Definition:

> All individuals with mortgages on property located in Florida who, within the applicable  statute of limitations preceding the filing of this action, were charged for a force- placed insurance policy placed on their property through Defendants  – SunTrust and the QBE Defendants, and/or these companies' affiliates, entities, or subsidiaries.  Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

51.     Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

349558                                             14

52.      Defendants subjected Plaintiffs and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.      Numerosity**

53.      The proposed class is so numerous that joinder of all members would be impracticable.  Defendants sell and service millions of mortgage loans and insurance policies in the state of Florida, as well as nationwide.  The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendants.  The precise number of class members numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**C.      Commonality**

54.      There are questions of law and fact that are common to all Plaintiffs' and Class members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

a.      Whether Defendants charged borrowers for unnecessary insurance coverage including, but not limited to, insurance coverage that exceeded the amount required by law or the borrowers' mortgages and/or backdated coverage that covered periods of time for which Defendants had no risk of loss;

b.      Whether the QBE Defendants have been unjustly enriched at the expense of the Plaintiffs and the Class;

c.      Whether SunTrust breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or their affiliates, which resulted in improper financial benefits to SunTrust and inflated insurance premiums being charged to Plaintiffs and the Class;

d.      Whether SunTrust breached the implied covenant of good faith and fair dealing by purchasing a force-placed insurance policy from an exclusive insurer that was more than necessary to protect the value of the Property and the Lender's rights in the property;

e.      Whether SunTrust breached the implied covenant of good faith and fair dealing by manipulating forced-placed mortgage purchases in order to maximize their profits to the detriment of Plaintiffs and the Class;

f.      Whether SunTrust affiliates perform any work or services in exchange for the "commissions" or other "compensation" they collect;

g.      Whether the premiums charged are inflated to include kickbacks and unwarranted "commissions;"

h.      Whether the premiums charged are inflated to include charges for subsidized bundled administrative services that the QBE Defendants provide to the lenders or mortgage servicers, and which are not chargeable to Plaintiffs and the Class under the terms of their mortgages;

i.      Whether the premiums charged are inflated to include the cost of a captive reinsurance arrangement;

j.      Whether the QBE Defendants intentionally and unjustifiably interfered with the Plaintiffs' and the Class's rights under the mortgage contracts by paying kickbacks to the lenders/mortgage servicers or their affiliates and by administering the loan portfolio at below cost; and

k.      Whether Plaintiffs and the Class Members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

**D.      Typicality**

55.      Plaintiffs are members the Class they seek to represent.  Plaintiffs' claims are typical of the respective class's claims because of the similarity, uniformity, and common purpose of the Defendants' unlawful conduct.  Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendants' wrongful conduct.

**E.      Adequacy of Representation**

56.      Plaintiffs are adequate representatives of the class they seek to represent and will

fairly and adequately protect the interests of that class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

57.    To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.    Requirements of Fed. R. Civ. P. 23(b)(3)**

58.    The questions of law or fact common to Plaintiffs' and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class.  All claims by Plaintiffs and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in securing the force-placed policy.

59.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

60.    As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.    Superiority**

61.    A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

(b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

**H.      Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

62.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

63.     Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Plaintiffs Carina Hamilton and David Wieder against SunTrust)

64.     Plaintiffs Carina Hamilton and David Wieder re-allege and incorporate paragraphs 1-63 above as if fully set forth herein and further allege as follows.

65.     Plaintiffs and all similarly situated class members have mortgage contracts that are owned and/or serviced by SunTrust.

66.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for

substantial compliance with the spirit, not just the letter, of a contract in its performance.

67.     Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

68.     Plaintiffs' and the Class members' mortgage contracts allow the mortgage servicer to force place an insurance policy on the borrower's property in the event of a lapse in coverage, but do not define standards for selecting an insurer or procuring an insurance policy.

69.     SunTrust has substantial discretion in force placing insurance coverage.  They are permitted to unilaterally choose the company from which they purchase force-placed insurance and negotiate a price for the coverage they procure.  The servicers have an obligation to exercise the discretion afforded them in good faith, and not capriciously or in bad faith.  Plaintiffs does not seek to vary the express terms of the mortgage contract, but only to insure that the Defendants exercise their discretion in good faith.

70.     SunTrust breached the implied covenant of good faith and fair dealing by, among other things:

> (a)  Manipulating the force-placed insurance market by selecting insurers (here, the QBE Defendants and/or their affiliates) that will artificially inflate premiums to include kickbacks to SunTrust or an affiliate and issue excess insurance coverage not necessary to cover the SunTrust's risk, and by failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby insurance coverage is routinely purchased from the QBE Defendants without seeking a competitive price;

> (b)  Exercising their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed insurance policies to maximize their own profits and the profits of their exclusive force-placed insurer;

> (c)  Assessing inflated and unnecessary insurance policy premiums against Plaintiffs and the Class and misrepresenting the reason for the cost of the policies;

(d)  Collecting a percentage or allowing their affiliates to collect a percentage of whatever premiums are charged to Plaintiffs and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e)  Charging Plaintiffs and the Class for commissions when the insurance is prearranged and no commission is due;

(f)  Charging Plaintiffs and the Class an inflated premium due to the captive reinsurance arrangement;

(g)  Charging Plaintiffs and the Class for having the vendor perform their obligation of administering its mortgage portfolio which is not chargeable to Plaintiffs or the Class;

(h) Accepting below cost or free services form the QBE Defendants in order to allow the insurance company to charge inflated rates to Plaintiffs and the Class:

(i)  Force placing insurance coverage in excess of what is required by law or borrowers' mortgage agreements; and

(j)  Force placing insurance coverage in excess of that required to cover the lender's interest in the property, or the balance owed on the loan.

71.    As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiffs and the Class have suffered damages.

**WHEREFORE**, Plaintiffs Carina Hamilton and David Wieder, on behalf of themselves and all similarly situated Class members, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing.  Plaintiffs also seek compensatory damages resulting from SunTrust's breaches of its duties.  Plaintiffs further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT II

### UNJUST ENRICHMENT
### (Plaintiffs Carina Hamilton and David Wieder against the QBE Defendants)

72.    Plaintiffs  Carina  Hamilton  and  David  Wieder  re-allege  and  incorporate

paragraphs 1-63 above as if fully set forth herein and further allege as follows.

73.     The QBE Defendants received from Plaintiffs and Class members, benefits in the form of over-priced insurance premiums related to force-placed insurance policies.

74.      Commissions or kickbacks were paid directly to SunTrust in order to be able to exclusively provide force-placed insurance policies and receive the corresponding insurance premiums.

75.     The QBE Defendants also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' mortgage agreement, and in excess of that required to protect the lender's interest in its collateral.

76.     The QBE Defendants charged excessive prices for their force-placed insurance policies to be able to provide administrative services to SunTrust at a subsidized cost.

77.     As a result, Plaintiffs and the Class have conferred a benefit on the QBE Defendants.

78.     These Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

79.     These Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which these Defendants were unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiffs Carina Hamilton and David Wieder, on behalf of themselves and all similarly situated Class Members, demand an award against the QBE Defendants in the amounts by which these Defendants have been unjustly enriched at Plaintiffs' and the Class Members' expense, and such other relief as this Court deems just and proper.

## COUNT III

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Plaintiffs Carina Hamilton and David Wieder against the QBE Defendants)

80.     Plaintiffs Carina Hamilton and David Wieder re-allege and incorporate paragraphs 1-63 above as if fully set forth herein and further allege as follows.

81.     Plaintiffs and the Class members have advantageous business and contractual relationships with SunTrust pursuant to their mortgage contracts.  Plaintiffs and the Class have legal rights under these mortgage contracts.  For example, Plaintiffs and the Class have a right not to be charged inflated premiums in bad faith for force-placed insurance.

82.     The QBE Defendants have knowledge of the mortgage contracts and the advantageous business and contractual relationship between Plaintiffs and SunTrust.  The QBE Defendants are not parties to the mortgage contracts and are not third-party beneficiaries of the mortgage contracts.  Further, these Defendants do not have any beneficial or economic interest in the mortgage contracts.

83.     The QBE Defendants intentionally and unjustifiably interfered with Plaintiffs' and the Class's rights under the mortgage contracts, as described above by, *inter alia*, entering into an exclusive relationship with SunTrust and their affiliate whereby they provide compensation (kickbacks, reinsurance, and low cost services) to SunTrust in exchange for the exclusive right to force-place inflated and unnecessary premiums which are purposefully and knowingly charged to Plaintiffs and the Class.

84.     Plaintiffs and the Class have been damaged as a result of the QBE Defendants' interference with their mortgage contracts by being charged bad faith, exorbitant, and illegal charges for force-placed insurance in contravention of their rights under the mortgages.

**WHEREFORE**, Plaintiffs and all Class members similarly situated seek a judgment in their favor against the QBE Defendants for the actual damages suffered by them as a result of their tortious interference.  Plaintiffs also seek all costs of litigating this action including attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and all similarly situated individuals demand judgment against Defendants as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class;

(2)    Enjoining Defendants from continuing the acts and practices described above;

(3)    Awarding damages sustained by Plaintiffs and the Class as a result of Defendants' breaches of the subject mortgage contracts and the implied covenant of good faith and fair dealing, together with pre- and post-judgment interest;

(4)    Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiffs and the Class, together with pre- and post-judgment interest;

(5)    Awarding Plaintiffs and the Class costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Class's counsel and experts, and reimbursement of expenses;

(6)    Awarding damages sustained by Plaintiffs and the Class as a result of the QBE Defendant's tortious interference; and

(7)    Awarding such other and further relief the Court deems just and equitable.

349558

23

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted this 27th day of November, 2013.

By: _/s/ Adam M. Moskowitz_

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON P.A.**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:   (305) 372-3508<br>_Counsel for Plaintiffs_ | Aaron S. Podhurst, Esq.<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>pprieto@podhurst.com<br>Matthew Weinshall<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>_Counsel for Plaintiffs_ |
| Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:     (305) 536-8220<br>Facsimile:      (305) 536-8229<br>_Counsel for Plaintiffs_ | Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>Mary E. Fortson, Esq.<br>mfortson@merlinlawgroup.com<br>Sean M. Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>**MERLIN LAW GROUP, P.A.**<br>777 S. Harbour Island Blvd., Suite 950<br>Tampa, FL 33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692<br>_Counsel for Plaintiffs_ |

| | |
|---|---|
| Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>**LAW OFFICES OF JEFFREY N. GOLANT, P.A.**<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiffs* | Catherine E. Anderson, Esq.<br>canderson@gslawny.com<br>Oren Giskan, Esq.<br>ogiskan@gslawny.com<br>**GISKAN SOLOTAROFF ANDERSON & STEWART LLP**<br>11 Broadway Suite 2150<br>New York, New York 10004<br>Telephone: 212-847-8315<br>*Counsel for Plaintiffs* |
| GOLANT & GOLANT, P.A.<br>Margery E. Golant, Esq.<br>mgolant@golantlaw.com<br>2385 NW Executive Center Drive<br>Suite 100<br>Boca Raton, FL 33431<br>Telephone: (561) 206-6171<br>Facsimile: (561) 206-6172<br>*Counsel for Plaintiffs* | Jack Scarola<br>JSX@SearcyLaw.com<br>**SEARCY DENNEY SCAROLA BARNHART & SHIPLEY**<br>2139 Palm Beach Lakes Boulevard<br>West Palm Beach, FL 33409<br>Telephone: (561) 686-6300<br>Facsimile: (561) 383-9451 (fax)<br>*Counsel for Plaintiffs* |

349558