UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60749-CIV-COHN/SELTZER

CARINA HAMILTON f/k/a LISA MONTI
and DAVID S. WIEDER on behalf of
themselves and all others similarly situated,

    Plaintiffs,

vs.

SUNTRUST MORTGAGE INC., QBE
SPECIALTY INSURANCE COMPANY, and
STERLING NATIONAL INSURANCE
AGENCY f/k/a QBE FIRST INSURANCE
AGENCY,

    Defendants.
    _____/

## ORDER DENYING DEFENDANT SUNTRUST MORTGAGE INC.'S MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

**THIS CAUSE** is before the Court on Defendant SunTrust Mortgage Inc.'s ("SunTrust") Motion to Dismiss the Third Amended Class Action Complaint, and Alternatively, Motion for the Court to Abstain from Hearing Plaintiff Hamilton's Claims [DE 107] ("Motion").  The Court has carefully considered the Motion, Plaintiffs' Response [DE 117] ("Response"), SunTrust's Reply [DE 121], as well as Plaintiffs' Notice of Filing Supplemental Authority [DE 127], SunTrust's Notice of Filing Supplemental Authority [DE 132] and Plaintiffs' Response [DE 138] thereto, and is otherwise fully advised in the premises.  For the reasons below, the Court denies SunTrust's Motion.

1

## I. INTRODUCTION

This is one of a slew of so-called "force-placed" insurance cases filed in this district and around the country. At the heart of this case are provisions included in many standard-form mortgage contracts that require the borrower to maintain hazard insurance on the mortgaged property to protect the lender's interest in the collateral. If the borrower fails to do so, the lender has the option of "force-placing" the insurance and passing the cost on to the borrower. What is not disclosed to borrowers, however, is that their lenders and loan servicers are allegedly colluding with certain insurers to artificially inflate force-placed insurance premiums in return for unearned kickbacks from the insurers. The cost of the inflated premium is then either added to the borrower's debt or automatically deducted from the borrower's escrow account.

## II. SUMMARY OF FACTUAL ALLEGATION

In this putative class action, Plaintiffs Carina Hamilton f/k/a Lisa Monti ("Hamilton") and David S. Wieder ("Wieder") (collectively "Plaintiffs") challenge Defendants SunTrust Mortgage Inc. ("SunTrust"), QBE Specialty Insurance Company ("QBE Specialty"), and Sterling National Insurance Agency n/k/a QBE First Insurance Agency's ("QBE First") (collectively "Defendants")[1] alleged scheme of entering into exclusive agreements to force-place insurance at grossly excessive rates in return for unearned kickbacks to SunTrust. According to Plaintiffs, SunTrust buys "umbrella" insurance policies covering their entire portfolio of mortgage loans from the QBE Defendants. 3d Am. Cmpt. [DE 96] ¶ 26. In exchange, SunTrust gives the QBE Defendants the "exclusive right" to force-place insurance on properties within the

---

[1] Defendants QBE Specialty and QBE First are referred to collectively herein as the "QBE Defendants."

portfolio when the borrower's insurance lapses.  Id.  QBE First discovers a lapse in coverage, it sends "notice to the borrower—purporting to come from SunTrust—that insurance will be 'purchased' and force-placed if proof of voluntary coverage is not provided."  Id.  If the lapse continues, QBE First sends another notice that insurance is being force-placed at the borrower's expense.  Id.

QBE First buys the force-placed insurance exclusively from its affiliated insurer—QBE Specialty.  Id. ¶ 27.  QBE Specialty charges QBE First an artificially-inflated price for the insurance premium, which, in turn, is charged to the borrower.  Id.  QBE First retains some of the premium for "allegedly acting as an insurance broker despite the pre-existing exclusive agreements."  Id.  Another portion of the premium is "kicked back" (either disguised as "commissions" or through lucrative ceded reinsurance premiums) to SunTrust or its affiliate.  Id. ¶¶ 25, 27.  These "kickbacks," however, are "not given in exchange for any services provided; [they are] simply grease paid to keep the force-placed machine moving."  Id. ¶ 30.  As a result of this scheme, SunTrust and the QBE Defendants have reaped enormous profits at Plaintiffs' and the putative class members' expense.

### A. Plaintiff Hamilton.

On September 17, 2007, Hamilton entered into a mortgage contract with SunTrust.  3d Am. Cmpt. [DE 96] ¶ 36.  Section 5 of the contract required her to keep the property insured against loss by fire and other hazards.  Hamilton Mortgage, Exhibit A to the Motion [DE 107-1] ¶ 5.[2]  If she failed to do so, the contract provided:

---

[2]   "When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment."  Brown v. One

3

> Lender may obtain insurance coverage, at Lender's option and Borrower's expense. . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

Id.

From July 21, 2007, through July 21, 2008, Hamilton insured her property, with the annual premium costing around $2,400. 3d Am. Compt. [DE 96] ¶ 37. Hamilton subsequently defaulted on her mortgage. Id. ¶ 38. In September 2010, QBE First notified Hamilton that it had bought insurance for her property from QBE Specialty, which was backdated to April 22, 2010. Id. ¶ 39. Although Hamilton's property at that time had an assessed value of only $84,000, Hamilton was charged $10,181.32 for the policy covering April 22, 2010, through April 22, 2011. Id. At no point, however, was Hamilton notified that a percentage of the force-placed insurance premium would be paid to SunTrust or its affiliate. Id. ¶ 41.

### B. Plaintiff Wieder.

Wieder has a mortgage serviced by SunTrust. 3d Am. Compt. [DE 96] ¶ 42. Paragraph 5 of his mortgage contract also required him to keep the property insured against loss by fire and others hazards. Id. ¶ 43. If he failed to do so, then SunTrust could "do and pay for whatever is necessary," including force-placing insurance, "to protect the value of the Property and the Lender's rights in the Property." Id.

Wieder insured his property until the policy lapsed in 2010. Id. ¶ 44. In October 2010, QBE First notified Wieder that it would be force-placing insurance effective

---

Beacon Ins. Co. Inc., 317 Fed. App'x 915, 917 (11th Cir. 2009) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (per curiam)).

4

September 26, 2010.  Id. ¶ 45.  On December 2, 2010, QBE First notified Wieder that it had bought insurance from QBE Specialty.  Id. ¶ 46.  The annual cost of the premium was $16,610.64, which SunTrust debited from Wieder's escrow account.  Id.  Wieder subsequently insured his property for $1,076 per year, approximately fifteen times less than the cost of the force-placed policy.  Id. ¶ 47.

### C. Plaintiffs' Claims and SunTrust's Motion.

On November 27, 2013, Plaintiffs filed the Third Amended Class Action Complaint against Defendants.  Plaintiffs assert three Florida law claims: (1) breach of the implied covenant of good faith and fair dealing against SunTrust (Count I); (2) unjust enrichment against the QBE Defendants (Count II); and (3) tortious interference with a business relationship against the QBE Defendants (Count III).  SunTrust now moves to dismiss Count I for failure to state a plausible claim.  In the alternative, SunTrust asks the Court to abstain from hearing Hamilton's claim under the Colorado River doctrine or to dismiss her claim altogether for lack of standing.

## III. DISCUSSION

### A. Legal Standards.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge the court's subject matter jurisdiction as well as the plaintiff's standing.  Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (internal quotations omitted)); see also Holy Cross Hosp., Inc. v. Baskot, No. 10–62133–CIV, 2010 WL 5418999, at *2 (S.D. Fla. Dec. 23, 2010) ("Standing is jurisdictional in nature; therefore,

Defendants proceeded under Rule 12(b)(1) to dismiss Count I for lack of standing."). A claim cannot proceed in federal court if the plaintiff does not have standing. <u>Valley Forge Christian Coll. v. Am. United for Separation of Church & State</u>, 454 U.S. 464, 471 (1982).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of the factual allegations in the complaint. <u>See</u> Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion, the court must accept all of the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. <u>Pielage v. McConnell</u>, 516 F.3d 1282, 1284 (11th Cir. 2008). That said, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts" will not prevent dismissal. <u>Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 500 F.3d 1293, 1306 (11th Cir. 2009). Rather, to avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" <u>Twombly</u>, 550 U.S. at 556 (citation omitted).

### B. **Whether the Court Should Abstain from Hearing Hamilton's Claims Under the *Colorado River* Doctrine.**

SunTrust first argues that the Court should abstain from hearing Hamilton's claims under the <u>Colorado River</u> doctrine. In <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 818-20 (1976), the Supreme Court held that a federal

6

court could abstain from an action if "(1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention." Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d 1127, 1140 (11th Cir. 2013). "Only the clearest of justifications," however, will warrant abstention. Colorado River, 424 U.S. at 819; see also Noonan S., Inc. v. County of Volusia, 841 F.2d 380, 383 (11th Cir.1988) (explaining that ("dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources").

The threshold issue under the Colorado River doctrine is whether a parallel state action exists. Ambrosia Coal & Constr. Co. v. Pages Morales, 368 F.3d 1320, 1331 (11th Cir.2004). A parallel state action "is one involving substantially the same parties and substantially the same issues." Id. If any "substantial doubt" exists about whether two cases are parallel, then abstention is not appropriate. Acosta v. James A. Gustino, P.A., 478 F. App'x. 620, 622 (11th Cir. 2012) (citation omitted). If, however, the cases are parallel, the court must weigh the following six factors to determine whether abstention is proper:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

Ambrosia Coal & Constr. Co., 368 F.3d at 1331 (citation omitted)). The balancing of these factors is "heavily weighted in favor of the exercise of jurisdiction." Id. (citing Moses H. Cone Mem'l Hosp. v. Mecury Constr. Corp., 460 U.S. 1, 16 (1983)).

7

Here, SunTrust argues that this Court should abstain from hearing Hamilton's claims because she has had a counterclaim pending against Litton Loan Serving, LP ("Litton") in a Broward County foreclosure action since December 2010, which also "includes allegations of allegedly excessive [force-placed insurance] charges." Motion at 9. While the parties dispute whether the state foreclosure action is, in fact, parallel to this case, the Court need not resolve this dispute.

Even if a substantial similarity of parties and issues exists, the balance of the other Colorado River factors weighs heavily against abstention. See Ambrosia Coal & Constr. Co., 368 F.3d at 1331 (reviewing district court's analysis of Colorado River factors for abuse of discretion where state and federal cases appeared to contain some overlap of parties and issues). Turning to the first factor—whether one court has jurisdiction over property—while the state court foreclosure action is an *in rem* proceeding, this case does not involve jurisdiction over property, but rather seeks damages related to excessively-priced force-placed insurance. See id. at 1332 (finding that first factor does not favor abstention where "the relevant cases are not proceedings in rem"). Thus, this factor does not favor abstention.

Second, as to the inconvenience of the federal forum, SunTrust concedes that this Court is just as convenient as the state court because both are located within Broward County. See Motion at 11. Thus, this factor also weighs against abstention.

Third, as to the potential for piecemeal litigation, this factor does not favor abstention unless the circumstances "will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Ambrosia Coal & Constr. Co., 368 F.3d at 1333. Here, as in Ambrosia Coal & Construction Co., "this case neither turns on a federal

8

statute designed with the intent of avoiding piecemeal litigation nor involves claims against 1,000 parties." Id.  Rather, this Court should not decline to exercise jurisdiction merely because the potential exists for "unremarkable repetition of efforts and possibly some piece-by-piece decision-making." Id.

The fourth factor—the order in which the courts obtained jurisdiction—also disfavors abstention.  Here, although the state court foreclosure action was filed first, this case has been set for trial.  Given the glacial pace of the state court foreclosure action, it seems likely that this case will be resolved before Hamilton's counterclaim in the state court.  Thus, the fact that the state court foreclosure action was filed first and discovery has been taken does not merit abstention.  See Moses H. Cone Memorial Hosp., 460 U.S. at 21 (explaining that fourth factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions").

The fifth factor—whether state or federal law applies—is the only factor that arguably favors abstention because Florida law applies to Plaintiffs' claims in this case.  As Plaintiffs point out, however, this Court routinely applies Florida law in diversity cases.  Not to mention, a cursory review of this Court's docket shows that other force-placed insurance cases have been handled by judges in this district.  Thus, this Court is just as capable as the state court in resolving Hamilton's force-placed insurance claims.

Finally, the sixth factor—whether the state court can adequately protect Hamilton's rights—neither favors nor disfavors abstention.  Both this Court and the state court are equally capable of protecting Hamilton's rights.  See Ambrosia Coal & Constr. Co., 368 F.3d at 1334 ("This factor will only weigh in favor or against abstention when

9

one of the fora is inadequate to protect a party's rights."). In sum, because the balance of the Colorado River factors weighs heavily against abstention, the Court will not abstain from hearing Hamilton's claim in this suit.

### C. Whether Hamilton has Standing to Pursue her Claims.

"Standing is one of the Article III case or controversy requirements," which must be established "as a threshold matter." I.L. v. Alabama, 739 F.3d 1273, 1278 (11th Cir. 2014) (citations and quotation marks omitted). To have standing, a plaintiff must show "injury in fact, causation, and redressability." Id. (citation omitted). Failure to make any of these three required showings is fatal. Id. Here, SunTrust contends that Hamilton lacks standing to bring her force-placed insurance claim because she has not yet suffered an injury in fact. Motion at 12. According to SunTrust, Hamilton has never paid for any of the force-placed insurance at issue in this case because it was not placed until 2010—two years after she stopped paying her mortgage. Id.

In response, Plaintiffs argue that Hamilton has already suffered an injury in fact because, under the terms of her mortgage contract, the force-placed insurance premiums are automatically added to her total debt. See Response at 11, citing Hamilton Mortgage, Exhibit A to the Motion [DE 107-1] ¶ 5 ("Any amounts disbursed by Lender under this Section 5 [for force-placed insurance] shall become additional debt of borrower secured by this Security Instrument."). In fact, it is undisputed that Hamilton's account has already been charged for the force-placed insurance premiums. If Hamilton is successful in this action, her total debt may be reduced.

The Court thus agrees with Plaintiffs that Hamilton has suffered an injury in fact and, therefore, has standing to bring this case. See Lane v. Wells Fargo Bank, N.A.,

No. C 12–04026 WHA, 2013 WL 3187410, at *11 (N.D. Cal. June 21, 2013) (finding that borrowers had standing to bring force-placed insurance claims even though they had not yet paid for any portion of the premiums); see also Williams v. Wells Fargo Bank, 280 F.R.D. 665, 673 (S.D. Fla. 2012) (certifying class of borrowers in force-placed insurance case to include those whom had been charged and either paid or still owed the bank for the premiums).

### D. Whether Plaintiffs Have Stated a Plausible Claim For Breach of the Implied Covenant of Good Faith and Fair Dealing Under Florida Law.

SunTrust's primary argument is that Plaintiffs have failed to state a plausible claim. Under Florida law, a covenant of good faith and fair dealing is implied in every contract. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005) (citing Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)). It is "designed to protect the parties' reasonable contractual expectations." Id.

Where, as here, a contract gives a party substantial discretion to promote that party's self-interest, the implied covenant of good faith serves as a "gap-filling default rule." Speedway SuperAmerica, LLC v. Tropic Enters., Inc., 966 So. 2d 1, 3 (Fla. 2d DCA 2007) ("Despite broad characterizations of the implied covenant of good faith, we have recognized that it 'is a gap-filling default rule,' which comes into play 'when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.'") (quoting Publix Super Markets, Inc. v. Wilder Corp. of Del., 876 So. 2d 652, 654 (Fla. 2d DCA 2004)). In filling the gaps, the implied covenant of good faith limits that party's ability to "act capriciously

11

to contravene the reasonable contractual expectations of the other party." Id. (quoting Cox, 732 So. 2d at 1097-98).

In this case, Plaintiffs claim that SunTrust breached the implied covenant of good faith and fair dealing in numerous ways. Chief amongst them is allegedly colluding with the QBE Defendants to force-place excessively-priced insurance that bears no relationship to the actual insurable risk in exchange for kickbacks of a percentage of the premiums to SunTrust. In doing so, Plaintiffs allege that SunTrust exercised its discretion to force-place insurance in bad faith by deliberately selecting exorbitantly-priced policies to maximize its profit.

In moving to dismiss this claim, SunTrust argues that: (1) Plaintiffs' admitted prior breaches—namely, allowing their insurance to lapse and, in Hamilton's case, defaulting on her mortgage—preclude their claim against SunTrust; (2) Plaintiffs have failed to allege that SunTrust breached any express term of their mortgages; and (3) Plaintiffs' claim should be dismissed in accordance with Feaz v. Wells Fargo Bank, N.A., No. 13-10230, 2014 WL 503149 (11th Cir. Feb. 10, 2014) and Cohen v. American Security Insurance Company, 735 F.3d 601 (7th Cir. 2013). Motion at 12-20; SunTrust's Notice of Supplemental Authority [DE 132]. The Court will examine each of these arguments in turn.

### 1. Whether Plaintiffs' Admitted Prior Breaches of their Mortgage Contracts Preclude Them from Bringing A Contractual Claim Against SunTrust.

SunTrust argues that Plaintiffs are barred from suing for breach of the implied covenant of good faith and fair dealing because both Plaintiffs admittedly breached their mortgage contracts first—i.e., before SunTrust force-placed insurance on their properties. Motion at 13. Specifically, SunTrust contends that Hamilton's default on her

12

mortgage, 3d Am. Compl. [DE 96] ¶ 38, as well as Plaintiffs' failures to maintain insurance on their properties, id. ¶¶ 37-38, 44, constitute "material" breaches of their mortgage contracts that preclude their claim. Motion at 13. While Plaintiffs admit these breaches, Plaintiffs contend that they are not "material" because they do not go to the essence of the mortgage contracts. Response at 13. Thus, according to Plaintiffs, the fact that they breached their mortgage contracts first does not bar their claim. Id. Both parties' arguments, however, miss the mark.

It is a fundamental principle of Florida contract law that a material breach by one party excuses the performance by the other. Indemnity Ins. Corp. of DC. V. Caylao, 130 So. 3d 783, 786 (Fla. 1st DCA 2014) (citing 14 STEVEN PLITT ET AL., COUCH ON INSURANCE § 199.81 (3D ED. 2012)). A "material breach" is one that goes "to the essence of the contract," as opposed to the mere failure to perform some minor part of the contract. Covelli Family, L.P. v. ABG5, L.L.C., 977 So. 2d 749, 752 (Fla. 4th DCA 2008) (citation and quotation marks omitted). Whether a particular breach is material raises an issue of fact, Ron Matusalem & Matusa of Fla., Inc. v. Ron Matusalem, Inc., 872 F.2d 1547, 1551 (11th Cir. 1989), which is generally not appropriate for resolution on a motion to dismiss.

In this case, however, the Court need not address whether Plaintiffs' admitted breaches of their mortgage contracts were "material" to resolve SunTrust's motion to dismiss. Even if they were material, they would still not preclude Plaintiffs' claim that SunTrust subsequently acted in bad faith in force-placing excessively-priced insurance on their homes:

> "There are few principles of contract law better established, or more uniformly acknowledged, than the rule that when a contract not fully

13

>performed on either side is continued in spite of a known excuse, the right to rely upon the known excuse is waived; in turn, the defense based on the excuse is lost and the party who would otherwise have been excused is liable if he or she subsequently fails to perform."

MDS (Canada) Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 859 (11th Cir. 2013) (Pryor, J., dissenting in part and concurring in part) (quoting 13 WILLISTON ON CONTRACTS § 39:31 at 639-40 (4th ed. 2000)); see also Brunswick Corp. v. Vineberg, 370 F.2d 605, 610-11 (5th Cir. 1967) (explaining that non-breaching party has choice of continuing or ceasing performance of contract, and "any action indicating an intention to continue will operate as a conclusive choice, not, indeed, depriving him of any excuse for ceasing performance on his own part") (citations omitted).[3]

Applying this principle here, the Court finds that once SunTrust chose to continue the mortgage contracts by exercising its discretion to force-place insurance after Plaintiffs' admitted breaches, SunTrust was obliged to do so in good faith.  For this reason, Plaintiffs' prior breaches of their mortgage contracts—regardless of whether they were material breaches—do not preclude their claim for breach of the implied covenant of good faith and fair dealing against SunTrust.  See Abels v. JPMorgan Chase Bank, N.A., 678 F. Supp. 2d 1273, 1278-79 (S.D. Fla. 2009) (finding that plaintiffs stated claim for breach of implied covenant of good faith even though their coverage lapsed before lender force-placed insurance); see also Kunzelmann v. Wells Fargo Bank, N.A., No. 9:11-cv-81373-DMM, 2012 WL 2003337, at *5 (S.D. Fla. June 4, 2012) (same); Williams v. Wells Fargo Bank, N.A., No. 11-21233-CIV, 2011 WL 4901346, at *3-4 (S.D. Fla. Oct. 14, 2011) (same).

---

[3]  In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

### 2. Whether Plaintiffs Have Failed to Allege Breach of An Express Mortgage Provision.

Next, SunTrust argues that Plaintiffs have failed to state a claim because they have not pointed to any express terms in their mortgage contracts that SunTrust breached.  Motion at 14.  To state a claim for breach of the implied covenant of good faith under Florida law, a plaintiff must allege that "an express term of a contract was violated."  Medinis v. Swan, 955 So. 2d 595, 597 (Fla. 2d DCA 2007) (citing Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So. 2d 787, 792 (Fla. 2d DCA 2005)); see also Resnick v. AvMed, Inc., 693 F.3d 1317, 1329 (11th Cir. 2012) (applying Florida law) (explaining that breach of the implied covenant of good faith under Florida law must "relate to the performance of an express term of the contract") (citations omitted).

Here, Plaintiffs' claim clearly relates to the express provisions in the Plaintiffs' mortgage contracts that gave SunTrust discretion to force-place insurance on Plaintiffs' properties if coverage lapsed.  Thus, Court finds that Plaintiffs have adequately alleged that express terms of the mortgage contracts were violated.  See Karp v. Bank of America, N.A., No. 8:12-cv-1700-T-17MAP, 2013 WL 1121256, at *4 (M.D. Fla. Mar. 18, 2013) (finding that although plaintiff did not identify the exact provision the lender breached by number or title, the complaint clearly referred to the force-placed insurance provision and thus stated claim for breach of the implied covenant of good faith); see also Abels v. JPMorgan Chase Bank, N.A., 678 F. Supp. 2d 1273, 1278-79 (S.D. Fla. 2009) (finding that plaintiffs stated plausible claim where they alleged facts showing that lender acted in bad faith in exercising its discretion to force-place insurance).

### 3. Whether <u>Cohen</u> and <u>Feaz</u> Support Dismissal.

Finally, SunTrust contends that <u>Cohen v. American Security Insurance Company</u>, 735 F.3d 601 (7th Cir. 2013) and <u>Feaz v. Wells Fargo Bank, N.A.</u>, No. 13-10230, 2014 WL 503149 (11th Cir. Feb. 10, 2014) both support dismissal of Plaintiffs' claim as a matter of law. While <u>Cohen</u> and <u>Feaz</u> may have some factual similarity to this action—in that each involved force-placed insurance claims—both cases involved different state law and materially distinct claims than the case at bar.

In <u>Cohen</u>, the plaintiff sued her lender for, among other things, breach of contract under Illinois law for force-placing hazard insurance that cost more than double what she had paid for her own policy. <u>Cohen</u>, 735 F.3d at 603. She also complained that the premium included commissions to the lender's affiliate "for the placement, maintenance, or servicing" of the insurance. <u>Id.</u>; <u>Cohen</u> Cmpt., No.1:09-cv-01363, (N.D. Ill. Feb. 2, 2011), ECF No. 80, ¶ 17. In affirming dismissal of the contract claim, the Seventh Circuit found that nothing in the contract prohibited commissions. <u>Cohen</u>, 735 F.3d at 612. It also found that, to the extent the claim rested on the implied duty of good faith, the claim still failed because the plaintiff had not alleged that the lender had invoked a contractual provision "'dishonestly to achieve a purpose contrary to that for which the contract had been made.'" <u>Cohen</u>, 735 F.3d at 603 (citing <u>Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies Ltd.</u>, 970 F.2d 273, 280 (7th Cir.1992) (applying Illinois law) (emphasis omitted)). Rather, the lender had fully disclosed its commission and repeatedly warned that the policy "could cost up to five times more." <u>Id.</u> at 605. Thus, the Seventh Circuit concluded that the lender's actions were more

16

likely explained by lawful conduct and, therefore, affirmed dismissal of the claim for breach of the implied duty of good faith.  Id.

Unlike the plaintiff in Cohen, Plaintiffs allege here that that the force-placed premiums cost as much as fifteen times more than what they had paid for their policies. They also allege that Defendants never notified them as to how much more expensive the force-placed premiums might be.  Nor did Defendants ever notify them that a portion of the premiums would be "kicked back" to SunTrust.  Thus, the Court cannot conclude as a matter of law, like Seventh Circuit did in Cohen, that SunTrust's alleged actions are more likely explained by lawful conduct.

The Eleventh Circuit's recently published opinion in Feaz also fails to carry the day for SunTrust.  Not only was the substance of the plaintiff's force-placed insurance claims in Feaz materially different than Plaintiffs' claim here, but Feaz was also decided under Alabama law, which is distinct from Florida law in the force-placed insurance context.  Feaz, 2014 WL 503149 at *1. There, as here, the mortgage contract granted the lender sole discretion to force-place insurance on the plaintiff's property:

> Under Alabama law, "sole discretion" means an absolute reservation of a right. It is not mitigated by an implied covenant of good faith and fair dealing in contracts because an unqualified reservation of a right in the sole discretion of one of the parties to a contract expresses the intent of the parties to be subject to terms that are inconsistent with any such implied covenant.

Feaz v. Wells Fargo Bank, N.A., No. 12–0350–KD–M, 2012 WL 6680301, at *8-9 (S.D. Ala. Nov. 19, 2012) (citing Shoney's LLC v. MAC East, LLC, 27 So.3d 1216, 1220 (Ala.2009)).  In contrast, under Florida law, the implied covenant of good faith applies "even where the contractual obligation is one subject to the 'sole discretion' of one of

17

the parties." Dept. of Revenue v. Gen. Motors LLC, 104 So. 3d 1191, 1198 (Fla. 1st DCA 2012) (citation omitted).

In this case, the gravamen of Plaintiffs' claim is that SunTrust acted in bad faith by entering into exclusive agreements with the QBE Defendants to force-place excessive insurance on Plaintiffs' properties in exchange for receiving a portion of the artificially-inflated premiums as unearned "kickbacks." Although the mortgage contracts gave SunTrust substantial discretion to force-place insurance, that discretion was not absolute. Rather, because SunTrust had "the power to make a discretionary decision without defined standards," Publix Super Markets, Inc., 876 So. 2d at 654, the implied covenant of good faith limited SunTrust's ability to "'act capriciously to contravene the reasonable contractual expectations of the other party.'" Speedway SuperAmerica, LLC, 966 So. 2d at 3 (quoting Cox, 732 So. 2d at 1097-98). Viewing the allegations in the Third Amended Class Action Complaint in the light most favorable to Plaintiffs, as required, the Court finds that Plaintiffs have sufficiently alleged that SunTrust acted capriciously to contravene their reasonable contractual expectations. To find otherwise at this stage of the proceedings would, in effect, eliminate any reasonable limit on the amount of force-placed insurance that SunTrust may lawfully charge to its borrowers. This, the Court declines to do.

## IV. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** that SunTrust's Motion to Dismiss the Third Amended Class Action Complaint, and Alternatively, Motion for the Court to Abstain from Hearing Plaintiff Hamilton's Claims is **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 25th day of March, 2014.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.