UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60749-CIV-COHN/SELTZER

CARINA HAMILTON f/k/a LISA MONTI
and DAVID S. WIEDER on behalf of
themselves and all others similarly situated,

  Plaintiffs,

vs.

SUNTRUST MORTGAGE INC., QBE
SPECIALTY INSURANCE COMPANY, and
STERLING NATIONAL INSURANCE
AGENCY f/k/a QBE FIRST INSURANCE
AGENCY,

  Defendants.
  _____/

### ORDER DENYING THE QBE DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

**THIS CAUSE** is before the Court on Defendants QBE Specialty Insurance Company ("QBE Specialty") and Sterling National Insurance Agency n/k/a QBE First Insurance Agency's ("QBE First") (collectively the "QBE Defendants") Motion to Dismiss the Third Amended Complaint [DE 108] ("Motion"). The Court has carefully considered the Motion, Plaintiffs' Response [DE 116] ("Response"), the QBE Defendants' Reply [DE 120] ("Reply"), and is otherwise fully advised in the premises. For the reasons below, the Court denies the Motion.

### I. INTRODUCTION

This is one of a slew of so-called "force-placed" insurance cases filed in this district and around the country. At the heart of this case are provisions included in many standard-form mortgage contracts that require the borrower to maintain hazard

1

insurance on the mortgaged property to protect the lender's interest in the collateral. If the borrower fails to do so, the lender has the option of "force-placing" the insurance and charging the cost to the borrower. What is not disclosed to borrowers, however, is that their lenders and loan servicers are allegedly colluding with certain insurers to artificially inflate force-placed insurance premiums in return for kickbacks from the insurers. The cost of the premium is then either added to the borrower's debt or automatically deducted from the borrower's escrow account, resulting in profit for the colluders.

**II. SUMMARY OF FACTUAL ALLEGATION**

In this putative class action, Plaintiffs Carina Hamilton f/k/a Lisa Monti ("Hamilton") and David S. Wieder ("Wieder") (collectively "Plaintiffs") challenge SunTrust Mortgage Inc. ("SunTrust"), QBE Specialty, and QBE First's alleged scheme of entering into exclusive agreements to force-place insurance at grossly excessive rates in return for kickbacks to SunTrust. According to Plaintiffs, SunTrust buys "umbrella" insurance policies covering its entire portfolio of mortgage loans from the QBE Defendants. 3d Am. Cmpt. [DE 96] ¶ 26. In exchange, SunTrust gives the QBE Defendants the "exclusive right" to force-place insurance on uninsured properties within the portfolio. Id. Once QBE First discovers an uninsured property, it sends "notice to the borrower— purporting to come from SunTrust—that insurance will be 'purchased' and force-placed if proof of voluntary coverage is not provided." Id. If the lapse in coverage continues, QBE First sends another notice that insurance is being force-placed at the borrower's expense. Id.

QBE First buys the insurance exclusively from its affiliated insurer—QBE Specialty.  Id. ¶ 27.  QBE Specialty charges QBE First an artificially-inflated premium for insurance, which, in turn, is eventually charged to the borrower.  Id.  Some portion of the premium is kept by QBE First for "allegedly acting as an insurance broker despite the pre-existing exclusive agreements."  Id.  Another portion is "kicked back" (in the form of subsidized administrative services, lucrative ceded reinsurance premiums, and unearned "commissions") to SunTrust or its affiliate.  Id. ¶¶ 17, 25, 27.  These "kickbacks," however, are "not given in exchange for any services provided; [they are] simply grease paid to keep the force-placed machine moving."  Id. ¶ 30.  Through this scheme, SunTrust and the QBE Defendants have purportedly reaped enormous profits at Plaintiffs' and the putative class members' expense.

**A. Plaintiff Hamilton.**

On September 17, 2007, Hamilton entered into a mortgage contract with SunTrust.  3d Am. Cmpt. [DE 96] ¶ 36.  Section 5 of the contract required her to keep the property insured against loss by fire and other hazards.  Hamilton Mortgage, Exhibit A to the Motion [DE 107-1] ¶ 5.[1]  If she failed to do so:

> Lender may obtain insurance coverage, at Lender's option and Borrower's expense. . . .  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

---

[1]  "When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment."  Brown v. One Beacon Ins. Co. Inc., 317 Fed. App'x 915, 917 (11th Cir. 2009) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (per curiam)).

3

Id.

From July 21, 2007, through July 21, 2008, Hamilton insured her property, with the annual premium costing around $2,400. 3d Am. Compt. [DE 96] ¶ 37. Hamilton subsequently defaulted on her mortgage, and her insurance lapsed. Id. ¶ 38. In September 2010, QBE First notified Hamilton that it had bought insurance for her property from QBE Specialty, which was backdated to April 22, 2010. Id. ¶ 39. Although Hamilton's property at that time had an assessed value of only $84,000, Hamilton was charged $10,181.32 for the policy covering April 22, 2010, through April 22, 2011. Id. At no point, however, was Hamilton notified that a percentage of the force-placed insurance premium would be paid to SunTrust or its affiliate. Id. ¶ 41.

### B. Plaintiff Wieder.

Wieder has a mortgage serviced by SunTrust. 3d Am. Compt. [DE 96] ¶ 42. Paragraph 5 of his mortgage contract required him to keep his property insured against loss by fire and other hazards. Id. ¶ 43. If he failed to do so, SunTrust could "do and pay for whatever is necessary," including force-placed insurance, "to protect the value of the Property and the Lender's rights in the Property." Id.

Wieder insured his property until the policy lapsed in 2010. Id. ¶ 44. In October 2010, QBE First notified Wieder that it would be force-placing insurance effective September 26, 2010. Id. ¶ 45. On December 2, 2010, QBE First notified Wieder that it had bought insurance from QBE Specialty. Id. ¶ 46. The annual cost of the premium was $16,610.64, which SunTrust debited from Wieder's escrow account. Id. Wieder subsequently insured his property for $1,076 per year, approximately fifteen times less than the cost of the force-placed policy. Id. ¶ 47.

4

### C. Plaintiffs' Claims and the QBE Defendants' Motion.

On November 27, 2013, Plaintiffs filed the Third Amended Class Action Complaint. Plaintiffs assert three Florida law claims: (1) breach of the implied covenant of good faith and fair dealing against SunTrust (Count I); (2) unjust enrichment against the QBE Defendants (Count II); and (3) tortious interference with a business relationship against the QBE Defendants (Count III). The QBE Defendants now move to dismiss Counts II and III as legally insufficient.

## III. DISCUSSION

### A. Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of the factual allegations in the complaint. See Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion, the court must accept all of the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). That said, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts" will not prevent dismissal. Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1306 (11th Cir. 2009). Rather, to avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Twombly, 550 U.S. at 556 (citation omitted).

### B. Unjust Enrichment.

In Count II, Plaintiffs claim that the QBE Defendants, as the broker and insurer of the force-placed insurance, were unjustly enriched when the QBE Defendants "collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrower's mortgage agreement, and in excess of that required to protect the lender's interest in the collateral."  3d Am. Cmpt. [DE 96] ¶ 75.  To state a claim for unjust enrichment under Florida law, a plaintiff must allege that: (1) the plaintiff conferred a "direct benefit" on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit, and (4) it would be inequitable under the circumstances for the defendant to retain the benefit without paying fair value for it.  Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So. 2d 383, 386 (Fla. 4th DCA 1997)); see also Malamud v. Syprett, 117 So. 3d 434, 438 (Fla. 2d DCA 2013) ("[A] plaintiff must show that the defendant received a direct benefit from the plaintiff.").  In moving to dismiss Plaintiffs' unjust enrichment claim, the QBE Defendants contend that Plaintiffs have not established the first, third, and fourth elements.  Each is examined in turn below.

### 1. Whether Plaintiffs Conferred a "Direct Benefit" on the QBE Defendants.

The QBE Defendants first contend that Plaintiffs have not sufficiently alleged that they conferred a "direct benefit" on the QBE Defendants.  Motion at 7-9.  According to the QBE Defendants, Plaintiffs have only alleged that they conferred an "indirect"

benefit because Plaintiffs' payment of the force-placed premiums passed through SunTrust to the QBE Defendants.  As support, the QBE Defendants cite Virgilio v. Ryland Group, Inc., 680 F.3d 1329 (11th Cir. 2012).  In Virgilio, homeowners brought a class action against their subdivision's developer and its marketers for failure to disclose an adjacent decommissioned bombing range.  Id. at 1331.  The homeowners sued the marketers, claiming that they had been unjustly enriched under Florida law because the developer had paid the marketers a percentage of its home sales revenue.  Id. at 1337.  In affirming dismissal of the claim, the Eleventh Circuit held that the alleged benefit that the homeowners had conferred on the marketers was too indirect to state a claim.  Id.  This was because the homeowners did "not seek to recover money [the marketers] received as partial payment for the houses they bought; instead, they [sought] the money [the developer] paid *for marketing services* under an entirely separate services contract."  Id.

In contrast, Plaintiffs here do seek to recover the money the QBE Defendants received (albeit through SunTrust) as payment for the force-placed insurance.  They do not, according to their complaint, seek to recover any money that SunTrust may have paid to the QBE Defendants for other services under entirely separate contracts.[2]  Virgilio, therefore, is distinguishable and does not control.  Rather, the Court agrees with Judge Altonaga, who noted in a similar force-placed insurance case that "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely

---

[2] The Court notes the QBE Defendants' argument that Plaintiffs do, in fact, seek money that SunTrust paid to the QBE Defendants under entirely separate contracts—namely, the "separate insurance contracts between SunTrust and the QBE Defendants." Reply at 2.  Because the Court is generally confined to the complaint's allegations in reviewing a motion to dismiss, and this argument goes beyond the four corners of the complaint, it is not appropriate at this stage of the proceedings.

7

because the 'benefit' passed through an intermediary before being conferred on a defendant." Williams v. Wells Fargo Bank, N.A., No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011); see also Aceto Corp. v. TherapeuticsMD, Inc., 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) ("There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact,* or privity, is not the equivalent of conferring a direct *benefit*.").

In sum, viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that they conferred a "direct benefit" on the QBE Defendants. See, e.g., Faili v. BAC Home Loans Servicing LP, No. 8:13-cv-1105-JLS (ANx), 2014 WL 255704, at *13 (C.D. Cal. Jan. 23, 2014) (distinguishing Virgilio and denying motion to dismiss unjust enrichment claim under Florida law against insurer in force-placed insurance case); Holmes v. Bank of Am., N.A., No. 3:13-cv-00487-MOC-DSC, 2013 WL 2317722, at *6 (W.D.N.C. May 28, 2013) (same); Ulbrich v. GMAC Mortgage, LLC, No. 11-62424-Civ, 2012 WL 3516499, at *2 (S.D. Fla. Aug. 15, 2012) (finding allegations that borrower paid excessive premiums for force-placed insurance sufficient to show that borrower conferred direct benefit on insurer); cf. Kunzelmann v. Wells Fargo Bank, N.A., No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (finding that Florida's "direct benefit" requirement "may" be a hurdle to borrower's unjust enrichment claim seeking to recover portion of premiums allegedly "kicked back" to lender's insurance affiliate).

2. <u>Whether the QBE Defendants Retained Any Conferred Benefit.</u>

The QBE Defendants next contend that Plaintiffs have failed to adequately allege that they retained any benefit conferred by Plaintiffs.  Motion at 10.  This is because, according to the QBE Defendants, Plaintiffs did not allege that the QBE Defendants "retained the objectionable components of the premiums, namely the alleged 'kickbacks.'"  <u>Id.</u>

The Court disagrees.  Plaintiffs allege that they conferred a benefit on the QBE Defendants in the form of payments for the exorbitant force-placed insurance premiums. <u>See, e.g.</u>, 3d Am. Cmpt. [DE 96] ¶ 73 ("The QBE Defendants received from Plaintiffs . . . benefits in the form of over-priced insurance premiums related to force-placed insurance policies."); <u>id.</u> ¶ 75 ("The QBE Defendants also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' mortgage agreement, and in excess of that required to protect the lender's interest in its collateral."). While some portion of the premiums may, in fact, not be "objectionable" because Plaintiffs' mortgage contracts contemplated insurance being force-placed if coverage lapsed, the Court cannot determine as a matter of law, at the motion-to-dismiss stage, what portion of the premiums was "objectionable" versus what portion was not.  Nor does the fact that the QBE Defendants "kicked back" some portion of the premiums to SunTrust mean, as the QBE Defendants contend, that they did not retain any "objectionable" portion of the premiums.

In sum, viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have adequately alleged that they conferred a benefit on the QBE Defendants, which the QBE Defendants, at least in part, retained.  <u>See, e.g.</u>, <u>Faili</u>,

9

2014 WL 255704 at *13; Holmes, 2013 WL 2317722 at *6; Ulbrich, 2012 WL 3516499 at *2; Williams, 2011 WL 4901346 at *5.

### 3. Whether It Would Be Inequitable for the QBE Defendants to Retain the Force-Placed Premiums.

The QBE Defendants also argue that Plaintiffs' unjust enrichment claim fails because Plaintiffs received "adequate consideration" for the force-placed insurance premiums.  Motion at 10-13.  In other words, the QBE Defendants contend that it would not be inequitable, as a matter of law, for them to retain the premiums because, not only were Plaintiffs aware of the consequences of failing to maintain their own insurance, but they also received "valuable" coverage.  Id. at 5, n.5.  As the First Circuit remarked in a similar force-placed insurance case, however, little need be said about this contention. Lass v. Bank of Am., N.A., 695 F.3d 129, 141 (1st Cir. 2012).  If, as Plaintiffs allege, the QBE Defendants did in fact collude with SunTrust to force-place excessively-priced insurance as part of an elaborate scheme to maximize profit at Plaintiffs' expense, the QBE Defendants' "decision to do so—with attendant benefit to [themselves]—would seem to fit any notion of 'unjust.'"  Id.  The Court, therefore, declines to dismiss Plaintiffs' unjust enrichment claim.

## C. Tortious Interference.

In Count III, Plaintiffs claim that the QBE Defendants tortiously interfered with their business relationship with SunTrust.  To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to

the plaintiff as a result of the breach of the relationship.  Univ. of West Fla. Bd. of Trs. v. Habegger, 125 So. 3d 323, 326 (Fla. 3d DCA 2013) (citations omitted).  In moving to dismiss Plaintiffs' tortious interference claim, the QBE Defendants contend that Plaintiffs have failed to sufficiently alleged that: (1) the QBE Defendants intentionally interfere with Plaintiffs' business relationship with SunTrust; (2) that no justification or privilege for the interference existed; and (3) that Plaintiffs suffered damages.  Each of these arguments is examined below.

> 1. Whether the QBE Defendants Intentionally Interfered with SunTrust's and Plaintiffs' Business Relationship.[3]

The QBE Defendants argue that Plaintiffs have failed to sufficiently allege that they intentionally interfered with Plaintiffs' business relationship with SunTrust because their conduct in force-placing insurance was directed solely at SunTrust, not Plaintiffs.  Motion at 15.

The Court disagrees.  Plaintiffs allege that they entered into mortgage contracts with SunTrust.  Those contracts provided that if Plaintiffs failed to maintain insurance on their properties, SunTrust could force-place insurance and charge the cost to Plaintiffs.  At the same time, SunTrust also allegedly entered into exclusive agreements with the QBE Defendants to monitor its portfolio of mortgage loans for opportunities to force-place insurance at grossly excessive rates.  In exchange, the QBE Defendants allegedly agreed to kick back a portion of the inflated premiums to SunTrust in the form of

---

[3] As a threshold issue, the QBE Defendants argue that Plaintiffs' tortious interference claim fails because Plaintiffs did not allege an underlying breach of their mortgage contracts.  Motion at 14.  Assuming without deciding that this is an essential element of a claim for tortious interference with a business *relationship*, the Court has previously concluded that Plaintiffs sufficiently alleged breaches of their mortgage contracts.  See Order Denying Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss the Third Amended Class Action Complaint [DE 145] at 15.

unearned "commissions," lucrative ceded reinsurance premiums, or subsidized administrative services. The cost of these premiums was then purportedly either deducted from Plaintiffs' escrow account or added to their total indebtedness. These allegations, viewed in the light most favorable to Plaintiffs, are sufficient to show that the QBE Defendants intentionally interfered with Plaintiffs' borrower-lender relationship with SunTrust. See Williams v. Wells Fargo Bank, Bo. 11-21233-CIV, 2011 WL 4368980, at *12 (S.D. Fla. Sept. 19, 2011) (concluding that borrower stated tortious interference claim under Florida law with similar allegations); see also Holmes, 2013 WL 2317722 at *6 (same).

### 2. Whether the QBE Defendants Had a Justification or Privilege to Interfere.

The QBE Defendants next challenge whether Plaintiffs have sufficiently alleged that their interference with Plaintiffs' business relationship with SunTrust was "unjustified." Motion at 15. Under Florida law, an interference is unjustified where the interfering defendant is "'a stranger to the business relationship.'" Treco Intern. S.A. v. Kromka, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) (quoting Salit v. Ruden, 742 So. 2d 381, 385 (Fla. 4th DCA 1999)). An interfering defendant is not a "stranger," however, "if the defendant has any beneficial or economic interest in, or control over, that relationship." Id. (emphasis and citation omitted). This includes when a defendant has a "supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009). Here, the QBE Defendants argue that they are not strangers to Plaintiffs' business relationship with SunTrust because they have an economic interest in that relationship. Plaintiffs,

12

however, contend that the QBE Defendants are not parties to the mortgage contracts and, thus, they are strangers to Plaintiffs' relationship with SunTrust.

The Court finds that the QBE Defendants have the better argument. To illustrate, the QBE Defendants allegedly colluded with SunTrust to monitor its portfolio of mortgage loans, including Plaintiffs' mortgages, for opportunities to force-place insurance. The more lapses in coverage the QBE Defendants discovered, the more insurance they could force place, and the more money they could make off the exorbitant premiums. Furthermore, Plaintiffs allege that it was the QBE Defendants— and not SunTrust—that sent them letters warning about the possibility of force-placed coverage unless they provided proof of insurance. Based on these allegations, the Court concludes that the QBE Defendants had a "beneficial or economic interest," if not a supervisory interest, in Plaintiffs' business relationship with SunTrust. See Palm Beach Cnty. Health Care Dist., 13 So. 3d at 1094. Thus, the QBE Defendants are not strangers to that relationship. This conclusion, however, does not end the analysis.

While non-strangers generally have a "privilege to interfere" with the business relationship to protect their own economic interests, CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aero Boliviano Airlines, No. 09-CIV-22274, 2011 WL 1559823, at *5 (S.D. Fla. April 22, 2011), they may still be liable for tortious interference if they do so in bad faith:

> The so-called "privilege to interfere" protects certain parties with a legally-recognized interest in a contract from being sued for interfering with that contract. The privilege is not unlimited, however, and it does not afford an absolute shield to liability. Thus, even for "non-strangers" to a contract, the privilege to interfere is a valid defense only to the extent the interference was done in *good faith*. In other words, parties are disqualified from asserting the privilege if they act *maliciously or with conspiratorial motives* . . . .

13

Id. (emphases added) (citations omitted); see also Making Ends Meet, Inc. v. Cusick, 719 So. 2d 926, 928 (Fla. 3d DCA 1998) (stating that the "qualified privilege" to interfere "carries with it the obligation to employ means that are not improper") (quotation marks and citation omitted).

Here, Plaintiffs allege that the QBE Defendants entered into exclusive agreements with SunTrust to force-place insurance on Plaintiffs' properties at grossly excessive rates. Indeed, the cost of the insurance was allegedly up to fifteen times more expensive than borrower-placed insurance. These allegations, viewed in the light most favorable to the QBE Defendants, are sufficient to show that the QBE Defendants, in executing the force-placed insurance scheme, acted in bad faith and with conspiratorial motive. Thus, the QBE Defendants' alleged actions were not justified nor privileged. See Williams, 2011 WL 4368980 at *12 (denying motion to dismiss tortious interference claim against insurer in similar force-placed insurance case); see also Holmes, 2013 WL 2317722 at *6.

### 3. Whether Plaintiffs Sufficiently Alleged Damages.

Lastly, the QBE Defendants argue that Plaintiffs have not alleged that the QBE Defendants' interference with the business relationship caused them harm, as it was Plaintiffs' breaches of their mortgage contracts—not the QBE Defendants' conduct—that caused their alleged injuries. Reply at 8. The Court disagrees. While SunTrust was entitled to procure insurance when Plaintiffs failed to maintain coverage on their properties, nothing permitted SunTrust and the QBE Defendants to collude to force-place excessive and exorbitantly-priced insurance to maximize their profit at Plaintiffs'

14

expense. The Court, therefore, finds that Plaintiffs have sufficiently alleged that the QBE Defendants caused them harm.

## IV. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** that the QBE Defendants' Motion to Dismiss the Third Amended Complaint [DE 108] is **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of March, 2014.

*James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.