UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60749-CIV-COHN

CARINA HAMILTON f/k/a LISA MONTI
and DAVID S. WIEDER, on behalf of themselves
and all others similarly situated;

        Plaintiffs,

v.

SUNTRUST MORTGAGE INC., et al.

        Defendants.
_____/

**PLAINTIFFS' RESPONSE TO THE ONE
OBJECTION TO THE *HAMILTON* CLASS ACTION SETTLEMENT**

# INTRODUCTION

From a class of more than 63,000 SunTrust mortgagors, only one objection (D.E. 169) has been submitted by a professional objector couple, Amarali and Janet Jabrani,[1] who are represented by professional objector counsel. This is the *seventh* lender-placed insurance

---

[1] The Jabranis are represented here by Santiago A. Cueto, Esq. who has little, if any, class action experience and has never litigated a lender-placed insurance case. Mr. Cueto also represents the Jabranis in objecting to the lender-placed settlement in *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.), but failed to appear at the Final Fairness Hearing. Mr. Cueto has also objected to the lender-placed settlement in *Hall v. Bank of America*, No. 12-cv-22700, which has a Final Fairness Hearing set for October 29, 2014. Similar objections by the Jabranis were rejected in *In re Certainteed Fiber Cement Siding Litigation*, 2014 WL 1096030 (E.D. Pa. 2014) ("*Certainteed*"). The Jabranis appealed the *Certainteed* ruling, but dismissed their appeal with a summary affirmance and sanctions motion pending against them "because they no longer desire[d] to pursue it." *See* Unopposed Motion to Dismiss Appeal dated August 9, 2014, *In re CertainTeed Fiber Cement Siding Litigation*, Case No. 14-1882 (3rd Cir.) at (D.E. 003111703716).

Class Counsel in that case stated that the Jabranis' objections were "baseless and driven by Mr. [Christopher] Bandas." Class Counsel concluded that the objections "were filed with the sole intent of blackmailing class counsel for unearned fees." *See In re CertainTeed Fiber Cement Siding Litigation,* Case No. 11-2270 (E.D. Pa.) at (DE 128-1 at page 3). Class Counsel stated that "[t]he attorney behind this frivolous appeal, Christopher Bandas of Corpus Christi, Texas, has been repeatedly criticized by courts around the country for his behavior with respect to his pattern of objections and appeals to class action settlement. . . . Mr. Bandas failed to make an appearance before this Court as part of the objection process and instead chose to hide himself behind a parade of 'local counsel' despite no court order requiring local counsel participation." (*Id*. at fn. 1). Class Counsel, here, expects Mr. Bandas to make an appearance at the appellate level in this case should the Court approve the parties' settlement. As has been a common practice recently, Mr. Bandas no longer appears in the lower Court because of his objection history.

Mr. Bandas has a long and egregious history of filing frivolous objections and appeals that is documented in federal judicial opinions and weighs against his credibility. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.,* 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted) ("[A]ttorney [Christopher Mr. Bandas], [is] a 'professional' or 'serial' objector … Mr. Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."); *In re Hydroxycut Mktg. & Sales Practices Litig.,* No. 09-md-2087, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (finding that Mr. Bandas had demanded $400,000 in return for making his objection "go away").

**Class Counsel respectfully requests that the Court enter a "Show Cause Order" based upon this serious pattern of baseless objections, and the length of time such tactics delay relief to class members in these cases, requiring Mr. Cueto, and his clients, to personally appear at the Final Fairness Hearing and explain all of their objections and any involvement in this case by Mr. Bandas**.

settlement that Class Counsel has presented to this Court. The one objection to this settlement comprises only 0.003% of the settlement class, and seeks to delay or obstruct the award of significant settlement benefits to a class of over 63,000 borrowers. The objection is replete with unsubstantiated arguments which have been rejected multiple times by this Court and in similar lender-placed insurance settlements against other banks. Further, this objection is being raised to advance the interests of attorneys who seek to delay the settlement to extract a payment for themselves. Finally, the objection is baseless and should be stricken.[2]

The objection challenges the "claims-made" structure of the settlement and Class Counsel's proposed fee award, primarily by drawing strained analogies to consumer product settlements recently rejected by various appellate courts. But the opinions on which the objectors rest their arguments are the worst examples of claims-made agreements, and are entirely distinct from the parties' settlement here. In *Eubank v. Pella*, for example, Judge Posner reversed the approval of a claims-made, class action settlement that he termed "inequitable— even scandalous." 753 F.3d 718, 721 (7th Cir. 2014). The settlement presented to the court reflected "almost every danger sign in a class action settlement," including "fatal conflicts of interest;" opposition by named plaintiffs; a provision requiring class members to risk recovering nothing by submitting their claims to arbitration, where the defendants had reserved defenses, in order to be eligible for any meaningful settlement distribution; an award of only coupons to a portion of the class; twelve- to thirteen-page claim forms requiring class members to submit "a slew of arcane data," including the "product identity stamp," "Unit ID Label," and purchase order number of the product at issue; and an unnecessarily complex settlement notice.

Similarly, in the *Pampers* litigation relied upon by the objectors, class members were awarded "nearly worthless" injunctive relief for their economic claims, and only injunctive relief, while the class representatives alone were singled out for a monetary award; and class counsel took millions in fees despite the illusory nature of the relief provided, and despite the fact that they had not conducted any discovery or responded to motions to dismiss. *In re Dry*

---

[2] In demonstrating the boilerplate and frivolousness of their objection, the Jabranis objectors seek to "incorporate" their objection to another lender placed insurance settlement, involving many different parties and issues. The Court should not consider the merits of objections filed in other matters if the objectors in this case did not feel it was worth lodging those objections in this action. For example, none of the objections filed by these professional objectors assess the risks involved in the various cases, which are very different.

2

357425

*Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013). And in *In re Bluetooth Headset Products Liability Litigation*, 654F.3d 935 (9th Cir. 2011), the settlement provided the class no monetary award for their claims asserting economic injury, and the district court did not sufficiently explain its approval of counsel's fee award, which was calculated using a lodestar approach with no cross-check.

   The settlement here does not present any of the "danger signs" that defeated approval of the *Eubank*, *Pampers*, and *Bluetooth* settlements and, in fact, provides an almost complete recovery of all possible damages for each class member. There are no conflicts of interest, nor was there any collusion among the parties. The parties agreed to a claims-made settlement structure only after Class Counsel had conducted discovery to confirm that a claims process was necessary, and it is. Class members who submit valid claims forms will receive a significant settlement award without submitting *any* supporting documentation or details about their loans. The claim forms only require that they provide basic biographical information and check a box indicating whether they paid the amounts charged for force-placed insurance or still owe them (for settlement administration purposes), and in some cases, a witness's signature or other authentication. The claims forms are straightforward and thorough, and class members have access to a settlement website and toll-free phone number should they have additional questions about the settlement or submitting a claim.

   Moreover, unlike the *Eubank, Pampers*, and *Bluetooth* settlements, the settlement makes valuable injunctive *and* monetary relief available to the class, prohibiting Defendants from engaging in the practices complained of for six years following approval, and awarding class members monetary relief comparable to what they might have secured had they prevailed at trial. Class members will recover this award simply by filing a claim form, and without confronting any of the risks or expenses associated with further litigation. This is especially valuable where, as here, Defendants have raised dispositive defenses that have succeeded in similar actions.

   The settlement was due in no small part to Class Counsel's significant labor. During the eighteen months that this case has been pending, and based upon discovery taken during the last three years on related cases against the same Defendant, counsel has briefed multiple dispositive motions, including motions to dismiss and for class certification; undertaken significant discovery, including written discovery and depositions; and spent weeks negotiating a settlement that provides broad and valuable relief to more than 63,000 class members. Both this work and

3

357425

the excellent results procured support an award of the proposed fees, which amount to only 16% of the value of the monetary portion of the settlement.

Of course, no settlement of this size and scope will satisfy each and every class member. Recognizing this, the settlement notice offered class members the opportunity to opt out. Objectors were presented with this option, and chose to remain in the class rather than pursue their claims on an individual basis. The rest of the class should not suffer any delay as a result. The Court should approve the parties' settlement and overrule all objections.

## ARGUMENT

### I. A CLAIMS-MADE SETTLEMENT IS NOT ONLY FAIR, REASONABLE, AND ADEQUATE, BUT IS NECESSARY.

The sole objection contends that the claims-made structure of this settlement, as well as the claim form and procedures, were designed to minimize the number of class members who obtain relief from Defendants. But the claims-made structure of this settlement is not only necessary and the only possible method —as established in Plaintiffs' final approval papers—but also fair, as it provides more than 63,000 class members an opportunity for near-complete recovery. Plaintiffs' responses to these objections are set forth more fully below.

**A. There is No Objection to the Receipt of a 10.5% Refund and the Claims-Made Process Is Necessary and Will Provide Near-Complete Relief to Those Who Submit a Claim.**

The settlement offers monetary relief to class members that will compensate them for a significant part of the allegedly inflated portion of the force-placed premiums that they either paid or were charged. All class members who paid any portion of a force-placed premium and who submit a valid claim form will recover an amount equal to 10.5% of the net premium charged, not just 10.5% of the alleged "excess" portion of the premium. (D.E. 168-1 at ¶ 4.4). The Objectors do not argue that the 10.5% return for each class member is too low or unreasonable. Indeed, they cannot because neither they nor their counsel have ever litigated a lender-placed case, and because it is an exceptional result given that SunTrust did not accept any illegal commissions or engage in extremely profitable reinsurance arrangements, unlike most other lender-placed servicers.

The sole objection challenges the "claims-made" structure of the parties' settlement, arguing that it does not provide the best-possible relief to the maximum number of class members, and suggesting that it is unnecessary. (D.E. 169.) The objection suggests that a direct-

4

357425

payment structure should have been considered and adopted by the parties, and that the parties' settlement should be rejected because it was not. This argument arises from a basic misunderstanding of the discovery taken from the Defendants in this case. The possibility of a direct-pay settlement structure was considered *and investigated* by Class Counsel. (D.E. 168 at 13-15.) Class Counsel took considerable confirmatory discovery from Defendants, in this and other cases, to examine Defendants' assertion that it would be practically impossible to provide direct payments to a nationwide class. (*Id.*) This discovery confirmed that the claims process is not only necessary, but it is also the *only* possible method of distribution of the substantial settlement proceeds agreed to by the parties here, in a settlement class of more than 63,000 SunTrust borrowers, and will maximize the relief available to class members who opt to file a claim.

The same conclusion has been reached by courts approving settlements in other force-placed insurance class actions, and by state regulators settling borrowers' claims against the force-placed insurers that control the force-placed insurance market. *See, e.g., Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (overruling objection to claims-made settlement based on evidence that that defendants could not determine which class members had paid on system-wide basis); *Casey v. Citibank, N.A.*, No. 5:12-cv-820, 2014 U.S. Dist. LEXIS 118252 (N.D.N.Y. Aug. 21, 2014) (granting final approval of claims-made force-placed insurance settlement); Consent Order, *In the Matter of QBE Fin. Institution Risk Servs., Inc., QBE Ins. Corp., & QBE Holdings Inc*. (N.Y.D.F.S. 2013), available at http://www.dfs.ny.gov/about/ea/ea_201304181_qbe.pdf.[3]

The 10.5% amount is calculated from the entire premium, rather than the alleged

---

[3] Class Counsel here has also confirmed that a claims-made process is necessary in other force-placed insurance class actions pending in this district against other major mortgage lenders. *See, e.g., Saccoccio*, No. 13-cv-21107 (S.D. Fla.) (D.E. 128) (granting final approval and finding that the claims-made process was reasonable in light of the evidence that the Defendants would have to manually review each class member's files); *Braynen v. Nationstar Mortg., LLC*, No. 14-cv-20726 (S.D. Fla.) (D.E. 46) (discussing discovery taken in support of approval of the settlement); *Diaz v. HSBC Bank USA, N.A.*, No. 13-cv 21104 (S.D. Fla.) (D.E. 156) (same); *Hall v. Bank of Am., N.A.*, 12-cv-22700 (S.D. Fla.) (D.E. 379) (same). This is because all of the major mortgage lenders use the same "MSP" system to house their data on borrowers' mortgage loans and, as a result, none of the lenders is able to query its systems to produce information automatically to identify borrowers who have paid force-placed premiums or who have been charged but have not paid, among other things. *See, e.g.,* D.E. 233-1.

5

"excess" or inflated portion of the premium, since a considerable portion of the premiums charged, in fact, were applied to pay for insurance to cover the borrower's property. The Settlement Class thus has a strong incentive to submit a claim form—the 10.5% recovery made available to individual borrowers may yield settlement payments of hundreds or thousands of dollars if a claim is filed. As this Court reasoned in approving the *Saccoccio* settlement, this relief "very likely exceeds what Plaintiffs could have won at trial." 297 F.R.D. at 693.

Further, "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment." *Saccoccio*, 297 F.R.D. at 696 (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)). Filing a claim form is a "reasonable administrative procedure" which generally does not impose an undue burden on members of a settlement class. *See Turner v. Gen. Elec. Co.*, No. 2:05-cv-186-FtM-99DNF, 2006 U.S. Dist. LEXIS 65144, at *7 (M.D. Fla. 2006). Moreover, a claims process may "strike a proper balance between, on the one hand, avoiding fraudulent claims and keeping administrative costs low, and on the other hand, allowing as many class members as possible to claim benefits." *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1010 (E.D. Wis. Aug. 16, 2010). This is particularly important where a case presents a class of this size, and determining the amounts to be paid under a direct-pay structure would potentially make settlement more costly than litigation. *See Saccoccio*, 297 F.R.D. at 696 (citing evidence that performing a manual review of all borrowers files for a class of approximately 800,000 borrowers "would take a thousand people … every month").

A direct-pay structure could also present a significant risk of fraud, with checks (here in amounts up to thousands of dollars) being sent to outdated addresses or cashed by individuals other than the mortgagor at the same address. The purpose of ensuring certainty in the administration of monetary relief to a class of thousands of borrowers nationwide is also served by the submission of the basic biographical information required by the claims form. *See, e.g., Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 201 (D.D.C. 2011) (a "claims process is often used to ensure that money is fairly distributed for valid claims").

Where, as here, a claims-made process is the only reasonable method for providing prompt and substantial relief to the class, requiring class members to file claim forms also maximizes the relief available to class members who opt to submit a claim. *See, e.g., In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *9 (N.D. Ill. Aug. 26, 2013)

6

357425

(claims-made process "reasonable and appropriate" in settlement requiring defendant to replace vouchers where defendant lacked data to determine how many vouchers remained outstanding). Indeed, district courts routinely approve reasonable claims-made settlements, including those involving force-placed insurance. *See, e.g., Saccoccio*, 297 F.R.D. 683; *Williams*, No. 11-cv-21233 (D.E. 356) (claims-made settlement in force-placed insurance class action was "in all respects fair, reasonable, and adequate"); *Trombley*, 826 F. Supp. 2d at 201 (approving claims-made settlement and observing that "a claims process is often used to ensure that money is fairly distributed for valid claims"); *Wahl v. Am. Sec. Ins. Co.*, No. C08-00555 (N.D. Cal.) (D.E. 189) (claims-made force-placed insurance settlement was "entered into in good faith and … fair, reasonable, and adequate").

      The Objectors also argue that the Court should delay final approval until after the claims process is complete, so that it can take into account how many claims are submitted in determining whether the settlement is fair and reasonable. (D.E. 169.) But the settlement's fairness is determined by the opportunity created for the class members to be compensated, not by how many ultimately submit claims. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling same objection); *In re Apple iPhone4*, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012); *Shames*, 2012 WL 5392159, at *9 (rejecting objection that court "should wait until the claims are in, and it is determined how much was actually paid to the class before determining a reasonable percentage for class counsel").

      The Objectors' arguments also fail to account for the significant costs and hurdles the class would have faced had they proceeded with litigation. (D.E. 168 at 17-18.) Accounting for these risks highlights the reasonableness of the proposed settlement.

      The Objectors' arguments that claims rates are generally low in claims-made settlements are without merit because the parties' settlement provides the vast majority of the class the opportunity to achieve near-complete recovery. This is the yardstick by which the settlement should be measured.

      The Court should overrule the sole objection relating to the claims process described in the Settlement Agreement because it is reasonable and will provide maximum relief to the class. *See, e.g., McKinnie v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 811-12 (E.D. Wis. 2009) (claims-made settlement "eminently reasonable" because claiming class members would be made whole).

7

357425

### B. The Claim Form Is a Reasonable Administrative Procedure.

The Claim Form requires borrowers to submit the minimal amount of information necessary to confirm their identities, ascertain whether they are entitled to a 10.5% recovery under the terms of the settlement, and determine whether they should be paid by check or with a credit to their escrow accounts. (D.E. 168-1)  The same biographical information—and the request that borrowers check a box if they have undertaken bankruptcy proceedings—will allow Defendants to determine if individual borrowers' claims have already been discharged.   Indeed, the Claim Form requires nothing more than for class members to provide this basic biographical information, check a box indicating whether they actually paid force-placed insurance premiums or have simply been charged for the premiums, and verify their identities and the accuracy of the information in the Claim Form.  (*Id*.)

The Claim Form does not require claimants to submit any supporting documentation or provide information about the details of their loans—borrowers who were charged for, but did not pay, force-placed premiums are asked only to sign the form and provide the last four digits of their social security numbers, while claimants who paid the premiums are asked also to provide a witness's signature, a copy of a valid photo identification, a SunTrust mortgage statement, or a notarized claim form.  (*Id*.)   And settlement class members may download blank claim forms from the settlement website, and submit the form either by uploading it to the site or by sending it through the mail.  This hardly places an onerous burden on class members.  *See Sacccoccio*, 297 F.R.D. at 698 (approving similar claim form); *Mangone v. First USA Bank*, 206 F.R.D. 222, 235 (S.D. Ill. 2001) (approving an indistinguishable claims process that required claimants to check a box and declare under penalty of perjury that the information was correct).

### II. OBJECTIONS TO THE ADEQUACY OF THE SETTLEMENT'S INJUNCTIVE RELIEF ARE UNPERSUASIVE.

#### A. Injunctive Relief

As stated earlier, the Objectors do not challenge the payment percentage to be given to each class member.  However, the Objectors, without any evidence or foundation, claim the injunctive relief is "illusory" because the "practice changes appear to be undertaken in the best interest of the defendants. It appears likely the defendants would make these changes without an injunction; they certainly would have business reasons to do so." (D.E. 169 at 3).  They make these claims without any evidence or experience (the Objectors do not litigate lender placed

insurance class actions, they only object to them).

The Objectors are simply incorrect, the injunction provides real relief to the class and consuming public in that it changes the way the Defendants conduct their forced placed insurance business nationwide. Any "business reasons" such as good will, state or federal regulator enforcement, or guideline changes would not bind the Defendants for the entire country and could be changed at any time.

For example, under the Consent Order that the QBE Defendants entered into with state regulators in New York, the QBE Defendants agreed to stop paying servicers commissions and entering into reinsurance agreements with servicers, but only with respect to New York borrowers. The significant injunctive relief negotiated by the parties, by contrast, benefits borrowers nationwide. This consent order also binds only the QBE Defendants—it does not enjoin the mortgage lenders from continuing these practices with another insurer. *See* Consent Order, *In the Matter of QBE Fin. Institution Risk Servs., Inc., QBE Ins. Corp., & QBE Holdings Inc*. (N.Y.D.F.S. 2013), available at http://www.dfs.ny.gov/about/ea/ea_201304181_qbe.pdf.

The Objectors also challenge the settlement's injunctive relief on the ground that it benefits non-class members. (D.E. 169 at 3). While this objection may carry weight in cases involving one-off consumer transactions, it does not apply where, as here, the class is composed of consumers who have contracted to do business with Defendants for years into the future. The nationwide class here is comprised of more than 63,000 SunTrust mortgagors, many, if not most of whom are still party to mortgage contracts with SunTrust. Regardless of whether individual borrowers currently have forced coverage on their properties, they continue to be bound by the forced-placed provisions in their mortgage agreements, and are subject to the possibility that coverage will be forced on their properties in the future for any of a number of reasons. Class Counsel's fee award should account for the value the Settlement's injunctive relief will confer on the class.

### III.   THE PROPOSED CLASS COUNSEL FEE AWARD IS EMINENTLY REASONABLE.

The prevailing method for calculating attorneys' fees from a common fund like the one created here is to apply the percentage-of-recovery method to the entire value of the settlement, not just the value of the claims actually paid to class members. (D.E. 168 at 16-17; D.E. 168-4 ¶¶ 37-39). The sole objectors cite district and appellate court opinions issued outside the

9

357425

Eleventh Circuit to support the contention that Class Counsel's fees should be based on the value of the claims actually paid to class members, but their argument rests on a mischaracterization of the law and disregards controlling Supreme Court and Eleventh Circuit precedent.

The Supreme Court's decision in *Boeing v. Van Gemert*, 444 U.S. 472 (1980), and the Eleventh Circuit's decision in *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), should end any dispute on this issue. Both cases expressly approve applying the percentage-of-recovery method to the total value of the settlement. The Objectors contend that the Court should not follow *Boeing* and *Waters* because they are outdated opinions that have not been followed as prevailing law since CAFA was enacted in 2005. This is simply false. *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437-38 (2d Cir.2007) (citing *Waters* and rejecting both relevance of CAFA to fee determination and proposition that counsel's award should be based on claims made because, *inter alia*, "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class"); *Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738, 2014 U.S. Dist. LEXIS 106042, at *17-18 (D.N.J. July 31, 2014) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants."); *Curry v. AvMed, Inc.*, No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485, at *6 (S.D. Fla. Feb. 28, 2014) (citing *Waters* awarding fee of 25% of total value of the settlement achieved for the class); *Saccoccio*, 297 F.R.D. at 694-95 (citing *Boeing*, *Waters*, and *Camden I*).

Objectors also take issue with the reversion of unclaimed funds to Defendants and the so-called "clear sailing" provision. (D.E. 169 at 3-4.) Though these terms may warrant a court giving closer scrutiny to a settlement, they do not warrant rejection of a settlement that is otherwise reasonable. *See, e.g., Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir. 2014) (where fees are reasonable, "it is sufficient that a district court recognizes and balances potentially collusive provisions, such as the reversion to the defendants of unclaimed funds, against the other terms of the settlement agreement"); *Blessing v. Sirius XM Radio, Inc.*, 507 Fed. App'x 1, 6 (2d Cir. 2012) (reversionary and clear-sailing provisions did not provide grounds for vacating awarded counsel fee where "fee was negotiated only after settlement terms had been decided and did not … reduce what the class ultimately received"); *Gooch v. Life Investors Ins.*

10

*Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) (recognizing that "not every 'clear sailing' provision demonstrates collusion,'" and finding "collusion particularly unlikely … where the 'clear sailing' provision cap[ped] attorney compensation at 2.3% of the total expected value of the settlement," as opposed to the 20% to 30% typical of common fund fee awards).[4]

As demonstrated in Plaintiffs' Motion for Final Approval, the settlement negotiated by the parties is eminently reasonable, as is Class Counsel's negotiated fee award. Class Counsel worked for years to secure approximately $18.9 million in monetary relief for a class of more than 63,000 SunTrust mortgagors. (D.E.168.) The fee that they have requested amounts to only 16% of the gross monetary settlement achieved for the class, exclusive of the considerable injunctive relief. (*Id.* at 16-18.) This award will not be taken from the amount made available to the class, and was negotiated after the other terms of the settlement had been reached, thus the allocation "defects" cited by the Objectors do not taint this settlement. These indicia of fairness extinguish any suggestion of collusion. *See, e.g., Stokes v. Saga Int'l Holidays, Ltd.*, 376 F. Supp. 2d 86, 89 (D. Mass. 2005) (citations omitted) ("Arm's length negotiations of attorneys' fees that would not diminish the common fund available to the members of the class action do not have the potential for the evils of extortion and collusion.").

Moreover, the award of any fee was contingent on a good result; Class Counsel would have recovered nothing if it had not secured recovery for the class. "For a complex and sophisticated case such as this one, class counsel took considerable financial risk in pursuing the case." *Saccoccio*, 297 F.R.D. at 695. Class Counsel also spent considerable time litigating and settling the class's claims, defending against multiple dispositive motions, briefing the issues of class certification and preliminary and final approval, taking considerable discovery, and spending several months negotiating the mediated settlement. (D.E. 168.)

Finally, there is no evidence of collusion among the parties, nor did any occur. To the contrary, the parties' mediation was overseen by an experienced, neutral mediator. The Court

---

[4] The Objectors suggest that any portion of the $3.6 million proposed fee *not* awarded to Class Counsel should revert to the Settlement Class rather than Defendants. This reflects a basic misunderstanding of the parties' settlement. The proposed fee award was negotiated separate and apart from the class relief—it will not come from the funds made available to the class under any circumstance. (D.E. 168.) And adding additional funds to the "pot" would not give additional funds to any settlement class member; the total value of the settlement is based on the 10.5% net premiums amounts made available to the class, and *every* class member who makes a claim will take that amount regardless of the settlement's other terms.

11

357425

should overrule all objections contending that the proposed fee award is anything but fair and reasonable.

### IV. THE CLAIMS RATE IS UNKNOWN BECAUSE THE DEADLINE FOR FILING CLAIMS HAS NOT YET PASSED.

The Objectors argue that the Court should not grant final approval before the claims deadline, but district courts often grant final approval of class actions settlements before the final claims rate is known. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling same objection because courts in this district have upheld settlements with low claims rates and because claims deadline had not yet passed); *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) (rejecting notion that court "should wait until the claims are in, and it is determined how much was actually paid to the class before determining a reasonable percentage for class counsel"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007) (court need not wait for final claims data to approve). Moreover, a low claims rate would not compel the conclusion that the settlement as a whole is not fair, reasonable, or adequate. *See, e.g., Moore v. Verizon Commc'n Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate). Had the claims deadline been set on an earlier date, class members would have had less time to submit claims forms, guaranteeing a lower claims rate. The plan proposed by the settlement and preliminary approval order provides class members the best opportunity to file claims and ensures a higher claim rate.

### V. THE SETTLEMENT IS NOT THE PRODUCT OF A "REVERSE AUCTION."

Objectors also lodge the accusation that the settlement here was the result of a "reverse auction" (D.E. 169-4), which occurs when a "defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Negrete v. Allianz Life Ins. Co.* 523 F. Supp. 2d 1091, 1099-1100 (C.D. Cal. 2008) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). This accusation is not only unfounded, but also belied by the history of this case, as well as the settlements reached by other plaintiffs' counsel and state regulators in other proceedings.

This action was litigated for almost one year, with several rounds of dispositive motions briefed and significant discovery taken before the Court ordered the parties' to mediation. (D.E.

12

357425

168 at 2-7.) The mediation was conducted at arm's length, and without collusion among the parties. (*Id*.) Of equal importance, and according to Defendants, "no other class settlements were directly in prospect" when the parties to this action began mediation and reached an agreement.

The notion that Defendants sought out the weakest settlement is also belied by the significant relief procured for the class. Class members will have the opportunity to recover 50-100% of their total damages, and will benefit from injunctive relief that will put an end to Defendants' wrongful practices for at least five years. (D.E. 168.) Other, unaffiliated class counsel and state regulators have negotiated strikingly similar relief with force-placed lenders and insurers. *See, e.g., Casey*, 2014 U.S. Dist. LEXIS 118252 (N.D.N.Y Aug. 21, 2014); *Pulley*, 2013 U.S. Dist. LEXIS 188088, (S.D. Fla. Nov. 25, 2013); NYDFS Consent Order, *available at* http://www.dfs.ny.gov/about/press2013/assur-order-130321.pdf.

Further, no state or federal regulator has objected to this settlement after being given notice. Indeed, no one other than these professional objectors and their professional objector counsel has objected to the terms in any way.

## **CONCLUSION**

The Court should overrule all objections in their entirety.

357425

Respectfully submitted this 6th day of October, 2014.

By: /s/ Adam M. Moskowitz

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Counsel for Plaintiffs* | Aaron S. Podhurst, Esq.<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>jgravante@podhurst.com<br>Matthew Weinshall, Esq.<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* |
| Lance A. Harke, Esq.<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: (305) 536-8220<br>Facsimile: (305) 536-8229<br>*Counsel for Plaintiffs* | |

357425

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 6th day of October, 2014 and served by the same means on all counsel of record.

By: /s/ Adam M. Moskowitz

357425