UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-60749-CIV-COHN/SELTZER

CARINA HAMILTON f/k/a LISA MONTI
and DAVID S. WIEDER on behalf of themselves
and all others similarly situated,

    Plaintiffs,

v.

SUNTRUST MORTGAGE INC., QBE
SPECIALTY INSURANCE COMPANY,
and STERLING NATIONAL INSURANCE
AGENCY n/k/a QBE FIRST INSURANCE
AGENCY,

    Defendants.
_____/

### ORDER GRANTING FINAL APPROVAL TO
### CLASS ACTION SETTLEMENT AND FINAL JUDGMENT

Before the Court for approval is a nationwide class action settlement that affects more than sixty thousand homeowners from across the country who were allegedly affected by defendants' "lender-placed" or "forced-placed" insurance practices.[1] This settlement provides monetary and injunctive benefits to homeowners across the country.  As explained fully below, the Court **GRANTS** the parties' Motion for Final Approval

    1.    On June 17, 2014, this Court granted preliminary approval to the proposed class action settlement set forth in the Stipulation and Settlement Agreement (the "Settlement Agreement") between Plaintiffs Carina Hamilton and David Wieder

---

[1] "Lender-placed" insurance may also be referred to in this Final Order and Judgment as "LPI".

("Plaintiffs"), on behalf of themselves and all members of the Settlement Class, and SunTrust Mortgage, Inc. ("SunTrust"), QBE Specialty Insurance Company, Sterling National Insurance Agency n/k/a QBE FIRST Insurance Agency, Inc., QBE Insurance Corporation, QBE Financial Institution Risk Services, Inc., and Praetorian Insurance Company (collectively "the QBE Defendants;" and together with SunTrust, "Defendants"). (See D.E. 165.) The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a final approval hearing to take place on October 17, 2014. (*Id.*) The Court finds that the Class Notice substantially in the form approved by the Court in its preliminary approval order was given in the manner ordered by the Court, constitutes the best practicable notice, and was fair, reasonable, and adequate, and that the Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715.

2.     On October 17, 2014, the Court held a duly noticed final approval hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing the Named Plaintiffs' third amended complaint on the merits and with prejudice in favor of the Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the Settlement Class and whether and in what amount to award a Case Contribution Award to the Named Plaintiffs.

3.      The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, and the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order and Judgment.  Without in any way affecting the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and Judgment and for any other necessary purpose.

4.      The Court finds that the Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Hamilton Litigation" or the "Action") and of the strengths and weaknesses of their respective positions.  There is no evidence of collusion.  The Settlement Agreement was reached after the parties engaged in extensive litigation, including motions to dismiss.  Further, the settlement occurred only after the parties mediated over a period of months with a nationally recognized and well respected mediator (Mr. Jonathan Marks), and after the exchange and production of considerable discovery, including a substantial volume of electronic data.  These counsel have been litigating lender placed cases for many years and are very familiar with all of the risks associated with these cases.  Counsel for the parties therefore were well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

5.      The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for each

Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

6. Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies the Settlement Class, as identified in Settlement Agreement, which shall consist of the following:

> All borrowers in the United States who had mortgage loans serviced by SunTrust Mortgage, Inc. who were charged a premium for lender-placed hazard, wind, or flood insurance coverage issued by the QBE Defendants, or one of their affiliates, within the Class Period, which shall be defined as the period of time from April 1, 2008 through June 17, 2014.

> Excluded from the Class are: (i) individuals who are or were during the Class Period officers, directors, or employees of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers whose LPI Policy was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower; (iv) all borrowers who file a timely and proper request to be excluded from the Class; (v) any borrowers who have settled or otherwise released any LPI claims; and (vi) any borrowers for whom SunTrust has otherwise written-off or released the borrower from his or her LPI repayment obligation.

7. The Court appoints the law firms of Kozyak, Tropin, & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP as Class Counsel for the Settlement Class.

8. The Court finally designates Named Plaintiffs Carina Hamilton and David Wieder as the Class Representatives.

9. The Court makes the following findings on notice to the Settlement Class:

(a) The Court finds that the distribution of the Mail Notice, the creation of the IVR toll-free telephone number system, a live response operator, publication of the summary notice in USA Today, and creation of the Internet site, all as provided for in the Settlement Agreement and Preliminary Approval Order: (i) constituted the best practicable notice under the circumstances to Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law. This Court further finds that all notice requirements under the Class Action Fairness Act, 28 U.S.C. § 1715, have been properly complied with in connection with the Settlement Agreement, and that it has been more than ninety (90) days since the date, May 19, 2014, on which the notices required under the statute were served upon the appropriate state and federal officials.

(b) The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Order and Judgment (i) constitute the most effective and practicable notice of the Final Order and Judgment, the relief available to Settlement Class Members pursuant to the Final Order and Judgment, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.

10. The Settlement Agreement is finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members. The settlement confers substantial benefits upon the Settlement Class members, is in the public interest, and will provide the parties with repose from litigation.

11. The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

12. The Court considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Of the just over 63,000 class members nationwide to whom notice was issued, there was only one objection on behalf of one married couple (Amirali and Janet Jabrani), which equates to less than .003% of the class. Moreover, not a single state attorney general or regulator submitted

an objection to any provision of the Settlement Agreement. The Court finds that such facts are overwhelming support for the settlement and clear evidence of its reasonableness and fairness.

13. Neither the Jabranis nor their counsel attended the Final Fairness Hearing. Nevertheless, the Court has reviewed all of the arguments and positions raised by the objectors. Their objections are overruled.

14. The Court first finds that the significant injunctive relief provided under the Settlement Agreement is not illusory, but constitutes important changes that will help homeowners across the country. Moreover, the Settlement has made monetary relief available to the class members.

15. The provided injunctive relief guarantees the cessation of numerous activities that have been the subject of lender-placed cases, including the ending of unearned commissions, below costs and/or free services for lender-placed insurance, prohibiting captive reinsurance agreements, affiliated lender-placed insurance transactions, and other specific practices. The Court notes the Defendants deny engaging in these practices, and Named Plaintiffs concede SunTrust did not receive commissions or engage in captive reinsurance agreements or affiliated transactions related to lender-placed insurance. Nevertheless, the injunctive relief goes beyond these concessions, and the Defendants' asserted past performance could be altered in the absence of the agreed injunctive relief. The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide.

16. Second, the Court rejects the Jabrani's argument that the Court cannot grant final approval before the claims deadline. District courts often grant final approval of class actions settlements before the final claims deadline. *See, e.g., Saccoccio* 297 F.R.D. at 696 (Judge Moreno overruling this same objection because courts in this district have upheld settlements with low claims rates and because claims deadline had not yet passed); *Casey v. Citibank, N.A.*, No. 12-cv-00820, 2014 WL 4120599, at *2 (N.D.N.Y. Aug. 21, 2014) (number of claims made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate"); *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) (rejecting notion that court "should wait until the claims are in, and it is determined how much was actually paid to the class before determining a reasonable percentage for class counsel"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007) (court need not wait for final claims data to approve). In approving the comparable JP Morgan Chase Bank LPI class settlement, Judge Moreno "rejected Objectors' argument that the Court should have considered the exact number of claims filed before approving the Settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, No. 13-21107-CIV, 2014 WL 3738013, at *1 (S.D. Fla. July 28, 2014). The Court agrees that an LPI class settlement that offers significant monetary relief, as this one does, "requiring only that class members submit a claim form," can be "fair and reasonable independent of the number of claims filed." *Id.*

17. As of October 10, 2014, approximately 2,514 claims have already been filed by class members who were either charged or paid lender placed coverage. The Court finds that even a low claims rate at this stage does not compel the conclusion that

8

the settlement is not "fair, reasonable, or adequate." *See, e.g., Perez v. Asurion Corp.,* 501 F.Supp.2d at 1377 (approval of settlement with 1.1% of class members returned claims forms); *Moore v. Verizon Commc'n Inc.,* No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate).

18. The Court also understands that the claims period will not be complete until next year and that based upon the experience of Class Counsel with other lender-placed settlement, claims will be increased after final approval. *See Williams v. Wells Fargo Bank, N.A.,* No. 11-cv-21233-RNS (S.D. Fla.) (lender placed insurance settlement in this Court where the final claims rate was 14.4%).

19. The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is "fair, reasonable, and adequate," not whether the class decides to actually take advantage of the opportunity provided. The Court finds that the Claim Form and Claim and Notice Process were fair and reasonable. The Claim Form should take no more than a few minutes for the average class member to review and complete.

20. The third argument raised by the Objectors is that the Defendant should provide direct payments to class members instead of a claims-made system.

21. The Court finds that the Settlement Agreement offers monetary relief to class members that will compensate them for a significant part of the allegedly inflated portion of the force-placed premiums that they either paid or were charged. All class members who paid any portion of a force-placed premium and who submit a valid claim form will recover an amount equal to 10.5% of the net premium charged, not just 10.5%

of the alleged "excess" portion of the premium. (D.E. 168-1 at ¶ 4.4). The 10.5% amount is calculated from the entire premium, rather than the alleged "excess" or inflated portion of the premium, since a considerable portion of the premiums charged, in fact, were applied to pay for insurance to cover the borrower's property. As this Court reasoned in approving the comparable *Saccoccio* settlement, this relief "very likely exceeds what Plaintiffs could have won at trial." *Saccoccio*, 297 F.R.D. at 693.

22. The Objectors do not argue that the 10.5% return for each class member is too low or unreasonable. They cannot because it is an exceptional result given that SunTrust, unlike the allegations involving other lender-placed defendants, did not accept illegal commissions or engage in extremely profitable reinsurance arrangements.

23. The sole objection also challenges the "claims-made" structure of the parties' settlement, arguing that it does not provide the best-possible relief to the maximum number of class members, and suggesting that it is unnecessary. The objection suggests that a direct-payment structure should have been considered and adopted by the parties, and that the parties' settlement should be rejected because it was not. This argument arises from a basic misunderstanding of the discovery taken from the Defendants in this case.

24. The possibility of a direct-pay settlement structure was considered and investigated by Class Counsel. (D.E. 168 at 13-15.) Class Counsel took considerable confirmatory discovery from Defendants, in this and other cases, to examine Defendants' assertion that it would be impractical to provide direct payments to a nationwide class. This discovery confirmed that the claims process would be a practical

method of distribution of the settlement proceeds to a class of more than 63,000 SunTrust borrowers.

25. Courts approving settlements in other force-placed insurance class actions, and state regulators settling borrowers' claims against the force-placed insurers that control the force-placed insurance market, have also concluded that a claims process is reasonable. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objection to claims-made settlement based on evidence that that defendants could not determine which class members had paid on system-wide basis); *Casey v. Citibank*, *N.A.,* No. 5:12-cv-820, 2014 U.S. Dist. LEXIS 118252 (N.D.N.Y. Aug. 21, 2014) (granting final approval of claims-made force-placed insurance settlement); *Consent Order, In the Matter of QBE Fin. Institution Risk Servs.*, *Inc., QBE Ins. Corp., & QBE Holdings Inc.* (N.Y.D.F.S. 2013), available at http://www.dfs.ny.gov/about/ea/ea_201304181_qbe.pdf. Put simply, "criticism of the claims-made structure" does "not impact the fairness, reasonableness, or adequacy of the proposed settlement." *Casey*, 2014 WL 4120599, at *2.

26. Further, "'[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.'" *Saccoccio*, 297 F.R.D. at 696 (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)). Filing a claim form is a "reasonable administrative requirement" which generally does not impose an undue burden on members of a settlement class. *See Turner v. Gen. Elec. Co.*, No. 2:05-cv-186-FtM-99DNF, 2006 WL 2620275 65144, at *7 (M.D. Fla. Sept. 13, 2006). Moreover, a claims process may "strike a proper balance between, on the one hand, avoiding fraudulent claims and keeping administrative costs low, and on the

11

other hand, allowing as many class members as possible to claim benefits." *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 733 F. Supp. 2d 997, 1010 (E.D. Wis. Aug. 16, 2010). Sending unsolicited checks to unverified addresses and recipients increases the risk of misappropriation. Non-class members could endorse over to themselves misdirected settlement checks. Attempting to recover money from individuals who fraudulently cash checks is impracticable. This is particularly important where a case presents a class of this size, and determining the amounts to be paid under a direct-pay structure would potentially make settlement more costly than litigation. *See Saccoccio,* 297 F.R.D. at 696 (citing evidence that performing a manual review of all borrowers' files for a class of approximately 800,000 borrowers "would take a thousand people . . . every month").

27.     Where, as here, a claims-made process is a reasonable method for providing prompt and substantial relief to the class, requiring class members to file claim forms also maximizes the relief available to class members who opt to submit a claim. A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims. What matters is the settlement's value to each class member— it is ultimately up to class members to participate or not. Indeed, district courts routinely approve reasonable claims-made settlements, including those involving lender-placed insurance. *See, e.g., Saccoccio*, 297 F.R.D. 683; *Williams,* No. 11-cv-21233 (D.E. 356) (claims-made settlement in lender-placed insurance class action was "in all respects fair, reasonable, and adequate"); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 201 (D.D.C. 2011) (approving claims-made settlement and observing that "a claims process is often used to ensure that money is fairly distributed for valid

12

claims"); *Wahl v. Am. Sec. Ins. Co.,* No. C08-00555 (N.D. Cal.) (D.E. 189) (claims-made lender-placed insurance settlement was "entered into in good faith and . . . fair, reasonable, and adequate").

28.     The final objection concerns the demand that the Court wait until the close of the claims period to consider Class Counsel's request for attorneys' fees and expenses.  This objection is overruled.

29.     Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement.  *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 676 (1980); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Saccoccio,* 297 F.R.D. 683, 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Casey v. Citibank, N.A.*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 223); *David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant).

30.     In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).  The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower.  *Waters*, 190 F. 3d at 1295-96.

31.	"[F]ederal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (awarding fees of 31½% of settlement fund).  Here, the requested percentage is easily within or below the range provided by the Eleventh Circuit.  *See Camden I,* 946 F. 2d at 774 (20%–50% of the value provided); *David*, 2010 WL 1628362 at *8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits").  As the Eleventh Circuit stated in *Camden I*: "[A]n upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."  946 F.2d at 774–75.  The fees requested here, 16% of the overall benefit, is thus well in line with the bulk of the fee awards in class action litigation.  *See, e.g., Saccoccio,* 297 F.R.D. at 695 (awarding 6.7% of total fund available to be claimed*); Terazosin Hydrochloride Antitrust Litig.,* No. 99–1317–MDL–Seitz (S.D. Fla. Apr. 19, 2005) (awarding fees of 33-1/3 %); *In re Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5% of settlement).

32.	Accordingly, pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $3,600,000.00 pursuant to the terms of the Settlement Agreement.  This amounts to 16% of the total monetary benefits made available to the class.  The percentage would be lower when the value of the significant injunctive relief is also considered.  *See Waters*, 190 F.3d at 1295–96.

14

33. The Court also awards two case contribution awards in the amount of $5,000.00 each to Carina Hamilton and David Wieder pursuant to the terms of the Settlement Agreement.

34. The terms of the Settlement Agreement, including without limitation the releases contained in Section 10 of that Agreement, are hereby incorporated in this Final Order and Judgment.

35. All Settlement Class Members who did not timely exclude themselves from the Settlement Class, and all persons actually or purportedly acting on behalf of any such Settlement Class Member, are, from this day forward, hereby permanently barred and enjoined from directly or indirectly:  (i) filing, commencing, prosecuting, continuing in, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in the Hamilton Litigation and/or the Released Claims (as that term is defined in the Settlement Agreement); or (ii) organizing any Settlement Class Members into a separate class, or soliciting the participation of other Settlement Class Members, for purposes of pursuing as a purported class action any lawsuit in any jurisdiction (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Claims.

36. Promptly after the Final Settlement Date, Settlement Class Members shall dismiss (or withdraw as may be appropriate) with prejudice all claims, defenses, actions, or proceedings that have been brought by any Settlement Class Member in any

other jurisdiction and that have been released pursuant to the Settlement Agreement and this Final Order and Judgment.

37.    Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Order and Judgment, nor any of its terms and provisions shall be:

(a)    offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Hamilton Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b)    offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c)    offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d) offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, or the Final Order and Judgment.

38. This Final Order and Judgment and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any Released Person (as that term is defined in the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

39. This Action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against the Named Plaintiffs and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County Florida, this 24th day of October, 2014.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF