# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-60749-CIV-COHN

CARINA HAMILTON f/k/a LISA MONTI
and DAVID S. WIEDER, on behalf of themselves
and all others similarly situated;

     Plaintiffs,

v.

SUNTRUST MORTGAGE INC., et al.

     Defendants.

_____/

## CLASS COUNSEL'S MOTION TO REQUIRE POSTING OF APPEAL
## BOND BY THE SOLE OBJECTOR-APPELLANTS

Class Counsel respectfully requests entry of an order requiring the sole objector/appellants (Amarali and Janet Jabrani) to post an appeal bond under FRAP 7 and 8 by Objectors (collectively "Objector-Appellants") in an amount of $15,000. This is a routine procedure in class actions.

This sole objection/appeal was brought by the often sanctioned professional objector Christopher Bandas (who refused to appear before this Court) and his local attorney Santiago Cueto, (D.E. 169,hereinafter the "Objection"). Mr. Bandas has been repeatedly criticized by district courts around the country for his sanctionable behavior with respect filing frivolous objections and appeals to class action settlements with the sole purpose of blackmailing class counsel into paying him money to simply go away.

> [A]ttorney Christopher Mr. Bandas, [is] a "professional" or "serial" objector … Mr. Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted).

In fact, recent deposition testimony of the Jabranis' confirmed that: (1) under their fee agreement, they are not allowed to share in any recovery by Mr. Bandas from Class Counsel above a $5,000 representative award, and (2) they are objecting, although they never read the Settlement Agreement, never read their filed objections, and did not know that this Court had overruled their objection.

## INTRODUCTION

On September 2, 2014 Plaintiffs filed their Motion for Final Approval of Class Action Settlement, Application for Service Award and for Attorneys' Fees and Expenses (D.E. 108), seeking final approval of the Settlement with Defendants.  Of the approximately 63,619 Settlement Class Members, only one objection to the Settlement was filed by Objector-Appellants, raising issues related generally to the claims process, the methods used to notify Settlement Class Members and the information provided to them in the Notices, and the amount of the fee award sought by Class Counsel.

The Court carefully reviewed all of the filings related to the Settlement, including Plaintiffs' motion, the objection, the opts-outs, and the responses to the objection.  On October 17, 2014, the Court held a Final Approval hearing, at which all Parties and objectors were given the opportunity to appear and address the Court.  The Objector-Appellants, and their professional objector counsel, chose not to appear.

On October 23, 2014, after full consideration of the filings and the presentations at the Final Approval Hearing, the Court entered its Order Granting Final Approval to Class Action Settlement and Final Judgment (hereinafter "Approval Order"). (D.E. 178.)  The Court concluded that there can be no doubt that the Settlement provides a substantial recovery for the

Settlement Class members, and represents an excellent result for the Settlement Class under all of the circumstances and challenges presented by this case.  The Court specifically found that the Settlement is fair, reasonable, and adequate, represents more than an acceptable compromise of the Settlement Class's claims, and complies with Fed. R. Civ. P. 23(e).  And the Court denied the objection and rejected the arguments set forth therein in all respects, finding that they were completely unsupported in the record and unpersuasive as to the substance of their complaints.

The Court's Final Order should have put an end to this litigation, allowing the Parties to expeditiously distribute the benefits of the Settlement to the more than 63,000 Settlement Class Members.  The delivery of those benefits, however, has now been delayed by the sole Objector-Appellants.  Objector-Appellants are represented by Christopher Bandas, a professional class action objector who has been sanctioned by courts across the country.  If the Objector-Appellants wish to pursue their sole Objection beyond this point, in the face of this Court's ruling, they should be required to bear the costs that their actions will otherwise impose on the over 63,000 non-objecting members of the Settlement Class.

Good cause exists for the Court to require the Objector-Appellants to post appeal bonds, given the high likelihood that this Court's Final Order will be affirmed.  The Objections were brought by a professional objector whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement he can latch onto.  As this Court recognized in *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d 1330 (S.D. Fla. 2011), "[p]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing."  *Id.* at 1362 n.30 (internal quotation marks omitted).

Appeal bonds will provide the protections typically afforded appellees during the pendency of an appeal – particularly an appeal of questionable merit – and will also discourage the Objector-Appellants and Objecting Counsel from viewing this Settlement as just a money-making opportunity.  That is, if the Objector-Appellants truly believe that their objections are well founded and they are motivated by genuine concern for the Settlement Class, they will post the required bond and proceed. On the other hand, if these appeals are what they appear to be, then by requiring bonds the Court will bend the Objector-Appellants' cost-benefit analyses, such that these appeals will not be the easy money they are hoping for, and they will cease their efforts to block the Class from receiving just compensation.

The amount of such bonds should include security for: (i) expected appellate fees and costs, and (ii) administrative costs of continued settlement administration during the length of the appeal period.  As discussed below, Plaintiffs respectfully urge the Court to order the Objector-Appellants to collectively post appeal bonds totaling $15,000.  The amount of these bonds is appropriate in this case and is reasonable when compared to bonds imposed in other class actions, particularly in light of the meritless and attorney-interested nature of the Objector-Appellants' appeals.

## BACKGROUND

### I. A BOND IS APPROPRIATE FOR A PROFESSIONAL OBJECTOR SEEKING TO HIJACK THIS SETTLEMENT FOR HIS PERSONAL GAIN.

Although the Objectors list their counsel on the Objection as Mr. Santiago Cueto, they admitted in deposition that they only have an agreement with Mr. Christopher Bandas from Corpus Christi, Texas, who refused to enter his appearance in the District Court because he has repeatedly been recognized as a "professional objector" and his conduct has been criticized or sanctioned in multiple federal judicial opinions.  *See also* John E. Lopatlea & D. Brooks Smith,

*Class Action Professional Objectors: What To Do About Them*, 39 Fla. State L. Rev. 866 (2012).[1] Due to his personal history, Mr. Bandas hired local attorney Santiago Cueto to prosecute the objections in this Court. At first denying Mr. Bandas' representation of the objectors, Mr. Cueto explained in a letter to Class Counsel that he was the only counsel in this action. *See* Letter from S. Cueto to A. Moskowitz dated October 28, 2014 (attached as **Exhibit A**) (I am not "local counsel" for the Jabranis in these two cases. I am their counsel. I am certainly not "local counsel" for Bandas. He is not a party. Again, I am the Jabranis' counsel of record in these two cases."). This, of course, was not true as Mr. Bandas made his appearance in the Eleventh Circuit appeal of this Court's final approval order a few days later on November 4, 2014.

Mr. Bandas has a repeated history of filing frivolous class action objections and appeals for the purpose of simply extracting money from Court-appointed class counsel that is documented in federal judicial opinions and weighs against his credibility. Here, as he has done in numerous cases:

> Mr. Bandas is … improperly attempting to "hijack" the settlement of the Actions from deserving class members … solely to coerce illgotten, inappropriate, and unspecified "legal fees."

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533 n.4 (citation omitted); *In re Hydroxycut Marketing and Sales Practices Litig.*, No. 09-md-2087, 2013 WL 5275618, at *5

---

[1] Mr. Bandas purposely did not appear in the District Court proceedings to avoid this Court's scrutiny at the final fairness hearing, and admonishment in the final approval papers. Discovery may be necessary to ascertain if Mr. Bandas "ghostwrote" the objection which is now a common practice by professional objectors and possibly a violation of Rule 11 of the Federal Rules of Civil Procedure and the Rules of Professional Conduct. *See* Florida Rule of Professional Conduct 4–8.4(c) ("[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.").

(S.D. Cal. Sept. 17, 2013) (finding that Mr. Bandas demanded $400,000 in return for making his objection "go away.").

One court was so exhausted with Mr. Bandas' dilatory conduct that it revoked his admission *pro hac vice* as a sanction for failing to pay an appeals bond. *See Dennings v. Clearwire Corp.*, No. 2:10-cv-1859-JLR (W.D. Wash.) [D.E. 166] ("The court rules that the appropriate sanction is to revoke Mr. Bandas' authorization to practice in the Western District of Washington."); *see also* **Exhibit B** (noting that Mr. Bandas' objections were overruled and, his application for admission *pro hac vice* denied due to his "attempt[s] to 'hijack' the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees'.")

"Federal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 at n.26 (E.D. Pa. 2003). Objectors like Mr. Bandas prepare "canned objections" and "seek out class actions to simply extract a fee by lodging generic, unhelpful protests." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000). "In some circumstances objectors may use an appeal as a means of leveraging compensation for themselves or their counsel." *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 300 (5th Cir. 2007). A notice of appeal may represent an "attempt to extort a significant cash award from the settlement fund." *In re Holocaust Victim Assets Litig.*, 311 F. Supp. 2d. 363, 365 (E.D.N.Y. 2004).

Mr. Bandas' objection scheme has repeatedly been found to be "meritless," "frivolous," "vexatious," and/or "filed for [an] improper purpose". *See In re Hydroxycut*, 2013 WL 5275618, at *5 ("In light of Mr. Bandas's scheme, the Court finds [the objections] were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."); *In re Wal-Mart Wage and HourEmployment Practices Litig.*, MDL No. 1735, 2010 WL 786513,

358799                                          5

at *1 (D. Nev. Mar. 8, 2010) ("[T]he Court finds that the objections are not supported by law or the facts and are indeed merit less (sic)."); *Conroy v. 3M Corp.*, No. 00-cv-2810, 2006 U.S. Dist. LEXIS 96169, at *10 (N.D. Cal. Aug. 10, 2006) ("The Court finds that the Bandas Law Firm['s] … objections to the proposed settlement were unfounded …."); *In re LivingSocial Marketing and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, at *17 (D.D.C. Mar. 22, 2013) ("The objections to the settlement terms are largely meritless."). This appeal is yet another of Mr. Bandas' efforts to interfere with a class settlement for his personal gain.

Indeed, when Mr. Bandas attempted the same ruse of not appearing at the trial court level, a Court in the Southern District of New York found that the "[appellant's] relationship with Bandas, a known vexatious appellant, further supports a finding that [the appellant] brings the appeal in bad faith." *In re Gen. Elec. Co. Sec. Litig.*, 998 F.Supp 145, 156 (S.D.N.Y. 2014) (ordering that appellant pay a $54,700 bond). When addressing Mr. Bandas' involvement in that action, the court specifically noted as follows:

> Moreover, while Hampe is appearing *pro se* before this Court, he admits that he is "represented in this matter" by attorney Christopher A. Bandas ("Bandas"), who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements. The Honorable Samuel Conti of the Northern District of California has stated: "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 281 F.R.D. 531, 533 (N.D.Cal.2012) (citation omitted). Even more recently, the Honorable Barry Ted Moskowitz of the Southern District of California conducted an evidentiary hearing regarding Bandas's practices in order to determine whether to strike an objection. After hearing testimony from Bandas and other witnesses, he struck the objection, having determined that "Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away" and that "Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made." *In re Hydroxycut Marketing and Sales Practices Litig.,* 2013 WL 5275618, at *5 (S.D.Cal. Sept. 17, 2013). Hampe's relationship with Bandas, a known vexatious appellant, further supports a finding that Hampe brings this appeal in bad faith.

*Id.* Indeed, this Court should similarly treat Mr. Bandas as a vexatious litigant and treat him and his colleague in a manner that is consistent with numerous federal courts throughout the United States.

### A. Mr. Bandas Enters Into Misleading and Inaccurate Retainer Agreements with His Objector Clients.

Perhaps most troubling about Mr. Bandas is the complete conflict of interest he maintains with his own objector clients. Mr. Bandas solicits class members to hire him and then enters into "capped" retainer agreements which provide false and inaccurate information to his clients in favor of his own personal benefits. *See* Class Action Objector Power of Attorney and Contingent Fee Agreement dated July 26, 2014 (attached as **Exhibit C**) (hereinafter "Objector Retainer Agreement"). Specifically, the Objector Retainer Agreement caps or limits the amount of compensation the clients may receive to only $5,000 as an incentive award, over and above what they would be paid as a regular claimant if the settlement were to be approved. *Id.* at 2. The Paragraph specifically states:

> Incentive Award or Payment:  Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and.or other factores related to your service as an objector. This is referred to herein as an Incentive award of incentive Payment.  You understand that any incentive award or payment sought will never exceed $5,000."

*Id.*

As there is no cap in the law on what an objector could be paid in a settlement of his or her objection, it is clear that this paragraph is designed to limit the amount that Mr. Bandas has to pay his client from the settlement of an objection so that he can keep everything else for himself, and his co-counsel, in this case Santiago Cueto.  This creates an irrevocable conflict of interest.

Class Counsel submits that this Court should review and scrutinize Mr. Bandas' standard retainer agreements as to their legality and enforceability.

### B.     Attorney Santiago Cueto Has Not Acted Appropriately.

Aside from assisting Mr. Bandas' efforts to avoid this Court as detailed above, it is clear that Mr. Cueto has also not acted appropriately as counsel for the Jabranis.  He signed the objections on behalf of the Objector-Appellants without even speaking or communicating in any way with his "clients" to verify the accuracy of the objection.  *See* Transcript of Deposition of Amarali Jabrani dated November 10, 2014 at 32-33 (attached as **Exhibit D**).  Mr. Cueto never signed a retainer agreement with the Jabranis.  *Id*.  Indeed, to date, after multiple filings and their depositions, the objectors stated in deposition that Mr. Cueto has never even communicated with his "clients" at all.

This conduct is similar to other local counsel who have represented Mr. Bandas' clients. In 2010, the Illinois Attorney Registration and Disciplinary Commission lodged disciplinary proceedings against a local counsel for Mr. Bandas for violating six Illinois disciplinary rules. *See* Ex. B.  "Bandas told [Local Counsel] that when he had filed objections to class action settlements in other jurisdictions, he had been able to obtain a $100,000 settlement of his attorneys' fees." *Id.* at ¶ 4.

In particular, the Commission stated that:

> Had Respondent conducted an inquiry into Bandas's handling of the cases … he would have discovered cases in which the courts found that Bandas's objections: lacked substantive merit; that they failed to meet the procedural requirements for the filing of such objections; that they were generic and bore no particular relationship to the circumstances of each settlement; and that Bandas's and local counsel's filing of the objections has been found to be [an] attempt by Bandas and local counsel to extort money from the class and/or class counsel.

*Id.* at ¶ 6.  The Illinois Attorney Registration and Disciplinary Commission sought discipline because this conduct "tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute…."  *Id.* at ¶19(f).  Class Counsel respectfully submits that, at the hearing on the motion for bond, this Court should inquire from Mr. Cueto as to what, if any, due diligence he performed prior to associating with Mr. Bandas and whether the total lack of an investigation is a violation of Mr. Cueto's ethical obligations to his clients and the Court.

<strong>C.    The Jabranis Are Mere Vessels for Their Attorneys to Extract Fees.</strong>

On November 10, 2014, Class Counsel deposed the two objectors with alarming results. It is clear that both objectors have abdicated all responsibility related to their objections to Mr. Bandas.

<strong>1.   <u>Objector Mr. Amarali Jabrani</u></strong>

Amarali Jabrani is the consummate proxy for Mr. Bandas to lodge his boilerplate and frivolous objections.  Mr. Jabrani never read his objection prior to its filing, and only first saw it a week prior to his deposition (i.e. after final approval) in order to prepare for his deposition.  *See* Ex. D at 49.  Indeed, he was never shown any of the filings made on his behalf.  *Id.* at 57. Additionally, he never reviewed the Settlement Agreement or Preliminary Approval Order prior to lodging his objections, the first time he even saw the Settlement Agreement was "a couple of days" before his deposition, and he only read the Settlement Agreement – similar to his objection – to prepare for his deposition.  *Id.* at 39-40, 42-43, 62-63.  He did not attend the final fairness hearing because he did not know one occurred.  *Id.* at 58.

Further, according to Mr. Jabrani, Mr. Bandas will make all of the decisions related to the objection that delays relief to over 63,000 class members.  *Id.* at 32 ("I'm depending on Chris Bandas to do all the work.");   *Id.* at 46 ("I'm strictly relying on Mr. Chris Bandas to make the decision [drop the objection or proceed].").

Mr. Jabrani had "no idea" how much he was overcharged by SunTrust and never calculated how much he would receive under the settlement. *Id* at 7, 13. He did not know basic details about the settlement, such as how much money was being made available to the class. *Id.* at 14 ("Q. And SunTrust, is the amount that's being made available to the class is that okay? A. I don't how much that would be, I don't know."). He also "did not have any idea" if the 10.5% return to class members was appropriate or not. *Id.* at 35.

He could not detail the legal claims involved against SunTrust, and instead flippantly responded to this line of questioning with "You tell me." *Id* at 33-34. He did not know any of the facts involved, who was winning the case, or the strengths of the claims involved. *Id.* at 34-35.

Mr. Jabrani complained about the allegedly onerous claims process, however, this belief was based upon the mistaken belief that class members "have to go on" the settlement website in order to make a claim. *Id.* at 10-11. The settlement does not require going to any particular website to make claims. Further, Mr. Jabrani could not detail how the claims process and claim form could be made easier. *Id.* at 11-12 ("Q. Right, but do you have any suggestions or ideas how the claim form itself could have been better? A. No, I have no idea.")

Finally, although Mr. Jabrani objects to the injunctive relief, he could not detail any specific issues with the injunctive changes and did not know if the five-year prohibition was appropriate or not. *Id.* at 35.

However, he was certain of a few facts. When he retained Mr. Bandas, Mr. Jabrani was very aware of Mr. Bandas's reputation as a professional objector. *Id.* at 30 ("I brought a consent

to him and he's the pro at that business, so I said okay, you whatever you say, I'll go with.").[2]  He believed that he would get an incentive award for objecting and that the $5,000 award could possibly come directly from Mr. Bandas himself.  *Id.* at 21-23 ("It could be anybody, it could be Wells Fargo, it could be you, it could be Chris Bandas, it could be anybody, I don't know exactly.").

Further, Mr. Jabrani was absolutely certain that if ordered to pay a bond, he will "definitely not" have to pay the appeal bond because Mr. Bandas has agreed to pay for any appeal bond that is entered against Mr. Jabrani.  *Id.* at 45-46.

## 2. Objector Mrs. Janet Jabrani

Mrs. Janet Jabrani knew even less than her husband and next to nothing about any material facts in this case or in her objection.  She had read nothing about this settlement or her objection until it became necessary for her to be deposed and, even then, she reviewed nothing of substance.  For example, at the time she had retained Mr. Bandas to represent her in lodging her objections to this settlement, and the Wells Fargo settlement[3], she had not reviewed one document related to the settlement.  *Id.* at 25 ("Q. And at the time that you signed this document and the one for Wells Fargo, tell me everything you had personally looked at in connection with the Wells Fargo and SunTrust settlements? A. Nothing.").  Indeed, she did not review the Settlement Agreement until after this Court granted final approval and Class Counsel was about to take her deposition.  *Id.* at 25-26.  *See* Deposition Transcript of Janet Jabrani dated November 10, 2014 at 12 (attached as **Exhibit E**).

---

[2] He also retained Mr. Bandas not knowing if Mr. Bandas had any experience in litigating lender placed insurance class actions.  *Id.* ("Q. As a counsel. Do you know his experience in lender place insurance cases? A. Not really.").

[3] The Jabrani's and their professional objector counsel have filed a similar objection to the settlement in a similar force-placed insurance class action.  *See Fladell v. Wells Fargo Bank et al*, No. 13-cv-60721 (S.D. Fla.) (D.E. 222).

As a consequence, she was mistaken about key details of the settlement she is objecting to. For example, she mistakenly believed that class members "would have to dig through records" to determine the amount of LPI placed and although complaining about the time periods for claims to be made, she had no idea what those time constraints were and had no opinion as to what they should be. *Id*. at 7-8. When asked what information was required to make a claim, she did not know. *Id*. at 19 ("Q. All right. And so you don't know which information is needed either for SunTrust or Wells Fargo, right? A. Correct.").

Although she resolved her previous objection lodged on her behalf by Mr. Bandas in the *In Re Certainteed*[4] action, she incredibly believed that changes to the settlement had been effectuated as a result of her objection. *Id* at 17. Indeed, there were no changes to the settlement, only a payment of money to the objectors, Mr. Bandas, and his co-counsel. Mrs. Jabrani had no idea that her objections in *In Re Certainteed* were overruled in their entirety. *Id*. at 36.

Mrs. Jabrani never reviewed the objection filed on her behalf in either SunTrust or Wells Fargo, was unaware that this Court overruled her objections, and had no idea that an appeal had been taken on her behalf. *Id*. at 15, 27-29. She did no investigation into the claims involved or the litigation, instead relying upon Mr. Bandas, and never saw the Final Approval Order until her deposition. *Id*. at 31, 36.

## LEGAL ARGUMENT

As many other courts have recognized, objectors should be required to post appeal bonds before they can use the time and expense of appeal to hold a settlement hostage. Federal Rule of appellate Procedure 7 provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of

---

[4] *In re CertainTeed Fiber Cement Siding Litigation,* Case No. 11-2270 (E.D. Pa.)

costs on appeal." The Eleventh Circuit has held that under Rule 7, this Court has discretion to require appellants to post a bond to secure payment of appeal costs. *See Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002). In particular, a Rule 7 bond should be imposed where necessary to protect class members "from the burdens that stem from being forced to defend frivolous lawsuits." *Id.* at 1333. As noted by the Eleventh Circuit, "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . . prior to filing the appeal." *Id.* Rule 7 authorizes the Court to forecast the outcome of the appeal. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998). The nature and amount of an appeal bond is left to the sound discretion of the district court. *Farris v. Standard Fire Ins. Co.*, 280 Fed. App'x 486, 489 (6th Cir. 2008).

Courts commonly impose appeal bonds in the class action context. *See In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-17 (6th Cir. 2004) (endorsing the trial court's imposition of a $174,429 appeal bond); *In re Checking Overdraft Litigation*, No. 09–MD–02036, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012) (ordering class action objectors to post $616,338 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond).

When determining if an appeal bond is appropriate, courts consider: (i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; and (v) the appellant's attorney's prior actions. *See In re Initial Pub. Offering Sec. Litig*, No 21-MC-92, 2010 WL 2505677, at *2 (S.D.N.Y. June 17, 2010). Consideration of these factors supports imposing sizable appeal bonds here.

The Objector-Appellants are continuing to press pretextual objections, unnecessarily holding up a Settlement that Settlement Class Members overwhelmingly support. Their

motivations are transparent: they are looking to extract money from Class Counsel by delaying the resolution of this case.  Accordingly, the Court should exercise its discretion under Rule 7 to require the Objector-Appellants to post sizable bonds on appeal.  *See Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on plaintiff's history of litigiousness and implication that appeal was frivolous); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, No. MDL 1361, 2003 WL 22417252 (D. Me. 2003) (accord); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (in setting the amount of Rule 7 bond, "it is appropriate to consider the merits of the appeal itself") (internal quotation marks omitted).

### A.      The Objector-Appellants are Presumed to Have the Financial Ability to Post a Bond.

Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise.  *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 201, 213 (S.D.N.Y. 2010).[5]  As demonstrated above, Objector-Appellants are represented by professional objector counsel attorney who has agreed to pay any bond levied against them, and the appeal bond requirement should be an expected expense.  *See* Ex. D at 45-46.[6]

### B.      The Appeal Lacks Merit.

As the Court has already concluded, the objection, and thus the appeals, are without merit.  The Objector-Appellants will only be able to make arguments on appeal that were raised before the Court.  *Kensington Rock Island Ltd. P'ship v. Am. Eagle Partners*, 921 F.2d 122, 124-25 (7th Cir. 1990).  To prevail on appeal, the Objector-Appellants will have to show that this

---

[5] *See also Adsani*, 139 F.3d at 79 (finding that "without any showing of [appellant's] financial hardship," the imposition of a bond is not an impermissible barrier to appeal).

[6] When questioned on his personal ability to pay a bond issued against him, Mr. Jabrani did not testify that he was unable to pay a bond.  *See* Ex. D at 45-46.

Court abused its discretion. *Williams v. Rohm and Haas Pension Plan*. 658 F.3d 629, 634 (7th Cir. 2011). The Settlement was approved after lengthy and careful review, and the appeal has no reasonable expectation of altering the Final Order based on fact or law. The appeal serves only to delay the Settlement Class Members' receipt of the benefits of the Settlement.

In particular, the Objector-Appellants' criticism of the claims process is frivolous, as "'[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.'" (Approval Order at 11) (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)). The Objector-Appellants also completely failed to rebut the evidence presented that a claims process is necessary because they cannot, on a system-wide basis, determine which class members paid their force-placed premiums without individually going through all 63,000 files. *Id.*

The Court similarly concluded that the injunctive relief was not "illusory" but "constitute[d] important changes that will help homeowners across the country." *Id.* at 7. "The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide." *Id.* The Court also properly "reject[ed] the Jabrani's argument that the Court cannot grant final approval before the claims deadline." *Id.* at 8. "The Court agrees that an LPI class settlement that offers significant monetary relief, as this one does, 'requiring only that class members submit a claim form,' can be 'fair and reasonable independent of the number of claims filed.'" *Id.; Saccoccio v. JP Morgan Chase Bank, N.A.*, No. 13-21107-CIV, 2014 WL 3738013, at *1 (S.D. Fla. July 28, 2014).

The Court went onto note that "[t]he Objectors do not argue that the 10.5% return for each class member is too low or unreasonable. They cannot because it is an exceptional result given that SunTrust, unlike the allegations involving other lender-placed defendants, did not

accept illegal commissions or engage in extremely profitable reinsurance arrangements." (Approval Order at 10.)

The Court also properly overruled Objector-Appellants' objections to the attorneys' fees award, *id.* at 13-14, concluding that the award, which represents 16% of the total class monetary benefits provided to the class, is reasonable and "easily within or below the range provided by the Eleventh Circuit." *Id.* In short, the Objector-Appellants have no valid basis to argue that this Court abused its discretion in approving the Settlement.

### C.    The Objector-Appellants' and Their Counsels' Conduct and Motivations Warrant the Imposition of the Requested Appeal Bonds.

The attorney-driven nature of the Objector-Appellants appeals is transparent. Baseless rote allegations (such as those the Objectors raised) that class counsel undervalued the claims, and boilerplate objections to fees, provide strong evidence that the objections stem from professional objectors' counsel. Such lawyers – who employ objections, and subsequent meritless appeals, as leverage to extort settlements – interfere with the system and "often delay and unnecessarily complicate class proceedings." *Newberg on Class Actions* § 15:37. The Federal Judicial Center therefore advises courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009).

Federal Courts "are increasingly weary of professional objectors," who "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements – not to assess their merits on some principled basis – but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process." *O'Keefe*, 214 F.R.D. at 295 n.26.

The actions of the attorneys for the Objector-Appellants have real costs, as Settlement Class Member payments will be delayed, and the administrative costs will mount, until the appeals have been resolved.

> Class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . .

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).

As detailed above, Objectors-Appellants' attorneys are professional objectors, and they should be forced to internalize the costs that their fee-seeking conduct imposes on the Class. Indeed, according to Objector Amarali Jabrani, Attorney Christopher Bandas has agreed to pay any bond issued against him. *See* Ex. D at 45-46. To protect the Settlement Class from this bad faith conduct, the Court should impose an appeal bond on Objector-Appellants.

### D.       A Significant Risk of Nonpayment Exists.

Class Counsel and the Settlement Class face a significant risk of never receiving any of the post-appeal costs to which they may be entitled absent a bond. The Objector-Appellants are located outside the Eleventh Circuit, in the more than likely event that Objectors-Appellants are unsuccessful in their meritless appeals, Class Counsel and the Settlement Class "would need to institute collection actions in numerous jurisdictions to recover their costs . . . [resulting in] a significant risk of non-payment." *In re Initial Public Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *see also In re Currency Conversion Fee Antitrust Litig.*, 01-MDL-1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010) (same); *see also Fleury v. Richemont N. Am., Inc.*, C-05-4525 EMC, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008). Moreover, the Objector-Appellants

have not offered to guarantee payment of costs that might be assessed against them. *Id.* In light of these risks, the Objector-Appellants should be required to post appeal bonds. *See Poplar Grove Planting and Refining Co.*, 600 F.2d at 1191.

### E.       The Amounts Requested Are Reasonable.

While the precise amount of the bond is left to the sound discretion of the Court, the practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. AH Robins Co.*, 85 F.R.D. 139, 139-40 (E.D. Va. 1980). The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39. *Pedraza*, 313 F.3d at 1323. The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id.* at 1327; *Sckolnick*, 820 F.2d at 15.

Plaintiffs request that the amount of the bonds in this instance total $15,000, representing security for (i) expected appellate costs, and (ii) administrative costs of continued settlement administration during the length of the appeal period.

The first category of costs, under Rule 39, is routinely included in appeal bonds. *See, e.g., O'Keefe v. Mercedes-Benz-USA, LLC*, No. 01-cv-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003) (including Rule 39(c) costs of copying, printing, and reproducing documents in an appeal bond); Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (3d ed. 1999). Class Counsel anticipate incurring costs taxable under Rule 39(e), including the estimated cost for printing and copying briefs and other submissions, in the approximate amount of $5,000.

The second category of costs that should be included in the appeal bonds, the administrative costs of continued settlement administration, is also routinely included in class action appeal bonds. *See, e.g., In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013) (including "significant administrative costs" totaling $21,344 in

class action appeal bond); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013) (including $39,150 in "increased expenses in settlement administration and administrative costs" in class action appeal bond); *Miletak v. Allstate Ins. Co.*, No. 06-03778, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) (same for $60,000 bond); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, No. 11–MD–2247, 2012 WL 3984542, at *5 (D. Minn. Sept. 11, 2012) (same for $170,000 bond).

Inclusion of this second category is also justified to (at least partially) preserve the status quo.  As Judge Gold and former Judge Scott recognized in *Allapattah Services, Inc. v. Exxon*, No. 91-0988-CIV (S.D. Fla. 2006), if an objecting class member's appeal effectively stays the payment of settlement proceeds or the implementation of settlement relief to the rest of the class, it is appropriate to require the appealing class member to post a *supersedeas* bond to "preserve the status quo while protecting the non-appealing party's rights pending appeal."  Report and Recommendation on Westheimer's Objection to the Class Settlement, at 20-24 (DE 1315-4) ("*Exxon* R&R"), *adopted by Allapattah Services, Inc. v. Exxon Corp.*, 2006 WL 1132371 (S.D. Fla. 2006) (*citing Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979)).  "The bond secures against any losses sustained as a result of being 'forced to forgo execution on a judgment during the course of an ineffectual appeal.'"  *Id.* at 22-23 (quoting *Poplar Grove*, 600 F.2d at 1191).

In this instance, the Settlement Administrator, The Garden City Group, Inc. estimates, based on its extensive previous experience, that "these appeals will cause an increase of approximately $7,000 per month in ongoing Settlement Administration fees and expenses during the appeal period." *See* **Exhibit F** (Declaration of Jennifer M. Keough) at ¶ 4.  The "driving factors for additional fees and costs during the appeals period includes record storage, communications services (use and maintenance of the toll-free interactive voice response number

and live operator assistance), Settlement Website maintenance, and overall project management." *Id.*

According to the most recent statistics published by the federal court system, the median time from filing a notice of appeal to final disposition in the Eleventh Circuit is 7.6 months. S*ee* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistic s/2013/appeals-fcms-profiles-september-2013.pdf&page=25.  Thus, if the appeal period extends the Settlement Administration by 7.6 months, the additional cost is estimated to be $53,200.  A $15,000 bond is, therefore, supported by the facts here and reasonable when compared to the bonds imposed in similar cases.  *See, e.g., In re Cardizem CD Antitrust Litig.*, 391 F.3d at 818 (endorsing $174,429 appeal bond); *In re Checking Overdraft Litigation*, 2012 WL 456691 at *3 (ordering class action objectors to post $616,338 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834 at *3 (ordering imposition of $645,111 appeal bond).

## CONCLUSION

For the foregoing reasons, requiring each of the Objector-Appellants to post significant appeal bonds is justified and appropriate.  Plaintiffs respectfully request that the Court enter an Order under FRAP 7 and 8 requiring each of the Objector-Appellants to post appeal bonds totaling $15,000 within seven (7) business days and for such other relief as this Court deems appropriate.

Respectfully submitted this 2ND day of December 2014.

By: /s/ Adam M. Moskowitz

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:    (305) 372-3508<br>*Counsel for Plaintiffs* | Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:      (305) 536-8220<br>Facsimile:<br>*Counsel for Plaintiffs* |
| Aaron S. Podhurst, Esq.<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>jgravante@podhurst.com<br>Matthew Weinshall, Esq.<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone:                    305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF

on the 2nd day of December, 2014 and served by the same means on all counsel of record.

By:   <u>/s/ Adam M. Moskowitz</u>