# EXHIBIT B

**Clayton Halunen**

| | |
|---|---|
| **From:** | Saved by Windows Internet Explorer 8 |
| **Sent:** | Thursday, June 10, 2010 1:59 PM |
| **Subject:** | BEFORE THE HEARING BOARD OF THE |

## BEFORE THE HEARING BOARD
## OF THE
## ILLINOIS ATTORNEY REGISTRATION
## AND
## DISCIPLINARY COMMISSION

In the Matter of:

**ALAN BARINHOLTZ,**                                    Commission No. 2010PR00070

Attorney-Respondent,                                    FILED - May 26, 2010

No. 3126802.

## COMPLAINT

Jerome Larkin, Administrator of the Attorney Registration and Disciplinary Commission, by his attorney, Gina M. Abbatemarco, pursuant to Supreme Court Rule 753(b), complains of Respondent, Alan Barinholtz, who was licensed to practice law in Illinois on October 29, 1980, and alleges that Respondent has engaged in the following conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute:

1. In 2001, counsel for a group of current and former WalMart employees filed a class action lawsuit against WalMart based on claims that WalMart had not compensated its Illinois employees for all the time they had worked or paid them all of the benefits they had earned. The matter was docketed in the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, as *Lisa Brown, et al. v. WalMart*, case number 01 L 85 ("WalMart litigation").

2. In or about July 2009, a proposed settlement agreement was reached in the WalMart litigation between the class representatives and WalMart, in which the parties agreed, *inter alia*, that the class would receive an award of $6 million and the attorneys for the class would be paid $8 million in fees.

3. After the proposed settlement agreement was reached, class counsel mailed a notice regarding the proposed settlement to members of the class, which informed class members that objections to the settlement had to be filed by September 28, 2009, and that any objections were to include "the amount of money the objector claims is due to the objector and to the objector's attorney, if any; state the specific reason for each objection, including any legal support that the objector wishes to bring to the court's attention; include copies of any documentary evidence and a brief summary of testimonial evidence the objector wishes to introduce in support of the objection." The notice also provided that the court would conduct a fairness hearing to consider any objections on October 29, 2009, and that class members had until December 15, 2009 to file a claim for their portion of the settlement.

4. On or about September 24, 2009, Respondent received a telephone call from Christopher Bandas ("Bandas"), who identified himself as an attorney licensed in Texas. Bandas requested that Respondent serve as local counsel for the filing of an objection to the proposed settlement that had been reached in the WalMart litigation, and asked that Respondent provide him with information about anyone Respondent knew who worked at WalMart and would be eligible to file an objection to the settlement. Bandas told Respondent that when he had filed objections to class action settlements in other jurisdictions, he had been able to obtain a $100,000 settlement of his attorneys' fees.

5. At no time on or after September 24, 2009 did Respondent take any steps to verify Bandas' qualifications or experience, or Bandas's history of filing objections to the proposed settlements in other class action lawsuits. Had he done so, Respondent would have learned that Bandas had associated with local counsel in South Carolina, Iowa, Missouri, and Florida for the purpose of filing objections to several class actions then pending against WalMart that raised similar claims to those he had contemplated raising in Illinois with Respondent. Respondent also would have learned that the objections that Bandas and his local counsel caused to be filed in those cases generally asserted that the proposed settlements inequitably allocated greater portions of the settlement funds to class counsel and class representatives than they did to class members, but did not include specific allegations demonstrating the purported inequity of the settlements, or citations to legal authority in support of the purported objector's claim that the settlement should be rejected or adjusted in some manner.

6. Had Respondent conducted an inquiry into Bandas's handling of the cases referenced in paragraph five, above, he would have discovered cases in which the courts found that Bandas's objections: lacked substantive merit; that they failed to meet the procedural requirements for the filing of such objections; that they were generic and bore no particular relationship to the circumstances of each settlement; and that Bandas's and local counsel's filing of the objections had been found to be attempt by Bandas and local counsel to extort money from the class and/or class counsel.

7. On or about September 24, 2009, Respondent asked Colleen Boyle ("Boyle"), a legal secretary who was employed by another attorney in Respondent's office suite, if she knew anyone who worked at WalMart. Boyle told Respondent that her friend, Jill Carlson, was a WalMart employee, and told Respondent she would give Carlson Respondent's phone number.

8. On or about September 24, 2009, Carlson contacted Respondent and discussed with him the possibility of filing objections to the proposed settlement in the WalMart litigation. During that conversation, and Carlson's subsequent discussion with Bandas that same day, Carlson, Bandas and Respondent discussed the filing of objections to the proposed settlement based on a claim that the settlement resulted in a larger award to class counsel than the class members.

9. Based on the discussions referred to in paragraph eight, above, Respondent and Bandas agreed to represent Carlson, and to file objections to the proposed settlement in the WalMart litigation under Carlson's name. Respondent and Bandas agreed that Respondent would serve as local counsel for the filing of Carlson's purported objections to the WalMart litigation, and that Respondent would receive 15 percent of any fees that he and Bandas were able to recover as a result of filing Carlson's purported objections to the proposed settlement.

10. On or about September 25, 2009, Bandas prepared a fee agreement for Carlson to sign that entitled Bandas and Respondent to apply to the court for a fee award in the WalMart litigation, and in which Carlson released her claims to any such award. The fee agreement further provided that Carlson could receive an incentive award from the court in the range of $1,500 to $5,000, but that she would otherwise only receive any benefits that she would be entitled to receive as a class member, under the existing claims process. Carlson signed the agreement on September 26, 2009.

2

11. Sometime between September 24, 2009 and September 28, 2009, Bandas prepared a motion setting forth Carlson's purported objections to the proposed settlement in the WalMart litigation. In the motion, Bandas generally claimed that the proposed settlement inequitably allocated greater portions of the settlement funds to class counsel and class representatives than it did to class members, and that the period in which class members could file claims for a portion of the settlement was too brief. In the motion, Bandas did not as required by the Court's notice (described in paragraph three, above) include "the amount of money the objector claims is due to the objector and to the objector's attorney, if any; state the specific reason for each objection, including any legal support that the objector wishes to bring to the court's attention; include copies of any documentary evidence and a brief summary of testimonial evidence the objector wishes to introduce in support of the objection," or otherwise support his assertions that the proposed settlement was inequitable or improper.

12. Between September 24, 2009, and September 28, 2009, Bandas sent Respondent the objections Bandas had drafted and a motion requesting that the court permit Bandas to appear *pro hac vice* in the WalMart litigation. Bandas requested that Respondent cause those materials to be filed in the WalMart litigation.

13. Prior to filing the motion and objections, Respondent had not reviewed the court file or the settlement agreement reached by the parties in the WalMart litigation; requested documentation from plaintiff's class counsel regarding class counsel's claims for fees; reviewed any documentation used to calculate the plaintiff's proposed fee award; calculated the value of the injunctive relief plaintiff's attorneys were able to obtain in the litigation; or taken any other steps to investigate any of the claims set forth in the motion objecting to the settlement.

14. On or about September 28, 2009, Respondent signed and filed an appearance, Carlson's purported objection to the class settlement and request for attorneys' fees and expenses and a motion to intervene in the WalMart litigation. On that date, Respondent also filed Bandas's request for admission *pro hac vice* in the WalMart litigation. The court in case number 01 L 85 set Respondent's and Bandas's motions for a fairness hearing on October 29, 2009.

15. Sometime between September 28, 2009 and October 14, 2009, Respondent learned, by speaking to class counsel and reviewing court documents tendered at Carlson's October 14, 2009 deposition, that Bandas had associated with local counsel in South Carolina, Iowa, Missouri, and Florida for the purposes for the purpose of filing objections to several class actions then pending against WalMart and that in those cases Bandas had raised similar claims to those he had raised in case number 01 L 85. The objections that Bandas and his local counsel caused to be filed in those cases generally asserted that the proposed settlements inequitably allocated greater portions of the settlement funds to class counsel and class representatives than they did to class members, but did not contain specific allegations demonstrating the inequity of the settlements, or citations to legal authority in support of the purported objector's claim that the settlement should be rejected or adjusted in some manner.

16. Between September 28, 2009 and October 14, 2009, Respondent learned by speaking to class counsel and reviewing court documents, that between May 2009 and August 2009, court orders had been entered in the cases referenced in paragraph 15, above, in which the courts found that: Bandas' and local counsel's objections lacked substantive merit; that they failed to meet the procedural requirements for the filing of such objections; that they were generic and bore no particular relationship to the circumstances of each settlement; and that Bandas's and local counsel's filing of the objections had been found to be attempt by Bandas and local counsel to extort money from the class and/or class counsel.

17. At no time after October 14, 2009, did Respondent or Bandas withdraw the objections Respondent had filed in the WalMart litigation.

3

18. On October 29, 2009, neither Carlson, Respondent or Bandas appeared for the fairness hearing in case number 01 L 85. On that date, the Honorable Mark A. VandeWiele denied the motion to intervene and object, as well as Bandas's motion for admission *pro hac vice*. In denying the motions, Judge VandeWiele found that:

> "[t]he Bandas Objection filed on behalf of Ms. Carlson is a generic boilerplate objection prepared and filed by attorneys working for their own personal benefit and not for the benefit of this Class or for those lawyers' client. The record before the Court demonstrates that Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees". Bandas has filed virtually identical, frivolous objections in South Carolina, Iowa, Missouri and Florida in settlements of similar wage and hour class actions against Walmart..... The Court finds that a lack of involvement and participation by Ms. Carlson and her counsel, combined with their attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the Class and/or Class Counsel. Though filed by two lawyers, the Bandas Objection offers nothing in the way of specific criticisms of the proposed Settlement. The content of the Bandas Objection demonstrates that neither Ms. Carlson nor her counsel has ever visited the settlement website or read the Stipulation of Settlement in this case. The Bandas Objection ignores the terms of the proposed Settlement before the court. The Bandas Objection offers no legal or factual support for its assertion that the claims deadline is "brief" or that the claims process is difficult. The Class Settlement Amount and the Floor are clearly laid out in the Stipulation of Settlement and in the Class Notice.... It is short on specifics, is wholly devoid of evidence and controlling authority, and it fails to comply with the procedures ordered by the Court for properly objecting to the Settlement. Moreover, it is clear that neither the objector nor her counsel reviewed the Settlement Agreement or any of the voluminous pleadings and appellate briefing that clearly reflect the complexities of this case, and the enormous efforts expended by Class Counsel on behalf of the Class over the last eight years."

19. By reason of the conduct described above, Respondent has engaged in the following misconduct:

   a. advancing a claim or defense the lawyer knows is unwarranted under existing law, in violation of Rule 1.2(f)(2) of the 1990 Illinois Rules of Professional Conduct;

   b. bringing or defending a proceeding, or asserting or controverting an issue therein, when there is no basis for doing so that is not frivolous, in violation of Rule 3.1 of the 1990 Illinois Rules of Professional Conduct;

   c. using means in representing a client that have no substantial purpose other than to embarrass, delay or burden a third person in violation of Rule 4.4 of the 1990 Illinois Rules of Professional Conduct;

   d. through a representative, soliciting professional employment from a prospective client who is neither a relative, close friend of the lawyer, or a person with whom the lawyer or the lawyer's firm has had a prior relationship, in violation of Rule 7.3 of the 1990 Illinois Rules of Professional Conduct;

e. conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(a)(5) of the 1990 Illinois Rules of Professional Conduct; and,

f. conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute, in violation of Supreme Court Rule 770.

WHEREFORE, the Administrator requests that this matter be assigned to a panel of the Hearing Board, that a hearing be held and that the panel make findings of fact, conclusions of fact and law and a recommendation for such discipline as is warranted.

Respectfully submitted,

Gina M. Abbatemarco
Counsel for the Administrator
One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601
Telephone: (312) 565-2600

Jerome Larkin,
Administrator
Attorney Registration and
Disciplinary Commission

By: Gina M. Abbatemarco